# EXHIBIT "C"

BOARD OF EDUCATION OF THE CITY OF NEW YORK
CONTINGENT BUY-AGAINST REQUIREMENTS AGREEMENT FOR SCHOOL BUS TRANSPORTATION SERVICES

A **CONTINGENT BUY-AGAINST REQUIREMENTS AGREEMENT** made and entered into as of the twenty-third day of December, 2013 by and between the **BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK** (herein expressed as "Board of Education," "Board," "BOE," "New York City Department of Education" or "NYCDOE"[1]), a municipal corporation and city school district organized and existing according to the laws of the State of New York, with principal offices located at the Tweed Courthouse, 52 Chambers Street, New York, NY 10007-1222, and the Contractor whose name, address and authorized signature appear at the end hereof (herein, each is expressed as a "Party," and both are expressed collectively as "Parties").

W I T N E S S E T H

WHEREAS, in 1979 the BOE publicly solicited competitive, sealed bids for transportation of disabled pupils under Contract Serial Nos. 0070 and 8108; and,

WHEREAS, at divers-times thereafter from 1982 through 1984, the BOE publicly solicited competitive, sealed bids for similar services under Contract Serial Nos. G8805, G8891, G8893, G9301 and G9325, which contracts have incorporated, as of their dates, provisions which are counterparts of the provisions of contracts under Serial Nos. 0070 and 8108 as they then read; and,

WHEREAS, Amboy Bus Company, Inc., Staten Island Bus, Inc., Atlantic Queens Bus Corporation, and/or one or more of its/their predecessors in interest (herein expressed as "Bankrupt Contractor(s)") tendered a bid(s) under one or more aforementioned contract serial numbers and was duly awarded a contract(s) including certain Employee Protection Provisions (1st amendment) for the transportation of disabled pupils; and,

WHEREAS, from September 10, 1979 through December 21, 1979, the Bankrupt Contractor(s) did not provide escort services for disabled pupils; but, under an emergency contract entered into with the BOE (2nd amendment), the Bankrupt Contractor(s) supplied such escort services during the said period; and,

WHEREAS, the New York State Legislature enacted Chapter 737 of the Laws of 1979, and the Parties have desired to amend the Contract to implement Chapter 737 as amended and be subject to its terms; and,

WHEREAS, the original terms of all contracts under Serial Nos. 0070, 8108, G8805, G8891 and G8893 would have expired on June 30, 1982 unless extended, and all contracts under Serial Nos. G9301 and G9325 would have expired on June 30, 1984 unless extended; and, Education Law Section 305(14) authorizes extensions with annual payment rate adjustments method linked to a defined regional Consumer Price Index (herein expressed as "CPI"); and, the BOE opted fairly and reasonably on the basis of the best interests of the New York City School District to refrain from the extension of the terms of all contracts under Serial Nos. G8893 and G9301; and,

WHEREAS, in 1982 the BOE and various contractors extended and amended (3rd amendment) all contracts under Serial Nos. 0070, 8108, G8805 and G8891 until June 30, 1984; and,

---

[1] "NYCDOE" is an abbreviation for "New York City Department of Education," which are both informal, "doing business as" ("*dba*") names of the Board of Education of the City School District of the City of New York.

CONTINGENT BUY-AGAINST REQUIREMENTS AGREEMENT FOR SCHOOL BUS TRANSPORTATION SERVICES     - Page 2 -

WHEREAS, in 1984 the BOE and various contractors extended and amended (4th amendment) all contracts under Serial Nos. 0070, 8108, G8805, G8891 and G9325 until June 30, 1987; and,

WHEREAS, in 1987 the BOE and various contractors extended and amended (5th amendment) all contracts under Serial Nos. 0070, 8108, G8805, G8891 and G9325 until June 30, 1990; and,

WHEREAS, in 1990 the BOE and various contractors extended and amended (6th amendment) all contracts under Serial Nos. 0070, 8108, G8805, G8891 and G9325 until June 30, 1993; and,

WHEREAS, in 1993 the BOE and various contractors extended and amended (7th amendment) all contracts under Serial Nos. 0070, 8108, G8805, G8891 and G9325 until June 30, 1996; and,

WHEREAS, in 1994 the BOE publicly solicited competitive, sealed bids for transportation of disabled pupils under Contract Serial No. 7165, whose original term would have expired on June 30, 1997, unless extended; and,

WHEREAS, in 1995, the BOE and various contractors amended and extended, either initially or further, all contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (8th amendment) until June 30, 2000; and,

