# EXHIBIT 1

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIVISION 1181 AMALGAMATED TRANSIT UNION – NEW YORK EMPLOYEES PENSION FUND and its BOARD OF TRUSTEES,<br><br>Plaintiffs,<br><br>vs.<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION, JOFAZ TRANSPORTATION, INC., ALLIED TRANSIT CORP., PRIDE TRANSPORTATION SERVICES, INC. and QUALITY TRANSPORTATION CORP.,<br><br>Defendants. | Civil Action No. 1:14-cv-7405 (ERK)(SMG) |

**DEFENDANT DOE'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

MORGAN, LEWIS & BOCKIUS LLP
David A. McManus
Melissa D. Hill
Michael F. Fleming
101 Park Avenue
New York, NY 10178
Tel.: (212) 309-6000
Fax: (212) 309-6001

*Attorneys for Defendant Board of Education of the City School District of the City of New York a/k/a New York City Department of Education*

## III. The Employee Protection Provisions

Many of the DOE's contracts with private bus companies, including the Contracts at issue here, contain provisions known as "Employee Protection Provisions" ("EPPs"). See Extension and Sixteenth Amendment Agreement of Special Education Pupil Transportation Requirements Contract, which includes the relevant EPPs contained in contracts between the DOE and Defendant Contractors ("Contractor EPPs"), annexed to the Fleming Decl. at Exhibit 3. The EPPs at issue provide, in relevant part:

> The Contractor shall sign an agreement with Division 1181 A.T.U.-New York Employees Pension Fund and Plan to participate in such plan on behalf of all operators (drivers), mechanics, dispatchers, and escorts (matrons-attendants), in the event the Contractor employs escorts, who appear on the Master Seniority Lists and who participated in the Fund and Plan as of June 30, 2010. *This requirement shall not be interpreted to require any existing contractor or new contractor to enter into a collective bargaining agreement with the union, nor shall it prohibit any new contractor to enter into a collective bargaining agreement with the union.* The Contractor shall file a copy of the executed agreement with the Trustees of the Fund and Plan to participate in said Fund and Plan with the Director before the start of any school bus service under the Contract.

Id. at ¶ 4 (emphasis added).

The EPPs in the Contracts also contain an enforcement procedure (the "Enforcement Provision," referred to by Plaintiffs as the "Attachment Procedure Obligation"), that provides:

> *[I]if the contractor is found to be in violation* of the foregoing Employee Protection Provisions regarding the payment of wages, welfare benefit contributions, pension contributions, or other aspects of compensation or benefits, then [the DOE's] Director of the Office of Pupil Transportation, within thirty (30) days of written notice, shall withhold the appropriate amounts from any payment due to the contractor and pay them directly to the applicable union for the benefit of the employees affected, to the Division 1181 A.T.U. – New York Employees Pension Fund or other applicable union pension fund for the benefit of the

5

which, when accepted as true, "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 558 (2007); see also Iqbal, 556 U.S. 662. A claim has "facial plausibility" only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The standard under Rule 12(b)(6) demands that a plaintiff set forth facts that go beyond "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." Id. (citing Twombly, 550 U.S. at 555, 557). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## II. PLAINTIFFS' CLAIMS FAIL BECAUSE A CONDITION PRECEDENT TO ANY ATTACHMENT OR WITHHOLDING OBLIGATION HAS NOT OCCURRED.

As a threshold issue, Plaintiffs' claims are all premised upon a contention that the DOE had an obligation to withhold or attach delinquent contributions allegedly owed to the Fund by the Contractors. These claims fail because a condition precedent necessary for the DOE to withhold or attach the payments under the Contracts never arose. See, e.g., DeVito v. Hempstead China Shop, 38 F.3d 651, 654 (2d Cir. 1994) (holding that, if the plain terms of an agreement do not require contributions absent the existence of a condition precedent and the condition is not met, then the employer is not required by ERISA Section 515 to continue to make contributions).

