UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DIVISION 1181 AMALGAMATED TRANSIT
UNION – NEW YORK EMPLOYEES PENSION
FUND and its BOARD OF TRUSTEES,

     Plaintiffs,

   v.

NEW YORK CITY DEPARTMENT OF
EDUCATION, JOFAZ TRANSPORTATION,
INC., ALLIED TRANSIT CORP., PRIDE
TRANSPORTATION SERVICES, INC., and
QUALITY TRANSPORTATION CORP.,

     Defendants.

Case No.: 14-CV-7405(ERK)(SMG)


**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
JOFAZ TRANSPORTATION, INC. AND ALLIED TRANSIT CORP.'S
<u>MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**


**MILMAN LABUDA LAW GROUP PLLC**

Richard I. Milman, Esq.
Netanel Newberger, Esq.
*Attorneys for Defendants Jofaz Transportation, Inc.
and Allied Transit Corp.*
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
Tel: (516) 328-8899
Fax: (516) 328-0082

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................. **1**

**ARGUMENT** ............................................................................................. **1**

   **I.**    **THE FUND HAS FAILED TO PROPERLY ADDRESS THE INSTANT MOTION TO DISMISS TO THE EXTENT THAT IT SEEKS DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(1)**............................................... **1**

   **II.**    **PLAINTIFFS LACK STANDING AS A THIRD-PARTY BENEFICIARY** ........... **3**

   **III.**  **PLAINTIFFS CANNOT SET FORTH A CLAIM UNDER ERISA AGAINST ALLIED AND JOFAZ SINCE THEY WERE NOT AND ARE NOT CONTRACTUALLY OBLIGATED TO CONTRIBUTE TO THE FUND** ..................... **11**

   **IV.**   **PLAINTIFFS' STATE LAW CLAIM MUST BE DISMISSED**.............................. **24**

**CONCLUSION** ........................................................................................ **25**

## TABLE OF AUTHORITIES

### Cases

Abreu v. Fairway Mkt. LLC, 2018 U.S. Dist. LEXIS 124452 (S.D.N.Y. July 24, 2018) ........... 11

Artwear, Inc. v. Hughes, 202 A.D.2d 76, 615 N.Y.S.2d 689 (1st Dep't 1994) ............................ 5

Bancorp Servs., LLC v. Am. Gen. Life Ins. Co., 2016 U.S. Dist. LEXIS 18330
(S.D.N.Y. Feb. 11, 2016) .................................................................................................... 5

Barbu v. Life Ins. Co. of N. Am., 987 F. Supp. 2d 281 (E.D.N.Y. 2013) .................................... 13

Barragan-Aquino v. E. Port Excavation & Utils. Contractors, Inc., 2014 U.S. Dist. LEXIS 36274
(E.D.N.Y. Mar. 18, 2014) .................................................................................................... 4

Bleiler v. Cristwood Constr., Inc., 71 F.3d 13 (2d Cir. 1995) ................................................... 20

Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258 (2d Cir. 1990) ................... 12

Cal. Pub. Emples. Ret. Sys. v. Shearman & Sterling, 95 N.Y.2d 427 (2000) ............................... 4

Canario v. Lidelco, Inc., 782 F. Supp. 749 (E.D.N.Y. 1992) ...................................................... 20

Carter v. HealthPort Techs., LLC, 822 F.3d 47 (2d Cir. 2016) ..................................................... 2

Catskill Litig. Tr. v. Park Place Entm't Corp., 169 F. App'x 658 (2d Cir. 2006) .......................... 5

Chem. Bank v. Arthur Andersen & Co., 726 F.2d 930 (2d Cir. 1984) .......................................... 2

De Lage Landen Fin. Servs. v. Rasa Floors, LP, 2009 U.S. Dist. LEXIS 30429
(E.D. Pa. Mar. 31, 2009) ...................................................................................................... 6

Debary v. Harrah's Operating Co., 465 F. Supp. 2d 250 (S.D.N.Y. 2006) .................................. 5

Div. 1181 A.T.U. - N.Y. Emples. Pension Fund v. City of New York Dep't of Educ.,
910 F.3d 608 (2d Cir. 2018) .......................................................................... 8, 9, 11, 23, 25

Exch. Nat. Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126 (2d Cir. 1976) ...................... 2

Glaser v. Upright Citizens Brigade, LLC, 2019 U.S. Dist. LEXIS 53138
(S.D.N.Y. Mar. 28, 2019) .......................................................................................... 2, 10, 19

Hahn v. Nat'l Bank, N.A., 99 F. Supp. 2d 275 (E.D.N.Y. 2000) ................................................. 12

Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238 (2000) ....................... 24

Ignaziof Messina & C.S.P.A. v. Ocean Repair Serv. Co., 1991 U.S. Dist. LEXIS 8135
(S.D.N.Y. June 13, 1991) ...................................................................................................... 5

Kathleen Moglia v. James Geoghegan et al., as trustees of Local 282 Pension Trust Fund,
403 F.2d 110 (2d Cir. 1968) .......................................................................................... 17, 23

Klein & Co. Futures, Inc v. Bd. of Trade, 464 F.3d 255 (2d Cir. 2006) ..................................... 24

Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan, 239 F. Supp. 3d 710
(S.D.N.Y. 2017) .................................................................................................................... 12

LaSalle Nat'l Bank v. Ernst & Young LLP, 285 A.D.2d 101, 729 N.Y.S.2d 671
(1st Dep't 2001) ................................................................................................................ 4, 5

L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. of N.Y., 2018 U.S. Dist. LEXIS 88354
(E.D.N.Y. May 25, 2018) .................................................................................................. 7, 8

Mendel v. Henry Phipps Plaza W., Inc., 6 N.Y.3d 783 (2006) ..................................................... 5

NYSA-ILA Med. & Clinical Servs. Fund by & Through Capo v. Catucci, 60 F. Supp. 2d 194
(S.D.N.Y. 1999) ................................................................................................................... 22

Vynerib v. Btig LLC, No. 652898/11, 2013 WL 2256307 (N.Y. Sup. Ct. May 20, 2013) ........... 5

Metro. Alliance of Police v. Northeast Ill. Reg'l Commuter R.R. Corp.,
2018 U.S. Dist. LEXIS 148621 (N.D. Il. Aug. 31, 2018) ................................................... 2

Myron v. Tr. Co. Bank Long Term Disability Ben. Plan, 522 F. Supp. 511 (N.D. Ga. 1981) ..... 13

Newton v. City of New York, 738 F. Supp. 2d 397 (S.D.N.Y. 2010) ........................................ 11

New York State Teamsters Conf. Pension & Ret. Fund v. UPS, 198 F. Supp.2d 188
(N.D.N.Y. 2002), aff'd 382 F.3d 272 (2d Cir. 2004) ....................................................... 17

Oost-Lievense v. N. Am. Consortium, P.C., 969 F. Supp. 874 (S.D.N.Y. 1997)...................... 5

Pettaway v. Teachers Ins. & Annuity Ass'n of Am., 644 F.3d 427 (D.C. Cir. 2011)............... 13

Phifer v. City of N.Y., 289 F.3d 49 (2d Cir. 2002)................................................................ 2

PMTA-ILA Containerization Fund v. Rose, 1995 U.S. Dist. LEXIS 10877
(E.D. Pa. Aug. 1, 1995).................................................................................................. 22