WHEREAS, in 1996 the BOE and various contractors, including the Bankrupt Contractor(s), determined that changes had occurred in banking, financial services and insurance markets affecting the availability and affordability of performance bonds, letters of credit and other forms of performance security; and, the BOE and various contractors, including the Bankrupt Contractor(s), entered into a Supplemental Ninth Amendment of Contract for Special Education Pupil Transportation Services thereby modifying and revising the performance security provisions of Contract Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325; and,

WHEREAS, in 1998 the BOE inaugurated "Project Read," an after-school extended day program to improve pupil literacy; and, BOE and various contractors, including the Bankrupt Contractor(s), mutually determined that contractual revisions would be needed to allow overtime wage rates to be paid to school bus escorts if the transportation aspect of Project Read were to be feasible; whereupon, the BOE and various contractors, including the Bankrupt Contractor(s), entered into a Supplemental Tenth Amendment of Contract for Special Education Pupil Transportation Services thereby modifying and revising applicable provisions of Contract Serial Nos. 0070, 8108, G8805, G8891 and G9325 (but not Contract Serial No. 7165); and,

WHEREAS, in 2000 the BOE and various contractors amended and extended all contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (11th Amendment); and,

WHEREAS, effective as of March 31, 2003, the BOE and various contractors further supplemented and amended all contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (12th Amendment) to create BOE-sponsored, centralized purchasing programs for automobile liability insurance[2] and vehicle fuels[3] and to reduce other contract cost factors; and

---

[2] The said program of volume insurance purchasing and administration is entitled the BOE Volume Automobile Liability Insurance Coverage & Administration (herein expressed as "VALICA™") Program.

[3] The said program of volume school bus fuel purchasing and administration is entitled the BOE Volume Automotive Fuel Purchasing & Administration (herein expressed as "VAFPA™") Program. The VAFPA™ Program has been discontinued.

WHEREAS, in 2005 the BOE and various contractors amended and extended all contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (13th Amendment); and,

WHEREAS, in 2005 the BOE and various contractors made a written corrective amendment to all contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (14th Amendment); and,

WHEREAS, in 2007 the BOE and various contractors made a written supplemental amendment to all contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (15th Amendment) regarding escort costs on "Carry-Kids" routes; and,

WHEREAS, in 2010 the BOE and various contractors amended and extended all contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (under a single, comprehensive extension and amendment agreement entitled, "Extension and Sixteenth Amendment Agreement of Special Education Pupil Transportation Contracts") for varying periods of time with June 30, 2015 as the termination date of the 16th Amendment for the Bankrupt Contractor(s) (the heretofore expressed original contracts and all extension and/or amendment agreements are herein expressed collectively as "**Contract(s)**"); and,

WHEREAS, on November 5, 2013, each of the Bankrupt Contractors (together with numerous affiliated entities including, but not limited to, Atlantic Escorts, Inc. (herein expressed as "Atlantic Escorts"), which is a subcontractor to the Bankrupt Contractors, herein collectively the "Bankrupt Companies"), filed a voluntary petition with the U.S. Bankruptcy Court for the Southern District of New York (herein expressed as "Bankruptcy Court") commencing bankruptcy cases under Chapter 11 of the U.S. Bankruptcy Code, which bankruptcy cases are being jointly administered under Case No. 13-13591 (herein expressed collectively as "Bankruptcy Cases"); and,

WHEREAS, the Bankruptcy Court has entered an order dated November 22, 2013 (herein expressed as "Bidding Procedures Order"), authorizing the Bankrupt Contractors to, among other things, attempt to find a party or parties, through an auction sale process, to whom the Bankrupt Contractors' contract(s) with the BOE ("**Bankrupt Contract(s)**") may be assigned with the consent of BOE, which consent is required by law, in the **Bankrupt Contract(s)** and by the Bidding Procedures Order, and the Bankrupt Contractors have stated that the BOE should make preparations to provide substitute bus service in the event **Bankrupt Contract(s)** is not assumed and assigned as part of the auction sale process; and,

WHEREAS, the Contractor acknowledges that BOE has the absolute right to consent or object, in its sole discretion, to any such proposed assumption and assignment of such **Bankrupt Contract(s)** to any party whatsoever in connection with the auction process or any other proceeding in the Bankruptcy Cases, and the Contractor shall have no rights or have any claim against BOE that it has or will suffer any damage in connection therewith; and,

WHEREAS, the Bankrupt Contractors have expressed their inability to continue to perform, and their intention, as of December 31, 2013, to cease to perform any and all of their obligations under the **Bankrupt Contract(s)**; and,