By Plaintiffs' admission and the Contracts' plain language, the Enforcement Provision requires that there be a "finding" of delinquency before the DOE is required to withhold or attach any payments to the Contractors and redirect any monies to the Fund. See Contractor EPPs (Fleming Decl., Ex. 3), § H, ¶ 5 (*[I]if the contractor is found to be in violation of the foregoing Employee Protection Provisions . . . [the DOE] shall withhold . . .*) (emphasis added). Although the Contracts do not set forth a specific process by which a "finding" can be made, the

9

Enforcement Provision clearly does *not* say the mere unilateral request of the Union – which is all that is alleged here – suffices to trigger the duty to attach. The only reasonable interpretation of the Enforcement Provision is that it requires *more than* a unilateral attachment request by the Plaintiffs.

A "finding" in a legal or contractual context is widely understood to mean a formal and final conclusion drawn after reasoned deliberation by a neutral third party. See, e.g., Johnson v. Redev't Agency of Salt Lake Cty., 913 P.2d 723, 730 (Utah 1996) ("[T]he term 'finding' is commonly understood to connote a formal, written determination of a disputed issue by an adjudicative body."); Cal. Empl't Comm'n v. Malm, 138 P.2d 744, 746 (Cal. Dist. Ct. App. 1943) ("a 'finding' is a word in common use implying some sort of judicial or quasi-judicial determination of a disputed state of facts"); see also Black's Law Dictionary 291 (3d. Pocket Ed. 2006) (defining "Finding of Fact" as "[a] determination by a judge, jury, or administrative agency of a fact supported by the evidence in the record . . ."). No such finding has ever been issued in connection with this dispute, and Plaintiffs do not and cannot allege as much. Indeed, such a "finding" is exactly what the Plaintiffs seek from the Court in this litigation.

Notably, the Bankruptcy Court for the Southern District of New York in In re Metro Affiliates, Inc., et al. analyzed precisely the same EPP language at issue in this case, and rejected the same argument that the Fund's mere demand for payment constitutes a finding. The bankruptcy court observed that "what constitutes a finding [under the Enforcement Provision of the EPPs], . . . *requires something more than the union's unilateral determination that a violation occurred. In fact, the union's position on this score is fundamentally at odds with the*

*notion of a finding in the first place.*" See In re Metro Affiliates, No. 13-13591-shl, slip op. at 38-39 (emphasis added).[5]

As the court in In re Metro Affiliates recognized, it is illogical to conclude that Plaintiffs' unilateral assertion of delinquency constitutes a "finding" for purposes of triggering the Enforcement Provision in the EPPs. In the absence of a decision by a neutral fact-finder that the Contractors owed contributions to the Fund, the DOE had no obligation to withhold or attach any payments to the Contractors. Without any such obligation, the entire premise of Plaintiffs' claims against the DOE falls apart, and the claims must be dismissed in their entirety.

### III. PLAINTIFFS' DELINQUENT CONTRIBUTION CLAIM AGAINST THE DOE FAILS BECAUSE THE DOE HAD NO OBLIGATION TO CONTRIBUTE TO THE FUND.

In their Fifth Count – the first asserted against the DOE – Plaintiffs claim that the DOE is liable to the Fund under ERISA's delinquent contribution provision, *i.e.*, Section 515. 29 U.S.C. § 1145. Section 515 provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145. "[T]o be liable under Section 515, a defendant must (1) have contribution obligations that arise from either a 'plan' or a 'collectively bargained agreement' and (2) be an 'employer' within the meaning of ERISA." Cummings v. City of New York, 302 F. Supp. 3d 511, 522 (S.D.N.Y. 2017) (holding that no Section 515 claim lay against the City where no enforceable contribution obligation existed under the operative plan document or CBA).

---

[5] A true and correct copy of the bankruptcy court's April 3, 2014 decision in In re Metro Affiliates, Inc., et al., which was issued on the record at a hearing on Union's motion for reconsideration, is annexed to the Fleming Decl. as Exhibit 4.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint as against the DOE with prejudice.

Dated: October 12, 2018  Respectfully submitted,


MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Melissa D. Hill*
    David A. McManus
    Melissa D. Hill
    Michael F. Fleming
101 Park Avenue
New York, NY 10178-0060
Phone: (212) 309-6000
Fax: (212) 309-6001
david.mcmanus@morganlewis.com
melissa.hill@morganlewis.com
michael.fleming@morganlewis.com

*Attorneys for Defendant Board of Education of the City School District of the City of New York d/b/a New York City Department of Education*