Pollock v. Ridge, 310 F. Supp. 2d 519 (W.D.N.Y. 2004) .................................................... 6

Rahm v. Halpin, 566 F.3d 286 (2d Cir. 2009) ............................................................ 21, 24

Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007)........................................................... 3, 9, 16

Rinehart v. Akers, 722 F.3d 137 (2d Cir. 2013), vacated and remanded on other grounds,
134 S. Ct. 2900 (2014)................................................................................................... 23

Sanchez v. City of New York, 2017 U.S. Dist. LEXIS 123557 (S.D.N.Y. Aug. 4, 2017)............ 2

Septembertide Pub., B.V. v. Stein & Day, Inc., 884 F.2d 675 (2d Cir. 1989)............................. 5

Sheet Metal Workers Local Union No. 137 v. Metro. Sign & Rigging Corp.,
2016 U.S. Dist. LEXIS 125219 (E.D.N.Y. Sep. 13, 2016)................................................. 22

Silverman v. Teamsters Local 210 Affiliated Health and Ins. Fund, 761 F.3d 277
(2d Cir. 2014)........................................................................................................... 12, 13

Solutia Inc. v. FMC Corp., 385 F. Supp. 2d 324 (S.D.N.Y. 2005)........................................ 4

State Emps. Bargaining Agent Coal, v. Rowland, 494 F.3d 71 (2d Cir. 2007)...................... 1, 2

Sutton v. Weirton Stell Div. of Nat. Steel Corp., 724 F.2d 4016 (4th Cir. 1983), cert. denied,
467 U.S. 1205 (1984)..................................................................................................... 22

Tetreault v. Reliance Standard Life Ins. Co., 769 F.3d 49 (1st Cir. 2014) ................................. 13

Tradition Chile Agentes De Valores Ltda v. ICAP Sec. USA LLC,
2010 U.S. Dist. LEXIS 123673 (S.D.N.Y. Nov. 5, 2010) ...................................................... 4

Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566 (2d Cir. 1991) ........... 5

Trustees of the National Automatic Sprinkler Industry Pension Fund, et al., v. Fairfield
County Sprinkler Company, Inc., 243 F.3d 112 (2d Cir. 2001) .............................................. 17

## Statutes

28 U.S.C. §1367......................................................................................................... 24

29 U.S.C. § 186 ......................................................................................................... 17

29 U.S.C. § 1002 ....................................................................................................... 12

29 U.S.C. § 1106 ....................................................................................................... 24

## Rules

Fed. R. Civ. P. 12(b)(1)........................................................... 1, 2, 3, 5, 9, 10, 19

Fed. R. Civ. P. 12(b)(6)............................................................... 1, 2, 3, 5, 9, 16

## PRELIMINARY STATEMENT

Defendants Jofaz Transportation, Inc. ("Jofaz") and Allied Transit Corp. ("Allied") (collectively, "Defendants") submits this reply memorandum of law in further support of their motion to dismiss the First Amended Complaint ("Complaint") by Plaintiffs Division 1181 Amalgamated Transit Union – New York Employees Pension Fund and its Board of Trustees ("Plaintiffs" or "the Fund") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), respectively for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

## ARGUMENT

**I.    THE FUND HAS FAILED TO PROPERLY ADDRESS THE INSTANT MOTION TO DISMISS TO THE EXTENT THAT IT SEEKS DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(1)**

Throughout its opposition, the Fund repeatedly alleges that on a motion to dismiss, the Court must accept all factual allegations in the Complaint as true; this is the standard on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  See, e.g., Plaintiffs' Memorandum of Law in Opposition dated February 12, 2019 ("Memo. Opp."), pp. 9, 16.  However, the Fund completely failed to mention, address or respond to Jofaz and Allied's motion to dismiss Fed. R. Civ. P. 12(b)(1) argument.  In fact, in the Fund's entire opposition papers there is <u>not</u> <u>one</u> <u>reference</u> at all to the fact that Jofaz and Allied also sought dismissal pursuant to Fed. R. Civ. P. 12(b)(1), including the Fund's opposition standard of review argument.

As referenced in Jofaz and Allied's memorandum of law, courts deciding Fed. R. Civ. P. 12(b)(1) motions are not limited to the face of the complaint and may consider extrinsic relevant evidence beyond the pleadings to resolve disputed factual issues. <u>State Emps. Bargaining Agent</u>

Coal, v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007); Phifer v. City of N.Y., 289 F.3d 49, 55 (2d Cir. 2002).

Moreover, in accordance with a Rule 12(b)(1) motion, Plaintiff must "come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on a 12(b)(1) motion…reveal the existence of factual problems in the assertion of jurisdiction." Glaser v. Upright Citizens Brigade, LLC, 2019 U.S. Dist. LEXIS 53138, at *9 (S.D.N.Y. Mar. 28, 2019) (quoting Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016)). "[A] party opposing a Rule 12(b)(1) motion cannot rest on the mere assertion that factual issues may exist." Exch. Nat. Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976), modified sub nom. Chem. Bank v. Arthur Andersen & Co., 726 F.2d 930 (2d Cir. 1984).

As such, to the extent that the Fund has only restated the allegations pled in its Complaint rather than avail itself of the opportunity pursuant to 12(b)(1) to "come forward with evidence of their own to controvert that presented" in order to oppose disputed factual issues raised and argued with supporting evidence by Jofaz and Allied in their motion to dismiss, the Fund has demonstrably failed to oppose the instant motion, warranting this Court to grant dismissal. See Sanchez v. City of New York, 2017 U.S. Dist. LEXIS 123557, at *4 (S.D.N.Y. Aug. 4, 2017) (granting motion to dismiss pursuant to 12(b)(1) and 12(b)(6), noting that "At the outset, the Court notes that these plaintiffs, who are represented by counsel, filed an opposition to the motions to dismiss that makes no attempt to respond to any of defendants' legal arguments. Therefore, plaintiffs have abandoned their claims"); Metro. Alliance of Police v. Northeast Ill. Reg'l Commuter R.R. Corp., 2018 U.S. Dist. LEXIS 148621 at **19, 21 (N.D. Il. Aug. 31, 2018) (granting motion to dismiss pursuant to 12(b)(1) when plaintiff failed to properly address

defendants' 12(b)(1) argument, holding that "Although the Court has considered Defendants' position substantively and found it meritorious on the 12(b)(1) issue, the Court stresses that any opposition to our conclusion was waived when Plaintiffs abandoned their jurisdictional responsibility").

## II.    PLAINTIFFS LACK STANDING AS A THIRD-PARTY BENEFICIARY

### 1.  The Court Should Determine Intended Third-Party Beneficiary Status on the Instant Motion to Dismiss

Jofaz and Allied's instant motion to dismiss stated that the Fund is not entitled to enforce, as third-party beneficiaries, the Employee Protection Provisions ("EPP") within the "Contingent Buy-Against Requirements Agreements for School Bus Transportation Services" ("Emergency Contracts") that Jofaz and Allied entered into with the Department of Education ("DOE"), effective January 2, 2014 and ending June 30, 2015. See Declaration of Richard I. Milman, Esq. dated October 12, 2018 (hereinafter "Milman Dec."), Ex. C, D. In opposition, the Fund cites a litany of cases for the proposition that determination of an intended third-party beneficiary status is inappropriate for resolution on a motion to dismiss. Memo. Opp., pp. 10-12. However, as set forth below, the Fund's proposition lacks any basis.