WHEREAS, this has created an emergency situation in which the BOE will be prevented from providing necessary public transportation to ensure the health, welfare and safety of school-age pupils who receive general busing and pupils with disabilities who require special busing; and, as a result, the BOE must seek the services of replacement contractors to assist with transportation of students during the period of emergency; and,

CONTINGENT BUY-AGAINST REQUIREMENTS AGREEMENT FOR SCHOOL BUS TRANSPORTATION SERVICES   - Page 4 -

**WHEREAS**, as a result of the statement by the Bankrupt Companies of their inability to continue operations after December 31, 2013, Eric Goldstein, BOE Chief Executive of School Support Services, declared an emergency procurement for school bus transportation services for school-age pupils who receive general busing and school-age pupils with disabilities who require special busing, in accordance with Section 3-09 of the BOE Procurement Policy and Procedures, which document is hereby incorporated into, and made part of, this Contingent Buy-Against Requirements Agreement as **Attachment B**; and,

**WHEREAS**, as a result of the statement by the Bankrupt Companies of their inability to continue operations after December 31, 2013, DOE Chancellor Dennis M. Walcott declared an emergency affecting the health, safety, welfare and necessary services of and for school aged children, which document is hereby incorporated into, and made part of, this Contingency Buy-Against Requirements Agreement as **Attachment A**; and,

**WHEREAS**, pursuant to Section 4-09 of the BOE Procurement Policies and Procedures (approved by the Board's Panel for Educational Policy (herein expressed as "PEP") on 01-27-2010 and 12-21-2012) (*see* http://schools.nyc.gov/Offices/dcp/DepartmentofEducationProcurementPolicyandProcedures.pdf), the BOE Division of Contracts & Purchasing (herein expressed as "DC&P") and the BOE Office of Pupil Transportation (herein expressed as "OPT") have solicited replacement contractors in the event the **Bankrupt Contract(s)** is not assumed and assigned as part of the auction sale process (it being understood that a replacement contractor(s) is not an assignee or successor of the Bankrupt Contractors or the Bankrupt Companies); and, as a result of said competitive solicitation, the BOE determined the Contractor to be responsive and responsible; and, due to the unforeseen and sudden nature of the emergency situation created by the Bankrupt Contractors, the BOE has awarded this Buy-Against Requirements Agreement to the Contractor on an emergency basis; and,

**WHEREAS**, pursuant to the New York State Education Law, Sections 305(14), 2556(10)-(10-a) and 2590-h(36), the New York State General Municipal Law, Section 103(4), and Section 3-09 of the BOE Procurement Policy and Procedures entitled, "Emergency Purchases," the DOE finds and determines that the situation caused by the statement by the Bankrupt Contractors of their inability to continue operations after December 31, 2013 has created good and sufficient cause for the declaration of an emergency and the award of contracts on an emergency expedited basis for a period of one (1) month from December 23, 2013 ("Emergency Period") pending the approval of this Contingent Buy-Against Requirements Agreement by the BOE Panel for Educational Policy ("PEP") and pending the registration of this Contingent Buy-Against Requirements Agreement by the New York City Office of the Comptroller ("Comptroller") (or the deemed registration) to replace the certain services, as provided herein, for the period ending on June 30, 2015; and, which Emergency Period may be required, at the option of the DOE, to be renewed for an additional period of one (1) month ("Emergency Renewal Period") on the same terms, conditions and specifications; and,

**WHEREAS**, the BOE and the Contractor do hereby stipulate, acknowledge and agree that the effectiveness, enforceability and operability of this Contingent Buy-Against Requirements Agreement are subject to, and contingent upon, all requirements under law including, but not limited to, actions and rulings by the Bankruptcy Court and the procedures that occur pursuant to the Bankruptcy Cases; and,

**WHEREAS**, the Contractor is ready, willing and able to provide the services and goods and otherwise perform all contractually and legally specified terms, conditions and specifications as herein expressed;

**NOW, THEREFORE**, in consideration of the heretofore-recited stipulations and the hereinafter-expressed terms, conditions and specifications, the Board of Education and the Contractor, as the Parties to this

CONTINGENT BUY-AGAINST REQUIREMENTS AGREEMENT FOR SCHOOL BUS TRANSPORTATION SERVICES  - Page 5 -

Contingent Buy-Against Requirements Agreement, do hereby mutually stipulate, acknowledge and agree both as above and as follows:

1. **COMPOSITION OF THE CONTINGENT BUY-AGAINST REQUIREMENTS AGREEMENT.** The following shall be deemed to constitute this Contingent Buy-Against Requirements Agreement for all general and particular intents and purposes and are hereby deemed to be incorporated into, and made part of, this Contingent Buy-Against Requirements Agreement:

   1.1. Chancellor Dennis M. Walcott's declaration of emergency is "**Attachment A.**"

   1.2. Eric Goldstein's declaration of an emergency procurement is "**Attachment B.**"

   1.3. This Contingent Buy-Against Requirements Agreement document consisting of pages 1-13.

   1.4. The Contractor's Schedule of Contract Serial Numbers and Items with price(s) per vehicle per day and price(s) per attendant/escort per day (herein expressed as "**Schedule of Contracts, Items & Prices**") is "**Attachment C.**"

   1.5. The applicable Extension and Sixteenth Amendment Agreement of Special Education Pupil Transportation Contracts dated as of July 1, 2010 "**Attachment D.**"

2. **ORDER OF GOVERNANCE.** The BOE and the Contractor do hereby stipulate and agree that, to the extent there shall or may exist any inconsistencies between or among any provisions of this Contingent Buy-Against Requirements Agreement including, but not limited to, this Contingent Buy-Against Requirements Agreement document consisting of pages 1-13 and **Attachments A** through **D**, the following order of governance is hereby established for every case and for any and all general and/or particular intents and purposes: first **Attachment A**, second **Attachment B**, third this Contingent Buy-Against Requirements Agreement document consisting of pages 1-13, fourth **Attachment C**, and fifth and finally **Attachment D**.

3. **TERM OF AGREEMENT.** The term of this Contingent Buy-Against Requirements Agreement shall commence on December 23, 2013 and shall extend through and terminate on June 30, 2015 (herein expressed as "Term"), *unless* terminated earlier pursuant to the terms and conditions expressed herein and/or in the Contract(s) (as extended and amended by **Attachment D**). The BOE and the Contractor do hereby stipulate and agree that the Term expressed in the preceding sentence is contingent and dependent upon approval of this Contingent Buy-Against Requirements Agreement by the **PEP** and registration of this Contingent Buy-Against Requirements Agreement by the Comptroller, or its deemed registration. If for any reason this Contingent Buy-Against Requirements Agreement shall not be approved by the **PEP** and/or registered by the Comptroller (or deemed registered), the Term shall be for the Emergency Period and, if any, the Emergency Renewal Period. Except for services provided by the Contractor during the Term and the indemnity provided under **Paragraph 6.57**, *infra*, the Contractor stipulates and agrees that the Contractor and/or its trustees, successors and/or assigns shall make no demand for, nor be entitled to receive, any payment, compensation, costs, expenses, damages and/or liabilities in the event that this Contingent Buy-Against Requirements Agreement shall not be approved by the PEP and/or registered by the Comptroller (or deemed registered).

4. **SCOPE OF AGREEMENT.** Generally, the services and goods under this Contingent Buy-Against Requirements Agreement are services, goods, school bus vehicles, spare school buses, maintenance vehicles, materials, labor, facilities and other activities necessary to provide school bus pupil transportation services for students with disabilities pursuant to the terms, conditions, specifications and unit prices expressed in the **Schedule of**

CONTINGENT BUY-AGAINST REQUIREMENTS AGREEMENT FOR SCHOOL BUS TRANSPORTATION SERVICES    - Page 6 -

Contracts, Items & Prices (Attachment C) and the Contract(s) (as extended and amended by Attachment D). The services and goods are described in detail in Attachments C and D (and the Contract(s) extended and amended by Attachment D). The BOE shall not be obligated to procure any services and/or goods or any minimum level of services and/or goods from the Contractor. All decisions whether to procure any services and/or goods from the Contractor shall rest solely with the BOE. This Contingent Buy-Against Requirements Agreement shall become effective *only* upon the Board's issuance to the Contractor of a written purchase order. This Contingent Buy-Against Requirements Agreement shall *not* be construed to be a fixed price/full value contract to any extent whatsoever or for any intents or purposes.