First, it has already been argued by Jofaz and Allied hereinabove that the instant motion to dismiss was made not only pursuant to Fed. R. Civ. Proc. 12(b)(6), but also Fed. R. Civ. Proc. 12(b)(1), where the Court is not limited to the face of the complaint and may consider evidence outside the pleadings to resolve disputed factual issues.

Second, in deciding a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), the Court may consider documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). Clearly, the

3

Emergency Contracts produced by Jofaz and Allied in the instant motion to dismiss are documents integral to the Complaint and relied upon in it.[1]  As such, in this matter, the Court can and should look outside the face of the Complaint to determine whether the Fund is a third-party beneficiary of the EPP.

Third, the Fund's assertion that determination of an intended third-party beneficiary status is inappropriate for resolution on a motion to dismiss is clearly false.  In the following cases, the courts granted a motion to dismiss a third-party beneficiary claim: Barragan-Aquino v. E. Port Excavation & Utils. Contractors, Inc., 2014 U.S. Dist. LEXIS 36274, at *22 (E.D.N.Y. Mar. 18, 2014) (dismissing third-party beneficiary breach of contract claim where defendants had "no duty under the contract" to render performance to plaintiffs); Tradition Chile Agentes De Valores Ltda v. ICAP Sec. USA LLC, 2010 U.S. Dist. LEXIS 123673, at *28 (S.D.N.Y. Nov. 5, 2010) (granting defendants' motion to dismiss and finding that plaintiff lacked third-party beneficiary status where the "agreements evince[d] no intent to benefit" plaintiff); Solutia Inc. v. FMC Corp., 385 F. Supp. 2d 324, 337-38 (S.D.N.Y. 2005) (dismissing breach of contract claims where contract did not contain "explicit and direct" language that plaintiff was intended as a third-party beneficiary and "did not provide for any performance to be made directly" to plaintiff).  See also the following cases (which were cited in the motion to dismiss for Jofaz and Allied's instant motion to dismiss), which either granted a motion to dismiss a third-party beneficiary claim, affirmed the dismissal of a third-party beneficiary claim, or reversed a prior decision and dismissed a third-party beneficiary claim: Cal. Pub. Emples. Ret. Sys. v. Shearman & Sterling, 95 N.Y.2d 427 (2000); LaSalle Nat'l

---

[1] See, e.g., Complaint, ¶ 42 ("The EPP in the Contracts between DOE and each of the Contractors obligates the Contractors to participate in the Fund on behalf of employees who previously participated in the Fund that the Contractor hires from the Master Seniority Lists and obligates the Contractors, and, through the attachment procedure discussed below, the DOE, to pay employer contributions to the Fund and withhold and pay employee contributions to the Fund on behalf of those employees at specified weekly dollar rates").

Bank v. Ernst & Young LLP, 285 A.D.2d 101, 729 N.Y.S.2d 671 (1st Dep't 2001); Mendel v.

Henry Phipps Plaza W., Inc., 6 N.Y.3d 783 (2006); Vynerib v. Btig LLC, No. 652898/11, 2013

WL 2256307 (N.Y. Sup. Ct. May 20, 2013); Artwear, Inc. v. Hughes, 202 A.D.2d 76, 615

N.Y.S.2d 689 (1st Dep't 1994).

Finally, the cases cited by the Fund for the proposition that the intended third-party

beneficiary status is inappropriate for resolution on a motion to dismiss do not actually support the

Fund's argument and are easily distinguishable.

Preliminarily, most of the cases cited here by the Fund do not even concern a motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6). See Septembertide Pub., B.V. v. Stein &

Day, Inc., 884 F.2d 675 (2d Cir. 1989); Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.,

925 F.2d 566 (2d Cir. 1991); Debary v. Harrah's Operating Co., 465 F. Supp. 2d 250 (S.D.N.Y.

2006); Oost-Lievense v. N. Am. Consortium, P.C., 969 F. Supp. 874 (S.D.N.Y. 1997); Ignaziof

Messina & C.S.P.A. v. Ocean Repair Serv. Co., 1991 U.S. Dist. LEXIS 8135 (S.D.N.Y. June 13,

1991).

Moreover, even the few cases cited by the Fund that concern a motion to dismiss pursuant

to Fed. R. Civ. P. 12(b) do not state that the question of intended third-party beneficiary status

should never be resolved on a motion to dismiss. See, e.g., Bancorp Servs., LLC v. Am. Gen. Life

Ins. Co., No. 14-CV-9687 (VEC), 2016 U.S. Dist. LEXIS 18330, at *22 (S.D.N.Y. Feb. 11, 2016).

Further, the Fund vaguely glosses over most of these case without accurately addressing the

holding of the courts. In Catskill Litig. Tr. v. Park Place Entm't Corp., 169 F. App'x 658, 660 (2d

Cir. 2006), the Fund conveniently omitted the rest of the quoted holding, which emphasized that

the Second Circuit cannot determine third-party beneficiary status because the district court did

not consider it: "[W]hether Monticello is actually a third-party beneficiary of the contract signed

by Catskill is a fact-intensive inquiry that this Court is ill-equipped to undertake, particularly without the aid of the district court's prior consideration of the issue". In <u>De Lage Landen Fin. Servs. v. Rasa Floors, LP</u>, 2009 U.S. Dist. LEXIS 30429, at *27 (E.D. Pa. Mar. 31, 2009), the Fund also conveniently omitted the first part of the quoted holding, where the Court, in rejecting the motion to dismiss the third-party beneficiary claim, specifically notes the "conflicting evidence"; by contrast, in the instant matter, the Fund has not produced any evidence to contradict Jofaz and Allied's submissions, other than merely referring back to the Complaint's allegations. In <u>Pollock v. Ridge</u>, 310 F. Supp. 2d 519, 527 (W.D.N.Y. 2004), the court emphasized that it did not consider the provisions of the subject contract when it noted that it must look at the language of the contract in order to determine whether plaintiff was an intended third-party beneficiary; by contrast, in the instant matter, Jofaz and Allied have produced the Emergency Contracts at issue for the Court's consideration, and the Fund has not disputed that these are the relevant Emergency Contracts.

As such, the Fund's claim that the Court should not determine whether the Fund is an intended third-party beneficiary on the instant motion to dismiss must be rejected in its entirety.

**2. The Fund's Argument of Intended Third-Party Beneficiary Status of the Emergency Contracts Cannot be Substantiated or Corroborated**

The Fund argues that it plausibly alleged that in the Emergency Contracts, "the 'promissee' (DOE) intended to give the beneficiary (the Fund) the benefit of Jofaz and Allied's promises to enter into Participation Agreements with and pay contributions to the Fund." Memo. Opp., p. 13. However, as set forth below, the Court must reject this argument.

First, the Fund argues that "the Fund is repeatedly named throughout the EPP as an entity to which the Contractors have obligations." Memo. Opp., p. 13. As proof, the Fund cites to language in the EPP which provides that "[t]he Contractor shall sign an agreement with Division

1181 A.T.U. New York Employees Pension Fund and Plan to participate in such plan on behalf of all operators (drivers), mechanics, dispatchers and escorts (matrons-attendants), in the event the Contractor employs escorts, who appear on the Master Seniority Lists and who participated in the Fund and Plan." <u>See</u> <u>Milman</u> <u>Dec.</u>, <u>Ex.</u> B.  However, as noted in Jofaz and Allied's motion to dismiss, the Fund does not allege that it is a signatory to Allied's and Jofaz's Emergency Contracts with the DOE, or that Jofaz and Allied signed Participation Agreements with the Fund.  Moreover, the EPP is not part of Jofaz and Allied's Emergency Contracts with the DOE, only an "incidental mention" contained in the original contract with Atlantic Express, the bankrupt contractor.  <u>See</u> <u>Milman</u> <u>Dec.</u>, <u>Ex.</u> C, D.