5.  **SERVICES.** Wherever used in this Contingent Buy-Against Requirements Agreement, the terms "services and goods" and "services and/or goods" are deemed to include all of the school bus pupil transportation, supervisory, administrative, technical, reporting and continuing support services, other activities, labor, goods, equipment, supplies, materials and facilities that the Contractor consumes, utilizes, maintains, supplies, performs, delivers, furnishes, implements and/or otherwise provides to, for, on behalf of, and/or for the benefit of, the BOE and/or its employees, pupils, pupil families and/or other authorized representatives under the terms, conditions and specifications expressed herein and in **Attachments C and D** (and the **Contract(s)** extended and amended by **Attachment D**). The Contractor shall provide the Services under the general supervision of the Chancellor or his/her designee(s). Regarding the Services, the Contractor shall adhere in all material respects to all classifications, methodologies, procedures, instructions, schedules, timelines, priorities, explanations, examples, specifications and other information stated herein and/or in the **Schedule of Contracts, Items & Prices (Attachment C)**, and the **Contract(s)** (as extended and amended by **Attachment D**), and/or in any written instructions from the Chancellor or his/her designee(s) that the Contractor shall accept.

6.  **TOTAL COST OF AGREEMENT AND PAYMENT TERMS AND CONDITIONS.**

    6.1.  **TOTAL COST OF AGREEMENT.** The cost of this Contingent Buy-Against Requirements Agreement to the BOE shall be an estimated amount stated in the **Schedule of Contracts, Items & Prices (Attachment C)** for the Emergency Period, the Emergency Renewal Period, if any, and the entire Term. The amount expressed in the preceding sentence shall be derived solely from appropriate BOE "Tax Levy," "Reimbursable" and/or other budget accounts as communicated in written by the BOE to the Contractor. The Contractor shall make no demand for, nor be entitled to receive, any Compensation under this Agreement that would cause the BOE to make payments from any funding sources other than those expressed in the preceding sentence.

    6.2.  **PAYMENTS MADE PURSUANT TO UNIT PRICES.** If the Contractor shall observe the terms and conditions of this Agreement well and faithfully, the Contractor shall be entitled to receive as Compensation for services and goods actually performed and supplied payments in the estimated amount expressed in **Paragraph 6.1**, *supra*, in conformity with the terms, conditions, specifications and unit charges expressed herein and/or in the **Schedule of Contracts, Items & Prices (Attachment C)**, and the **Contract(s)** (as extended and amended by **Attachment D**).

    6.3.  **PRICE ADJUSTMENTS ONLY AS PROVIDED.** The Contractor shall only be entitled to unit price adjustments for the services to the BOE during the Term as expressly stated in the **Schedule of Contracts, Items & Prices (Attachment C)** and/or the **Contract(s)** (as extended and amended by **Attachment D**).

    6.4.  **THE CONTRACTOR SHALL SUBMIT INVOICES TO RECEIVE COMPENSATION PAYMENTS.** The Contractor shall submit invoices to the BOE in a form reasonably acceptable to the Chancellor or his/her

CONTINGENT BUY-AGAINST REQUIREMENTS AGREEMENT FOR SCHOOL BUS TRANSPORTATION SERVICES     - Page 7 -

designee(s). Specifically, the Contractor shall utilize the electronic invoice system administered by **OPT** as such system may be added to, deleted from, updated, revised and/or otherwise changed during the Term in the sole discretion of the BOE. The Contractor shall state clearly on each invoice all serviced performed and goods supplied and all charges incurred for the same during the affected monthly period, in conformity with the specifications expressed in **Attachments C** and **D** (and the **Contract(s)** extended and amended by **Attachment D**). Billing for the Contractor's Services shall be in the form of the unit prices expressed in the **Schedule of Contracts, Items & Prices (Attachment C)** and the **Contract(s)** (as extended and amended by **Attachment D**). All BOE payments to the Contractor shall be governed by the relevant terms and conditions expressed in the **Contract(s)** (as extended and amended by **Attachment D**). The BOE shall not be liable for any costs, fees, charges, etc., other than the unit prices as expressed in the **Schedule of Contracts, Items & Prices (Attachment C)** and the **Contract(s)** (as extended and amended by **Attachment D**). All else to the contrary notwithstanding, the Board shall make payments to the Contractor *only* for work performed and for equipment and materials furnished and *only* upon submittal of a substantiated invoice(s). Each invoice submitted for payment must bear the certification of the Chancellor or his/her designee(s) that all of the services and/or goods for which payment is demanded shall have been performed and/or supplied in a satisfactory manner. The maximum amount payable upon an invoice shall be limited to the amount the Contractor actually shall have incurred or accrued as proved by submittal of supporting documents. The Contractor shall not incur any expenses that are not ordinary, necessary and reasonable in the context of performing this Agreement or that are contrary to law and/or public or BOE policy. The Board shall *not* be required to approve or to pay any invoice(s) constituting a Final Payment hereunder until all reports and/or other submittals specified in the **Contract(s)** (as extended and amended by **Attachment D**) shall have been received and accepted.