Second, the Fund cites to the EPP's Attachment Procedure as supposed evidence that the Fund is a third-party beneficiary of the Emergency Contracts.  Memo. Opp., p. 13.  However, as noted in Jofaz and Allied's motion to dismiss, the EPP lists a number of potential recipients of the withheld funds which, not only potentially include the Fund, but also sets forth "shall withhold the appropriate amount from any payments due to the contractor and pay them directly to the <u>applicable union for the benefit of the employees affected</u>" or "other applicable union Pension Fund for the benefit of the employees affected or to the appropriate Welfare Fund for the benefit of the employees affected".[2]  <u>See</u> <u>Milman</u> <u>Dec.</u>, <u>Ex.</u> B.  As noted in Jofaz and Allied's motion to

---

[2] The intent of the EPP was not to obligate a contractor who already contributes to a non-1181 pension fund to contribute to a second (1181) pension fund, or to force an employee to participate in 1181's pension plan (which includes employee co-contributions in the amount of $38.50 for drivers and $28.50 for escorts, and the Fund allocates much of its monies for 1181 retirees who never worked for Jofaz and Allied).  The aforementioned is particularly true with Jofaz and Allied, who already participate in the Local 854 pension plan that has no employee co-contributions. The DOE has attempted to resurrect the EPP and rehabilitate the flaws of its 1979 version with subsequent minor versions, as evidenced in a recent case involving a challenge in 2018 by bus contractors to the bidding process for a contract with the DOE.  In <u>L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. of N.Y.</u>, 2018 U.S. Dist. LEXIS 88354 at *6 (E.D.N.Y. May 25, 2018), the Court noted that Section 4.5.4 of the proposed bid requires the contractor or subcontractor to "enter into a participation agreement" with the prior plan, which "imposes no greater obligations than those imposed on a majority of the other contributing employees in such Prior Plan"; this would eliminate the problem of having duplicative contributions to 2 pension plans).  The proposed bid would also require a contractor or subcontractor to contribute to the pension fund or plan in which the hiree most recently participated unless the hiree affirmatively opts out of the prior plan; this would address the problem of requiring an employee to make co-

dismiss (and which is not disputed by the Fund), Jofaz and Allied do not have a CBA with Local 1181 and have never participated in the Fund.  Instead, Jofaz and Allied have a CBA with Local 553 and remit contributions to the Local 854 Pension Fund for all employees in bargaining unit of drivers and escorts (also undisputed by the Fund).  As such, even if the EPP applied to Jofaz and Allied (which it does not), they have complied with the EPP's provisions: "shall withhold the appropriate amount from any payments due to the contractor and pay them directly to the applicable union for the benefit of the employees affected" or "other applicable union Pension Fund for the benefit of the employees affected or to the appropriate Welfare Fund for the benefit of the employees affected".  See Milman Dec., Ex. B.

Finally, the Fund's promisor/promisee argument is clearly and thoroughly rebutted by a very recent decision (four (4) months ago) from the Second Circuit that also involved the Fund, the DOE and the EPP, which found the DOE not to be a single employer, joint employer, or alter ego of the Contractors, and that the DOE had no obligation to contribute to the Fund.  See Div. 1181 A.T.U. - N.Y. Emples. Pension Fund v. City of New York Dep't of Educ., 910 F.3d 608, 617-618 (2d Cir. 2018).

### 3.  The Court can and should examine the facts to justify dismissal

In its opposition, the Fund argues that "Jofaz and Allied make a few highly-factual arguments purporting to dispute that they have any obligation to the Fund", and that these factual disputes "cannot justify dismissal because there are no allegations in the Complaint that support Jofaz and Allied's contentions."  Memo. Opp., p. 14.  Again, as noted above, to its own peril, the Fund completely ignored the fact that the instant motion to dismiss was not made solely pursuant

---

contributions to the 1181 pension the plan when the employee had already been participating in the Local 854 pension plan, which has no co-contributions.  L&M Bus Corp., 2018 U.S. Dist. LEXIS 88354 at *6.

to Fed. R. Civ. P. 12(b)(6), but also 12(b)(1).  Moreover, in deciding a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), the Court may consider documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference.  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).  As such, the Court can consider evidence outside of the Complaint to resolve disputed factual issues.

Here, the Fund, in disputing Jofaz and Allied's assertion that the Emergency Contracts with the DOE do not include the EPP, cites to Paragraph 12 of the Emergency Contracts.  Memo. Opp., pp. 14-15.  However, as noted, the Fund has not disputed that the Emergency Contracts produced by Jofaz and Allied in their initial motion to dismiss are the relevant Emergency Contracts, which do not cite to the EPP except for an incidental mention contained in the original contract with Atlantic Express, the bankrupt contractor.

Additionally, the Fund argues that "none of the other Defendants contends that the EPPs are not a part of the Contracts", and cites to a memorandum of law and declaration submitted in support of the other defendants' motions to dismiss to argue that there is a factual dispute among all Defendants as to whether the EPP is a part of the Emergency Contracts.  Memo. Opp., pp. 15-16.  However, the Fund's citation to documents from the other motions to dismiss is improper, as the other named Defendants in this action are not similarly situated to Jofaz and Allied.  As noted above, the Second Circuit has recently found the DOE not to be a single employer, joint employer, or alter ego of the Contractors, and that the DOE had no obligation to contribute to the Fund.  See Div. 1181 A.T.U. - N.Y. Emples. Pension Fund, 910 F.3d at 617-618.  Moreover, unlike Jofaz and Allied, the other contractor defendants- Quality Transportation Corp. ("Quality") and Pride Transportation Services, Inc. ("Pride") do not remit contributions to a defined pension benefit

fund; as such, Quality and Pride do not have the same concerns about remitting contributions to two (2) pension funds, nor do they have the exposure to duplicative withdrawal liability.[3]

Further, the Fund cites to various allegations in the Complaint to argue that Jofaz and Allied employed fund participants for whom contributions are owed to the Fund.  Memo. Opp., p. 16. However, as noted above, on a Rule 12(b)(1) motion, a plaintiff must "come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on a 12(b)(1) motion…reveal the existence of factual problems in the assertion of jurisdiction."  Glaser v. Upright Citizens Brigade, LLC, 2019 U.S. Dist. LEXIS 53138, at *9 (citations omitted).  The Fund's mere citation to the Complaint does not suffice to rebut the evidence proffered by Jofaz and Allied in their motion to dismiss.