**6.5.   TWICE MONTHLY PAYMENTS FOR FIRST TWO MONTHS.** For the first two (2) months of this Contingent Buy-Against Requirements Agreement, i.e., January and February of 2014, the BOE shall make payments to the Contractor twice each month based upon invoices that the Contractor shall submit on the sixteenth (16th) day of each month and the first day of each succeeding month, which invoices shall be subject to BOE approval. The Contractor shall utilize the Board's electronic invoice system.

**7..   INDEMNIFICATION.**

A.   The BOE agrees to defend, indemnify and hold harmless the Contractor from any and all liability the Contractor may have, if any, resulting from the Contractor's entry into this Agreement and/or the performance of services under this Contingent Buy-Against Requirements Agreement, to make payments solely for any wage or benefit underpayments by the Bankrupt Contractor during the period from March 22, 2013 to August 28, 2013 together with such other damage or interest as may be assessed in connection therewith, pursuant to a decision of an Administrative Law Judge before the National Labor Relations Board ("NLRB") dated September 20, 2013, to the extent that such decision is adopted (including with amendments or modifications) by order of the NLRB and/or Court ruling (collectively, the "Indemnified Claim Amount") with respect to the Bankrupt Contractor's services provided pursuant to agreements with the BOE and arising out of the Bankrupt Contractor's declaring an impasse in collective bargaining negotiations on March 19, 2013, for which the Contractor is alleged to be legally responsible.

B.   The BOE will fulfill this indemnification and hold harmless obligation by reimbursing the Contractor for such Indemnified Claim Amount as the Contractor may be found by an appropriate adjudicative body to be liable to pay. This reimbursement will take place within a reasonable time following presentation of an invoice to the BOE. BOE will work with the Contractor on the timing of any required payments

CONTINGENT BUY-AGAINST REQUIREMENTS AGREEMENT FOR SCHOOL BUS TRANSPORTATION SERVICES  - Page 8 -

and the BOE shall not attach, withhold or offset any amounts necessary to satisfy this indemnification from payments otherwise due the Contractor.

C. The BOE, at its own expense and with counsel of its choosing, shall defend any claim for the Indemnified Claim Amount. As part of that defense, the BOE may prosecute any appeal on behalf of the Contractor it deems appropriate to any court or administrative body. In addition, the BOE may, at its own expense and with counsel of its choosing, initiate or prosecute any action brought, either by the Contractor or by BOE in the name of the Contractor, to challenge any allegation, finding or determination regarding the Indemnified Claim Amount. The BOE shall control the defense of, and may settle, any such action without the approval of the Contractor to the extent the settlement is within the BOE's indemnification. The Contractor may participate in any such action at its own expense. The BOE shall not be responsible for any legal fees incurred by the Contractor or the Bankrupt Company(ies), either before or after the effective date of this Agreement. The Contractor shall cooperate with the BOE in such defensive and affirmative legal proceedings and shall diligently render to the BOE without additional compensation all assistance which BOE may reasonably require of the Contractor.

D. The Contractor shall forward a copy of all legal papers (including claims and demand letters) served upon it related to any obligation that it believes is covered by this indemnification, as well as any legal papers related to a claim for the Indemnified Claim Amount or a claim, action, or proceeding which alleges that the Contractor is a successor to a Bankrupt Company, to the BOE Office of General Counsel, 52 Chambers Street, Room 308, New York, NY 10007-1222, and the Chief of the Commercial and Real Estate Litigation Division, New York City Law Department, 100 Church Street, New York, NY 10007, in a manner so that the papers are received by said offices within three business days from the date the contractor was served with said papers, and, where applicable, a statement requesting that the BOE indemnify and hold the Contractor harmless pursuant to the terms of this Agreement.

E. The Contractor's exclusive remedy against BOE to obtain payment for the Indemnified Claim Amount or any claim that the Contractor may be obliged to pay as a successor to the Bankrupt Contractor or the Bankrupt Companies shall be under this provision.

F. The BOE's obligation to defend, indemnify and hold harmless is dependent upon the Contractor's compliance with its obligations under this Contingent Buy-Against Requirements Agreement in all material respects. The indemnification obligations expressed in this **Paragraph Error! Reference source not found.7** shall survive any termination of this Contingent Buy-Against Requirements Agreement.