Finally, the Fund has failed to rebut, and thus concedes, Jofaz and Allied's argument in their motion to dismiss that it is abundantly evident that Local 1181 did not originally believe that Jofaz, Allied and the other contractors who took over some of Atlantic Express's routes under the Emergency Contracts should be obligated to remit contributions to the Fund.  As proof, Jofaz and Allied cited to a letter dated January 8, 2014 from Michael Cordiello, the President of Local 1181, to the contractors who took over Atlantic Express's routes, stating that "it is the Union's position that the Atlantic employees who followed the work *should* receive their contractual wages and benefit contributions *should* be made on their behalf for the *limited period of their employment at their new companies until the pending master pick occurs*."  See Milman Dec., Ex. G (emphasis added).  In other words, Local 1181 had requested that contractors such as Jofaz and Allied "should" (not must) only pay contributions on behalf of Atlantic Express's employees for a few

---

[3]See Affidavit of Michael Cordiello, Docket No. 1:18-cv-01902-NGG-SMG, Document 40-1, ¶ 14 (E.D.N.Y.) ("Local 1181 is aware of only 2-3 defined benefit plans in the New York City school bus transportation industry.")  One of those "2-3 defined benefit plans" is the Local 854 Pension Fund, to which Jofaz and Allied make contributions for all employees in the bargaining unit of drivers and escorts, as required by the CBA and the Trust Agreement.

weeks in January 2014, i.e. from when the contractors initially took over some of the routes until the master pick on January 30, 2014.

As such, the Fund is not a third-party beneficiary of the EPP and they lack standing. Accordingly, the Complaint must be dismissed in its entirety.

## III.  PLAINTIFFS CANNOT SET FORTH A CLAIM UNDER ERISA AGAINST ALLIED AND JOFAZ SINCE THEY WERE NOT AND ARE NOT CONTRACTUALLY OBLIGATED TO CONTRIBUTE TO THE FUND

### A.  Counts I through IV of the Complaint

#### 1.  While multiple documents may make up a benefit plan, the EPP is not a plan document

In its opposition, the Fund argues that it is a factual dispute whether the EPP provides the terms of the Plan and/or whether it is a CBA, and that multiple documents may set the terms of ERISA plans.  Memo. Opp., pp. 19-20.  Preliminarily, the Fund does not offer any type of opposition to Jofaz and Allied's argument that the EPP is not a CBA; therefore, by this glaring omission, the Fund has conceded this argument.  See Abreu v. Fairway Mkt. LLC, 2018 U.S. Dist. LEXIS 124452, at *3 (S.D.N.Y. July 24, 2018) ("Plaintiffs' failure to meaningfully engage with the Defendants' arguments amounts to a waiver of their opportunity to respond"); Newton v. City of New York, 738 F. Supp. 2d 397, 416 n.130 (S.D.N.Y. 2010) (finding that plaintiff "abandoned his claim" where plaintiff did not respond to defendants' arguments in their motion to dismiss).

In fact, the Second Circuit's recent decision has confirmed that a non-signatory to a CBA generally has no obligation to contribute to a pension fund.  See Div. 1181 A.T.U. - N.Y. Emples. Pension Fund, 910 F.3d at 615:

> As an initial matter, the Fund acknowledges that the DOE was not a signatory to the CBAs. For that reason, the District Court held that the CBAs themselves could not obligate the DOE to contribute. The Fund nonetheless argues that it would "elevate[] form over substance" to hold that the DOE lacked an obligation to contribute arising under the CBAs where the Contractors entered into the CBAs

only "because they were obligated to do so by their Emergency Contracts with DOE." Appellants' Br. 21, 23.

We agree that an entity can, under certain limited circumstances, be bound by (and therefore be obligated to contribute under) a CBA it did not sign. See, e.g., Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 262 (2d Cir. 1990) (where defendant was bound as a member of the New York Shipping Association ("NYSA") "by the agreements negotiated [o]n its behalf" by the NYSA, it was "an employer subject to withdrawal liability"). But the Fund has failed to explain how the Contractors' CBAs here bind or create any obligations enforceable against the DOE, a non-signatory. Even if the Contractors entered into the CBAs due to their Emergency Contracts with the DOE, the Union could have enforced the CBAs' contribution provisions against only the Contractors. We therefore conclude that the DOE had no obligation to contribute arising under the Contractors' CBAs.

Moreover, there is no dispute that the EPP is not a plan document.  As noted in Jofaz and Allied's motion to dismiss, ERISA governs employee benefit plans; either "employee welfare benefit plans" or "employee pension benefit plans."  Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan, 239 F. Supp. 3d 710, 721 (S.D.N.Y. 2017).  An employee pension benefit plan "provides retirement income to employees or results in a deferral of income by employees for periods extending to the termination of covered employment or beyond."  29 U.S.C. § 1002(2)(A).

By contrast, in this matter, the EPP in this case provides employees with "certain agreed-upon minimum wages and benefits, as well as various job protections."  (Complaint, ¶¶ 19-20.)  The purpose of the EPP is not to provide retirement benefits, but to maintain labor peace.  (Id. ¶¶ 19-20, 31.)   Although the EPP discuss pensions and employer contributions, they do not themselves provide pension benefits and are therefore not an employee pension benefit plan. See, e.g., Hahn v. Nat'l Bank, N.A., 99 F. Supp. 2d 275, 278-79 (E.D.N.Y. 2000) (finding that plan at issue was not a pension plan because its primary purpose was not to provide retirement income).

Further, the Fund misrepresented the holding of Silverman v. Teamsters Local 210 Affiliated Health and Ins. Fund, 761 F.3d 277, 286-87 (2d Cir. 2014); contrary to the Fund's

allegations, the Second Circuit in <u>Silverman</u> did not articulate any "express reject[ion]" of a "narrow view as to what constitutes an ERISA plan document". Memo. Opp., p. 20. Instead, <u>Silverman</u> clarified that two documents (the governing plan document or trust agreement and the summary plan description) can set forth ERISA plan terms, which is in line with other circuits throughout the country, and the court's holding was not limited to the facts of the case. Moreover, in <u>Silverman</u>, the Second Circuit held that a CBA cannot be transformed into an ERISA plan document, even if it did reference some provisions found in the trust documents. <u>Id.</u> at 287. If a CBA cannot be transformed into an ERISA plan, then certainly minimal language within the Emergency Contracts between Jofaz and Allied and the DOE is not and cannot be an ERISA plan.

Finally, the other cases cited by the Fund for the proposition that multiple documents may set the terms of ERISA plans are easily distinguishable. Memo. Opp., pp. 20-21. First, all but one (1) of these decisions, <u>Barbu v. Life Ins. Co. of N. Am.</u>, 987 F. Supp. 2d 281 (E.D.N.Y. 2013), are outside the Second Circuit and thus not binding on this Court. Second, the documents that these courts considered as ERISA plans were essentially either the governing plan documents or summary plan descriptions. <u>See</u> <u>Tetreault v. Reliance Standard Life Ins. Co.</u>, 769 F.3d 49, 55 (1st Cir. 2014) (plan documents and summary plan description); <u>Pettaway v. Teachers Ins. & Annuity Ass'n of Am.</u>, 644 F.3d 427, 433-34 (D.C. Cir. 2011) (plan documents, summary plan description, and the policy document); <u>Barbu</u>, 987 F. Supp. 2d at 288 (plan documents only); <u>Myron v. Tr. Co. Bank Long Term Disability Ben. Plan</u>, 522 F. Supp. 511, 519 (N.D. Ga. 1981) (plan documents and insurance application filled out by trust company's bank and given to insurance company). As noted above, the purpose of the EPP is not to provide retirement benefits, but to maintain labor peace; as such, the EPP does not come close to resembling governing plan documents or summary plan descriptions. If Jofaz and Allied were required to contribute to two (2) defined pension benefit

13

plans, they would have to choose which plan to pay, as it would be a severe economic burden to pay both plans and would be subject to violations through their CBA. Moreover, Jofaz and Allied's employees would be forced to pay co-contributions when they gave no authority to do so.