8. **CONDITIONS PRECEDENT.** This Contingent Buy-Against Requirements Agreement shall not become effective or binding upon the BOE until: (i) it shall have been approved as to legal sufficiency by the BOE Office of Legal Services; (ii) it shall have been executed by the Chancellor or his/her designee; (iii) it shall have been approved as to legal authority by the New York City Law Department; (iv) it shall have been registered by the Comptroller, if and to the extent required by law; and, (v) it shall have been approved by the New York State Education Department, if applicable. Items (iv) and (v) in the preceding sentence shall not apply during the Emergency Period and, if any, the Emergency Renewal Period, but they shall be required for this Contingent Buy-Against Requirements Agreement to be effective for the full Term. A Requirements Agreement for an extended period will require an endorsement upon the Agreement from time to time as services and/or items and materials are ordered, of the sufficiency of the appropriation applicable towards the payment for said services and/or materials as and when ordered.

CONTINGENT BUY-AGAINST REQUIREMENTS AGREEMENT FOR SCHOOL BUS TRANSPORTATION SERVICES        - Page 9 -

9. **CONDITIONS PRECEDENT RELATED TO THE BANKRUPTCY CASES.** This Contingent Buy-Against Requirements Agreement shall not become binding upon the BOE unless and until **(i)** the **Bankrupt Contract** (as extended and amended by **Attachment D**) shall have been rejected by the Bankrupt Companies or the automatic stay shall have been lifted, either of which pursuant to an order of the Bankruptcy Court, **(ii)** the **Bankrupt Contract(s)** (as extended and amended by **Attachment D**) shall have been terminated by BOE after any appropriate stay relief has been obtained from the Bankruptcy Court by BOE, or **(iii)** the BOE determines, in its sole discretion, that no further authorization or order of the Bankruptcy Court is necessary. The Contractor stipulates and agrees that the Contractor and/or its trustees, successors and/or assigns shall make no demand for, nor be entitled to receive, any payment, compensation, costs, expenses, damages and/or liabilities in the event that **(i)** the contingencies in the preceding sentence are not satisfied, or **(ii)** this Contingent Buy-Against Requirements Agreement does not become effective as a result of an order entered in the Bankruptcy Cases.

10. **DUTY TO REPORT.** The Contractor represents and warrants that neither it nor any of its directors, officers, members, partners, employees and/or Affiliates, has any interest nor shall any of them acquire any interest, directly or indirectly, which would or may conflict in any manner or degree with the performance or rendering of the services provided under this Agreement. The Contractor further represents and warrants that, in the performance of this Agreement, no Person having such interest or possible interest shall be employed or otherwise engaged by it. The Contractor and its Workforce must report to the Office of the Special Commissioner of Investigation for the New York City School District (herein expressed as "SCI"), 80 Maiden Lane, 20th Floor, New York, NY 10038, (212) 510-1500, (877) 888-8355, any such interest or possible interest. The Contractor and its Workforce must also report to the SCI any criminal activity of which they have knowledge concerning the execution or the performance of this Agreement. The Contractor must inform, in writing, each Workforce member of his/her duty to report.

11. **AFFIRMATION OF RESPONSIBILITY AND PAID TAXES.** The Contractor hereby affirms and declares that the Contractor is not in arrears to the City of New York upon any debt, contract and/or taxes and is not a defaulter, as a surety or otherwise, upon any obligation to the City of New York, and has not been declared not responsible, or disqualified, by any City of New York agency, nor is there any proceeding pending regarding the responsibility or qualification of the Contractor to receive public contracts except as stated in the affirmation pertaining to the foregoing which has been furnished to the BOE.

12. **EFFECT UPON THE CONTRACT(S) AS PREVIOUSLY AMENDED AND EXTENDED.** All other provisions of the **Contract(s)** (as extended and amended by **Attachment D**) as amended by the 1984 Extension and Fourth Amendment Agreement, by the 1987 Extension and Fifth Amendment Agreement, by the 1990 Extension and Sixth Amendment Agreement, by the 1993 Extension and Seventh Amendment Agreement, by the 1995 Extension and Eighth Amendment, by the 1996 Supplemental Ninth Amendment Agreement, by the 2000 Extension and Eleventh Amendment Agreement, by 2003 the Supplemental Twelfth Amendment of Contract, by the 2005 Extension and Thirteenth Amendment Agreement, by the Corrective Fourteenth Amendment Agreement, by the 2007 Supplemental Fifteenth Amendment Agreement, and by the 2010 Extension and Sixteenth Amendment Agreement, *except* those provisions herein noted and revised, shall be and remain unchanged and in full force and effect throughout the Term as expressed in **Paragraph 3**, *supra*. The 1998 Supplemental Tenth Amendment Agreement for Project Read is no longer in any force and effect and is null and void for purposes of this Contingent Buy-Against Requirements Agreement.