As such, the Fund has failed to properly allege that the EPP is a governing plan document or CBA.

### 2. The Fund cannot sever their claims that arise under the Plan Document and Trust Agreement from those arising under the EPP

The Fund argues that Jofaz and Allied failed to attack Counts II and III of the Complaint, to the extent that these claims allege that the 1181 Plan Document and/or Trust Agreement (as opposed to the EPP) are the source of Jofaz and Allied's obligation to contribute to the Fund. Memo. Opp., pp. 21-22. As set forth herein, this argument must be rejected.

First, the Fund is correct that Count II references the Fund's Plan Document, which provides that employers "shall pay to the Board of Trustees contributions in accordance with the Collective Bargaining Agreement in effect between the Employer and the Union *or other written agreement requiring contributions to the Fund*." (Complaint, ¶ 90.) However, the Complaint does not allege that Jofaz or Allied entered into a CBA with Local 1181, so that cannot be the source of any obligation to contribute to the Fund. Moreover, Count II specifically references the EPP as the "written agreement requiring contributions to the Fund" (Id. ¶ 91), and that the EPP is the source of the obligations to contribute to the Fund (Id.). Clearly, Jofaz and Allied had discussed exhaustively in their motion to dismiss and herein why they are not obligated to make contributions to the Fund based on the EPP.

Second, Jofaz and Allied's motion to dismiss had attacked at length their alleged obligations to contribute to the Fund by specifically analyzing the Fund's Summary Plan Description ("SPD"), which is considered a plan document (unlike the EPP). Among other

arguments, Jofaz and Allied noted that the SPD does not reference the EPP, including the definitions set forth in the SPD for an employer, beneficiary, collective bargaining agreement or participation agreement (see pages 1-2 of the SPD), and neither Jofaz nor Allied are included in the "List of Contributing Employers" to the Fund as set forth on page 38 of the SPD. <u>Milman Dec.</u>, <u>Ex.</u> H. It is noteworthy that the Fund made no attempt in its opposition to respond to these arguments; as such, the Fund has conceded all of these arguments.

Third, Count III of the Complaint states that "the Fund's Plan Document and the Fund's Trust Agreement require participating employers that do not participate in the Fund under a collective bargaining agreement or other written agreement requiring contributions to the Fund, to participate in the Fund pursuant to Participation Agreements with the Fund and pay contributions pursuant to those agreements." (Complaint, ¶ 98.) However, it has already been discussed above that the Complaint does not allege that either Jofaz or Allied entered into a CBA with Local 1181; so inasmuch as they are not bound to the Local 1181 CBA, then they clearly are also not bound to the Fund's Plan Document or Trust Agreement. Moreover, Count III does not provide any definition to "other written agreement requiring contributions to the Fund". Provided that this refers to the EPP (like in Count II), then, as noted above, Jofaz and Allied had discussed exhaustively in their motion to dismiss why they are not obligated to make contributions to the Fund based on the Emergency Contracts, which the Fund refers to as establishing an EPP obligation.

Finally, as noted, neither Jofaz nor Allied signed Participation Agreements with the Fund. The Participation Agreement is completely silent on the employer and employee contribution rates, Moreover, the language of the Participation Agreement references the 1181 collective bargaining agreement terms negotiated by the Local 1181 employer signatories, who may agree to certain

CBA terms in order to alleviate other terms. However, Jofaz and Allied are not Local 1181 employer signatories, are not involved in the CBA negotiation process with Local 1181 and cannot receive any concessionary terms from Local 1181. As noted, Jofaz and Allied are signatories to a CBA with Local 553 that provides specific terms and rates for these other economic conditions.

As such, the Fund cannot make out a claim against Jofaz and Allied under either Count II or Count III of the Complaint.

### 3. The Fund did not properly allege that Jofaz and Allied were bound to the Participation Agreements

In what may be its most illogical reasoning yet, the Fund argues that "Jofaz and Allied's position is that, notwithstanding that their Contracts required them to enter into Participation Agreements with the Fund, because they breached those Contracts by not signing Participation Agreements, they have no obligation to the Fund." Memo. Opp., p. 22. However, the Fund has completely misconstrued and distorted Jofaz and Allied's position as articulated in their motion to dismiss, which is that their Emergency Contracts did not require them to enter into Participation Agreements with the Fund.

In fact, as discussed in Jofaz and Allied's motion to dismiss, the Fund is not a signatory to Allied and Jofaz's Emergency Contracts, which they were allowed to produce on the instant motion to dismiss even pursuant to Fed. R. Civ. P. 12(b)(6), since the Emergency Contracts were documents integral to the complaint and relied upon in it. Roth v. Jennings, 489 F.3d at 509. In fact, the Fund did not dispute in its opposition that these are the relevant Emergency Contracts pertaining to Jofaz and Allied.

Moreover, the EPP lists a number of potential recipients of the withheld funds which not only potentially include the Fund, but also sets forth "shall withhold the appropriate amount from any payments due to the contractor and pay them directly to the applicable union for the benefit of

16

the employees affected" or "other applicable union Pension Fund for the benefit of the employees affected or to the appropriate Welfare Fund for the benefit of the employees affected". See Milman Dec., Ex. B. Therefore, Jofaz and Allied who are signatories to the Local 553 CBA are permitted and legally mandated to decline signing Fund Participation Agreements or any documents with Local 1181, and are permitted and legally authorized to remit Employer contributions to the Benefit Funds of the union that represents its employees governed under its CBA, better known as the "applicable union for the benefit of the employees affected". Id.

Further, the Fund deliberately omitted a key factual distinction from the single case that it cited where an employer was deemed bound to the terms of the Participation Agreement although it never signed it. Memo. Opp., p. 23. In New York State Teamsters Conf. Pension & Ret. Fund v. UPS, 198 F. Supp.2d 188 (N.D.N.Y. 2002), aff'd 382 F.3d 272 (2d Cir. 2004), UPS had entered into collective bargaining agreements that required it to sign Participation Agreements. By contrast, in the instant matter, neither Jofaz nor Allied entered into a CBA with Local 1181, or any other document that would obligate Jofaz or Allied to contribute to the Fund.

Finally, the Fund has not cited a single case where an entity was deemed obligated to sign a Participation Agreement with a fund even though the entity never signed a CBA. There is an obvious and evident reason for this omission. A signed collective bargaining agreement must exist between the union and the employer in order for payments to a union or its affiliated funds to be lawful. Kathleen Moglia v. James Geoghegan et al., as trustees of Local 282 Pension Trust Fund, 403 F.2d 110, 116 (2d Cir. 1968); accord, Trustees of the National Automatic Sprinkler Industry Pension Fund, et al., v. Fairfield County Sprinkler Company, Inc., 243 F.3d 112 (2d Cir. 2001). See 29 U.S.C. § 186 (c)(5)(B).

17

As such, the Fund has failed to properly allege with any supporting indicia or evidence whatsoever that Jofaz and Allied should be deemed bound to the Participation Agreements.

### 4. The Fund's other arguments must be rejected

As set forth below, the Court should reject the Fund's various attempts to respond to several of Jofaz and Allied's arguments as to why Counts I through IV of the Complaint should be dismissed. Memo. Opp., pp. 24-26.