13. **GRACE PERIOD FOR NAME ON CONTRACTOR'S VEHICLES.** The BOE and the Contractor agree that the BOE shall afford the Contractor a grace period of sixty (60) days after the start of this Contingent Buy-Against Requirements Agreement to arrange for a permanent change of the ownership and registration of vehicles used

CONTINGENT BUY-AGAINST REQUIREMENTS AGREEMENT FOR SCHOOL BUS TRANSPORTATION SERVICES - Page 10 -

under this Contingent Buy-Against Requirements Agreement and the contractor name(s) and information that appears on the sides of each school bus from the name(s) and information of the Bankrupt Company(ies) to the name and information of the Contractor to the extent permitted by applicable law and regulations. During the said grace period, the Contractor may, at its option, use such temporary decals and/or other temporary signage to signify its operation of affected vehicles as approved by the U.S. Department of Transportation and/or the New York State Department of Transportation. Nevertheless, the Contractor shall arrange for the name(s) and information of the Bankrupt Company(ies) to be concealed in a manner compliance with Federal and New York State laws, rules and regulations. During the said grace period, the BOE shall not deduct liquidated damages from any payment to the Contractor arising from the Contractor's actions in compliance with the first and second sentences of this **Paragraph 13**.

**14.** If the BOE elects to extend other contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 beyond June 30, 2015, then, to the extent permitted by law, and subject to New York State Education Department approval, this contract may be extended under the same terms set forth herein except that there shall be a 10% reduction in the daily rates per vehicle.

[NO FURTHER TEXT APPEARS ON THIS PAGE.]

CONTINGENT BUY-AGAINST REQUIREMENTS AGREEMENT FOR SCHOOL BUS TRANSPORTATION SERVICES

IN WITNESS WHEREOF, the Board of Education of the City School District of the City of New York has executed this Contingent Buy-Against Requirements Agreement with the Contractor listed on the next page as of the day and year first above written.

**BOARD OF EDUCATION OF
THE CITY SCHOOL DISTRICT OF
THE CITY OF NEW YORK**

By: _____
 Eric Goldstein, Chief Executive
 for School Support Services, for the Chancellor

**BOARD OF EDUCATION ACKNOWLEDGMENT**

STATE OF NEW YORK }
 } SS.:
COUNTY OF QUEENS }

On this _16th_ day of _January_, 20_14_, before me, the undersigned, a Notary Public in and for said State, personally appeared one Eric Goldstein, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual or person upon behalf of which the individual acted, executed the instrument.

LUZ IVETTE CHARON
Notary Public, State of New York
No. 01CH6062472
Qualified in Kings County
Commission Expires August 06, 2017

_____
NOTARY PUBLIC

Approval as to description of Services and availability of funding:

_____
Alexandra Robinson
Executive Director, Office of
Pupil Transportation

Approval as to legal sufficiency:

Michael P. Coneys, Attorney
Office of Legal Services, 12-19-2013

CONTINGENT BUY-AGAINST REQUIREMENTS AGREEMENT FOR SCHOOL BUS TRANSPORTATION SERVICES

IN WITNESS WHEREOF, the Contractor named below has executed this Contingent Buy-Against Requirements Agreement with the Board of Education of the City School District of the City of New York as of the day and year first above written.

Jofaz Transportation, Inc.
1 Coffey Street
Brooklyn, New York, 11231

By: _____
    (Signature)
    Joseph A. Fazzia Jr.
    (Print Name)
    President
    (Print Title)

Taxpayer Identification No. 11-2497713

CONTRACTOR ACKNOWLEDGMENT

STATE OF NEW YORK      }
                       }  SS.:
COUNTY OF Kings        }

On this 26th day of December, 2013, before me, the undersigned, a Notary Public in and for said State, personally appeared one Joseph Fazzia Jr., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

LUZ IVETTE CHARON
Notary Public, State of New York
No. 01CH6062472
Qualified in Kings County
Commission Expires August 06, 2017

BUY-AGAINST REQUIRERMENTS AGREEMENT FOR REPAIR OF CAFETERIA AND KITCHEN EQUIPMENT — Page 13 —

Buy-Against Requirements Agreement:

Approved as to form and
certified as to legal authority:

_____
Assistant Corporation Counsel
New York City Law Department