First, the Fund cites to the following paragraph of the EPP to argue that Jofaz and Allied are bound to the EPP:

> Any new contractors, i.e., those who did not provide service pursuant to contract expiring June 2010 ("new contractor"), shall give priority in employment in September 2010 or thereafter on the basis of seniority to every operator (driver), mechanic and dispatcher performing service pursuant to such contract starting from the first employee from the Master Seniority List until such list is exhausted.

Memo. Opp., p. 24; Milman Dec., Ex. B. However, the Emergency Contracts awarded to Jofaz and Allied specifically stated that they are not "successors" and are being awarded the contract on an emergency expedited basis for a one-month period from December 23, 2013. Milman Dec., Ex. C, D. Moreover, as noted, Jofaz and Allied have never been a Local 1181 contractor.

Second, the Fund stated that "Jofaz and Allied argue that the EPP provides that if they hired employees off the Master Seniority List who were not Fund participants, then those employees would not be required to participate in the Fund." Memo. Opp., pp. 24-25. However, the Fund has again completely misconstrued Jofaz and Allied's argument in their motion to dismiss, which is that the EPP provides that an employer with a CBA with another union and pension fund does not have to contribute to the Fund, *regardless* of whether the employee had been a past participant with the Fund.

18

As previously noted, paragraph 4 of the most recent EPP states that "in connection with employees who are on the Master Seniority List and who do not participate in the Local 1181-1061 Fund and Plan, they shall not be required to participate in the Plan, but shall participate in the Collective Bargaining Agreement, if any, of their employer". Milman Dec., Ex. B. As noted, Jofaz and Allied participated in the CBA with Local 553, which provides for contributions to the Local 854 Pension Fund (and this is not disputed by the Fund).

In its opposition, the Fund cites to the Complaint's allegations to dispute that Jofaz and Allied's Emergency Contracts with the DOE do not include the EPP, and the Fund argues that "[a]ny dispute over whether particular employees of Jofaz and Allied are Fund participants is obviously a factual one that cannot be resolved on a motion to dismiss". Memo. Opp., p. 25. However, the Fund's citations to the Complaint is not sufficient to rebut Jofaz and Allied's argument. As noted above, on a Rule 12(b)(1) motion, a plaintiff must "come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on a 12(b)(1) motion…reveal the existence of factual problems in the assertion of jurisdiction." Glaser v. Upright Citizens Brigade, LLC, 2019 U.S. Dist. LEXIS 53138, at *9 (citations omitted). Also, as noted, Jofaz and Allied produced their Emergency Contracts in their initial moving papers, which specifically stated that they are not "successors" and are being awarded the contract on an emergency expedited basis for a one-month period from December 23, 2013; the Fund has not disputed that those are the relevant Emergency Contracts. Milman Dec., Ex. C, D.

Third, the Fund has failed to rebut Jofaz and Allied's argument that there is no governing Participation Agreements. The Fund says that Jofaz and Allied entered into Emergency Contracts with the DOE that obligated them to enter into Participation Agreements with the Fund, so "it is

at least plausible that they are bound to the Participation Agreements regardless of whether they signed them". Memo. Opp., p. 26. However, as noted, Jofaz and Allied's Emergency Contracts did not require them to enter into Participation Agreements with the Fund, and the Fund has cited no case law where an entity was deemed obligated to sign a Participation Agreement with a fund even though it never signed a CBA.

Finally, the Fund has largely failed to rebut, and thus concedes, Jofaz and Allied's arguments in their motion to dismiss that if they were compelled to remit contributions into the Local 1181 Pension Fund, as opposed to the Local 854 Pension Fund, this would raise a host of legal violations. Jofaz and Allied would be compelled to commit illegal and improper transactions, including subjecting their employees to disparate treatment and costly co-contributions into the Local 1181 Pension Fund.[4] In fact, there is ample authority that even if Jofaz and Allied wanted to make contributions to the Fund, they would not be legally allowed since they were not parties to a CBA with Local 1181. See, e.g., Canario v. Lidelco, Inc., 782 F. Supp. 749, 757 (E.D.N.Y. 1992) (rejecting claim for withdrawal liability against individual defendants who had personally guaranteed any delinquent payments to the pension fund, but were not parties to the applicable collective bargaining agreement); Bleiler v. Cristwood Constr., Inc., 71 F.3d 13, 16 (2d Cir. 1995) ("contractors who are not signatories to collective agreements, but who assume financial guarantees of contribution payments, do not qualify as ERISA employers").

As such, Counts I through IV of the Complaint must be dismissed.

---

[4] The Fund has also failed to respond to Jofaz and Allied's assertion in their motion to dismiss that a prime motivation of the Fund in bringing this action is to obtain sufficient money for Local 1181's retirees, who never even worked for Jofaz and Allied.

## B.  **Count VI of the Complaint**

In its opposition, the Fund argues that "nothing in the Complaint or the EPP suggests that a 'finding' of a violation of the EPP by DOE is a prerequisite to the Contractors having an obligation to enter into Participation Agreements with and/or pay Contributions to the Fund." Memo. Opp., p. 27.  However, even assuming arguendo that the Fund is correct, it has been exhaustively argued hereinabove that the Fund has still not established that Jofaz and Allied had an obligation to sign Participation Agreements with and/or pay contributions to the Fund.

Moreover, the Fund cites to the DOE's motion papers to argue that there is a disagreement among the Defendants as to the meaning of the "finding" provision in the EPP.  Memo. Opp., pp. 27-28.  However, as noted above, the Fund's citation to documents from the other defendants' motions to dismiss is improper, as these other defendants are not similarly situated to Jofaz and Allied.  Further, even assuming arguendo that the "finding" provisions is ambiguous, the Fund has still failed to rebut Jofaz and Allied's arguments in the instant motion to dismiss that the EPP does not apply to Jofaz and Allied.

As such, Count VI must be dismissed.

## C.  **Counts VIII, X, XI, XII, and XIII of the Complaint**

In its opposition, the Fund argues that it has plausibly alleged that Jofaz and Allied have rendered themselves fiduciaries to the Fund because the Trust Agreement defines unpaid contributions as plan assets, which is an exception to the general rule articulated in Rahm v. Halpin, 566 F.3d 286 (2d Cir. 2009).  Memo. Opp., p. 29.  The Fund's supposed evidence for this argument is the following language in its Trust Agreement: "[t]itle to all of the money, property and income paid into or acquired *or accrued* to the Trust shall be vested in and remain exclusively in the Board of Trustees."  Memo. Opp., p. 30.  (Complaint, ¶ 137.) (emphasis added in the Complaint)

However, in order for unpaid contributions to be plan assets, the plan documents must "specify that plan assets include money received or owing".  <u>Sheet Metal Workers Local Union No. 137 v. Metro. Sign & Rigging Corp.</u>, 2016 U.S. Dist. LEXIS 125219 at *9 (E.D.N.Y. Sep. 13, 2016).  Here, the Fund's alleged language supporting its claim that the unpaid contributions are plan assets- "accrued", is not the same as "owing"; because the Fund does not have any ownership interest in the contributions, its claim is at best speculative and contingent.  In fact, the Fund has essentially admitted that the contributions it seeks were not paid, acquired, attached or accrued. (Complaint, ¶ 71.)  As such, the unpaid contributions cannot be considered plan assets under ERISA.  <u>See</u>, <u>e.g.</u>, <u>Sutton v. Weirton Stell Div. of Nat. Steel Corp.</u>, 724 F.2d 4016, 411 (4th Cir. 1983), cert. denied, 467 U.S. 1205 (1984) (corporation's contingent liability for payment of benefits to union pension fund in the event of a potential shutdown was not an asset of that fund).

Moreover, to support the Fund's argument that the language in the Trust Agreement- "accrued"- is sufficient to render unpaid contributions to be assets of the Plan, the Fund cites to one (1) case, which is both outside the Second Circuit and easily distinguishable.  Memo. Opp., p. 31.  In <u>PMTA-ILA Containerization Fund v. Rose</u>, 1995 U.S. Dist. LEXIS 10877 (E.D. Pa. Aug. 1, 1995)[5], the employer was found to be bound by the relevant agreement, since it was a member of the multi-employer bargaining association that signed the agreement.  By contrast, as noted above, Jofaz and Allied never entered into a CBA with Local 1181 and never signed a Participation Agreement with the Fund.  Moreover, Jofaz and Allied was never part of a multi-employer bargaining association that signed a CBA with Local 1181.

---

[5] It should be noted that only one (1) court within the Second Circuit has ever cited to <u>PMTA-ILA Containerization Fund v. Rose</u>, 1995 U.S. Dist. LEXIS 10877 (E.D. Pa. Aug. 1, 1995): <u>NYSA-ILA Med. & Clinical Servs. Fund by & Through Capo v. Catucci</u>, 60 F. Supp. 2d 194 (S.D.N.Y. 1999).  Moreover, <u>Catucci</u> is distinguishable from the instant matter, as in <u>Catucci</u> the Fund's "Agreement and Declaration of Trust and Plan" provides that "the Fund shall consist of … (d) money received from <i>or owing</i> from any other person, corporation, or Fund required to make contributions or payments to this Fund." <u>Catucci</u>, 60 F. Supp. 2d at 200 (emphasis added).

Further, the Fund argues that even if Jofaz and Allied did not sign a Participation Agreement with the Fund, the Trust Agreement can suffice as the "contract" that defines an unpaid contribution as plan assets.  Memo. Opp., p. 30.  Additionally, the Fund argues that if anything, there is a dispute over contractual interpretation of the Trust Agreement as to whether unpaid contributions are Fund assets, which is inappropriate for resolution on a motion to dismiss.  Id. However, Jofaz and Allied cannot be bound by the Trust Agreement, since they did not sign a CBA with Local 1181.  As noted above, a signed collective bargaining agreement must exist between the union and the employer in order for payments to a union or its affiliated funds to be lawful.  Kathleen Moglia, 403 F.2d at 116.

Additionally, the Fund has failed to rebut in its opposition, and therefore concedes, that co-fiduciary liability of Jofaz and Allied with the DOE (Count XIII of the Complaint) cannot attach if the Fund cannot prove a breach of the underlying duty.  See, e.g., Rinehart v. Akers, 722 F.3d 137, 154 (2d Cir. 2013), vacated and remanded on other grounds, 134 S. Ct. 2900 (2014).

Finally, with respect to Count XIII of the Complaint, the Fund argues that whether the DOE is a joint employer has no impact on the Fund's claim that Jofaz and Allied have co-fiduciary liability with the DOE.  Memo. Opp., p. 32.  However, to quote the Fund's own words, "[t]his makes no sense".  As noted above, in Div. 1181 A.T.U. - N.Y. Emples. Pension Fund, 910 F.3d at 617-618, the Second Circuit held that, with respect to the Emergency Contracts that included the EPP which the DOE had entered into with the contractors, the DOE was held not to be a single employer, joint employer, or an alter ego of the contractors, and that the DOE had no obligation to contribute to the Fund.  The Fund has not cited one (1) case to support its argument that the DOE could still be found to be a fiduciary, given the findings of the Second Circuit.

Thus, Jofaz and Allied are not ERISA fiduciaries or co-fiduciaries with the DOE, and these causes of action all must be dismissed.

### D. **Count XIV of the Complaint**

With respect to Count XIV of the Complaint (which alleges that Jofaz and Allied are liable, pursuant to ERISA 406(a)(1)(B) and (D), as a non-fiduciary), the Fund in its opposition cites to Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 251 (2000), which actually held that a non-fiduciary party may be liable under ERISA for a prohibited transaction if it had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." Memo. Opp., p. 32. However, the Fund does not allege in the Complaint that Jofaz or Allied had such actual or constructive knowledge of the alleged unlawful transaction.

Moreover, as noted above, the unpaid contributions are not plan assets, as discussed above with respect to Counts VIII, X, XI, XII and XIII of the Complaint. See Rahm, 566 F.3d 286.

As such, Count XIV must be dismissed.

## IV.  PLAINTIFFS' STATE LAW CLAIM MUST BE DISMISSED

The Fund has failed to rebut that Count XV of the Complaint, a state law breach of contract claim against Jofaz and Allied, must be dismissed. As discussed above in Section I. of the Argument in this Memorandum of Law (pp. 3-11), the Fund is not a third-party beneficiary and the Court must dismiss this claim.

Moreover, the Fund has failed to offer any specific objections to Jofaz and Allied's request that the Court not exercise supplemental jurisdiction, under 28 U.S.C. §1367, over the state law claim if this Court should dismiss all of Plaintiffs' ERISA claims. See, e.g., Klein & Co. Futures, Inc v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006). In a footnote, the Fund merely stated that

"[t]hat argument is of no moment because, for all of the reasons stated above, the ERISA claims should not be dismissed."  Memo. Opp., p. 34, footnote 11.  This assertion should be rejected.

As such, Count XV must be dismissed.

## CONCLUSION

As noted above, the Second Circuit's recent decision has confirmed that a non-signatory to a CBA generally has no obligation to contribute to a pension fund.  See Div. 1181 A.T.U. - N.Y. Emples. Pension Fund, 910 F.3d at 615.  Here, it is undisputed that neither Jofaz nor Allied are, or have ever been, a signatory to a CBA with Local 1181, and neither Jofaz nor Allied have ever signed a Participation Agreement with the Fund.  The Fund's sole basis for alleging that Jofaz and Allied must contribute to the Fund is that when Jofaz and Allied signed the Emergency Contracts with the DOE, they took over some of the routes previously serviced by Atlantic Express.  However, neither Jofaz nor Allied were a successor to Atlantic Express, and the EPP is not even a part of these Emergency Contracts.  Moreover, unlike the other defendant contractors, Jofaz and Allied already provide contributions to a defined pension benefit plan, the Local 854 Pension Fund, for all employees in the bargaining unit of drivers and escorts.  For Jofaz and Allied to be compelled to contribute to two (2) defined pension benefit plans in the absence of any type of CBA with Local 1181 and without the consent of Jofaz and Allied's employees, is illegal, contrary to all established case law and statutory authority and certainly not the intent of the Mollen Agreement and EPP.  As such, for all of the reasons set forth herein, Defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety.

Dated: April 12, 2019
      Lake Success, New York

                         **MILMAN LABUDA LAW GROUP PLLC**

                         /s/ Richard I. Milman, Esq.
                         Richard I. Milman, Esq.
                         Netanel Newberger, Esq.
                         *Attorneys for Defendants Jofaz Transportation, Inc.*
                         *and Allied Transit Corp.*
                         3000 Marcus Avenue, Suite 3W8
                         Lake Success, New York 11042
                         Tel: (516) 328-8899
                         Fax: (516) 328-0082