# EXHIBIT 1

## RESTATED DIVISION 1181 A.T.U. - NEW YORK EMPLOYEES PENSION PLAN

THIS Pension Plan is restated effective the 1st day of January, 2007. This Restated Division 1181 A.T.U.-New York Employees Pension Plan applies to Participants with an Hour of Service on or after January, 2007, unless otherwise specified herein.

### ARTICLE 1
### Definitions

**SECTION 1.1. Accrued Benefit** shall mean the monthly pension payable at Normal Retirement Date under Article V of the Plan provisions in effect on his termination of Covered Employment, based on the Participant's Credited Service to his date of termination of Covered Employment. The portion of a Participant's Accrued Benefit derived from Employer contributions as of any date shall be equal to his total Accrued Benefit less that portion of his Accrued Benefit derived from required contributions made by the Participant. The portion of the Accrued Benefit derived from Participant's contributions commencing at Normal Retirement Age is determined by multiplying the Participant's total required contributions to the Plan, accumulated with interest at the applicable rate compounded annually to the date upon which the Participant would attain his Normal Retirement Age by a conversion factor. Effective for Plan Years ending prior to September 1, 1988, the portion of the Accrued Benefit derived from Participant's contributions shall accumulate interest of 5% annually. Effective for Plan Years on or after September 1, 1988 through August 31, 2000, the portion of the Accrued Benefit derived from Participant's contributions shall accumulate interest at one hundred and twenty percent (120%) of the Federal mid-term rate as in effect under Code Section 1274 for the first month of such Plan Year. Effective as of September 1, 2000, the Code Section 417(e) interest rate used for projecting the Accrued Benefit derived from employee contributions shall be the Applicable Interest Rate used for calculating lump sum distributions as of the date of determination under Section 1.3.

**SECTION 1.2 Actuarial Equivalent** means that a particular benefit is equal in value to another benefit when computations are made on the basis of the following Actuarial Assumptions:

Interest:      6% per year compounded annually

Mortality:     1971 Group Annuity Mortality Table

**SECTION 1.3. Applicable Interest Rate** shall mean the interest rate or rates that would be used *by PBGC for purposes of determining the present value of Participant's benefits under the Plan*, if the Plan had terminated on the date distribution commences with insufficient assets to provide benefits guaranteed by PBGC on that date, or such other rate or rates as shall be prescribed by the applicable rules and regulations. Effective September 1, 2000, for lump sum distributions payable after that date, the amount of a lump sum payment under the Plan shall be determined using the Applicable Mortality Table, the Applicable Interest Rate, and the Applicable Stability Period, where:

(a)      the Applicable Mortality Table is the mortality table prescribed by the Secretary of the Treasury under Code Section 417(e)(3)(a)(ii)(I) in effect on the first day of the Applicable Stability period;

(b)    the Applicable Interest Rate is the annual rate of interest on 30-year Treasury Securities as specified by the Commissioner of Internal Revenue for the second full calendar month preceding the Applicable Stability Period; and

(c)    the Applicable Stability Period is the Plan Year in which the Benefit Commencement Date for the distribution occurs.

**SECTION 1.4. Beneficiary** means a person designated by a Participant on the form provided by the Trustees who is or may become entitled to a benefit from this Plan.

**SECTION 1.5. Benefit Commencement Date** shall mean the first day of the first month following the date the Participant has fulfilled all of the requirements for entitlement to a benefit under this Plan, including filing a completed application under Section 6.1.

**SECTION 1.6. Board of Trustees** or **Trustees** means the Board of Trustees of the Division 1181 A.T.U. - New York Employees Pension Fund as provided for in the Trust Agreement and who are responsible for the administration of the Plan and who shall serve as the named fiduciary of the Plan.

**SECTION 1.7. Break in Service** shall be defined as any Plan Year during which a Participant has less than 500 hours of Employment in the Industry.

**SECTION 1.8 Collective Bargaining Agreement** shall mean an agreement between the Union and an Employer that obligates such Employer to make contributions to the Fund on behalf of Employees covered by the Agreement.

**SECTION 1.9.** A year of **Credited Service** for the purpose of benefit accrual on or after September 1, 1975 shall be any Plan Year during which a Participant has completed at least 1,000 Hours of Service in Employment.

**SECTION 1.10. Employee** means (a) any person employed by an Employer, in a position for which the Employer is obligated under a collective bargaining agreement to make contributions to the Fund,(b) Union officers and employees paid by the Union, employees paid jointly by the Union and this Pension Fund or the Welfare Fund, employees of this Pension Fund and/or the Welfare Fund, and employees of the Credit Union, in a position for which that employer is obligated under a collective bargaining agreement or written participation agreement to make contributions to the Fund.

Effective September 1, 1997, the term "leased employee" means any person who is not an employee of the recipient and who provides services to the recipient if:

(a)    such services are provided pursuant to an agreement between the recipient and any other person;

(b)    such person has performed such services for the recipient (or for the recipient and related persons) on a substantially full-time basis for a period of at least 1 year; and

2

(c)     such services are performed under primary direction or control by the recipient.

**SECTION 1.11. Employer** means (a) any person, company or business organization party to a collective bargaining agreement with the Union requiring contributions to the Fund, who agrees to participate in and be bound by the terms of the Trust Agreement and the Plan, (b) Division 1181-1061 Amalgamated Transit Union AFL-CIO, (c) this Pension Fund, (d) the Welfare Fund, and (e) Division 1181- 1061 A.T.U. Federal Credit Union ("Credit Union") only insofar as the Union, the Pension Fund, the Welfare Fund and Credit Union are permitted herein to make contributions on behalf of their representatives and employees pursuant to the terms of a written Collective Bargaining Agreement or participation agreement.

For purposes of identifying Highly Compensated Employees and applying the rules on participation, vesting and statutory limits on benefits under the Plan but not for determining Employment, the term "Employer" includes all members of an affiliated service group with the Employer within the meaning of Code Section 414(m) and all other business aggregated with the Employer under Code Section 414(o).

**SECTION 1.12. Employment in the Industry or Employment means:**

(a)     employment by one or more persons, companies or business organizations which are now or hereinafter become parties to Collective Bargaining Agreements between such Employer and the Union providing for contributions to this Fund and who adopt and agree to be bound by the terms of the Trust Agreement and this Plan and any modifications or amendments thereof, in a position for which contributions are required to the Fund;

(b)     employment by the Union as an officer, elected or appointed, or as an employee receiving a salary from the Union;

(c)     employment by the Welfare Fund;

(d)     employment by the Pension Fund;

(e)     employment jointly by the Union and/or the Pension Fund and/or the Welfare Fund; or

(f)     employment by the Credit Union;

provided however, that the Union, the Pension Fund, the Welfare Fund and the Credit Union are required to make contributions to the Fund pursuant to a written agreement for such position for such officers and employees for such period of time as they are so employed.

**SECTION 1.13. ERISA** shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time.

**SECTION 1.14. Fund** means the Division 1181 A.T.U. - New York Employees Pension Fund.

**SECTION 1.15. Fund Office** means the administrative offices of Division 1181 A.T.U.-New York

3

Employees Pension Fund.

**SECTION 1.16   Highly Compensated Employee** shall mean an employee who (a) had compensation from an Employer for the twelve month period immediately preceding the determination year in excess of $80,000 (or as adjusted in accordance with Code 415(d)) and (b) was in the top 20% paid group of the employees for such preceding year. The determination year is the Plan Year for which the determination of who is highly compensated is made.

**SECTION 1.17. Hour of Service** for the purpose of determining a Participant's eligibility for vesting and accrual of benefits shall mean:

(a)   Each hour for which a Participant is directly or indirectly paid or entitled to payment by an Employer for the performance of duties. These hours shall be credited to him for the computation period or periods in which the duties are performed;

(b)   Each hour (not to exceed 501 hours for each single continuous period) for which he is directly or indirectly paid or entitled to payment by the Employer other than for the performance of duties (e.g. for holidays, vacations, sick-leave, illness, incapacity, jury duty and lay-off). These hours shall be credited for the computation period or periods in which payment is made or amounts payable become due;

(c)   Hours pursuant to Section 3.3 ;

(d)   Each hour for which back pay, irrespective of mitigation of damages, has been either awarded or agreed to by an Employer. These hours shall be credited to the Participant for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award agreement, or payment was made; and

(e)   Notwithstanding anything to the contrary contained herein, Hours of Service shall be credited at no less than the number of Hours of Service required to be credited pursuant to United States Department of Labor Regulation §2530.200b-2.

**SECTION 1.18. Internal Revenue Code** or **Code** shall mean the Internal Revenue Code of 1986, as amended from time to time.

**SECTION 1.19 Non-Bargained Employee** is an Employee in service with an Employer that is not covered by a Collective Bargaining Agreement.

**SECTION 1.20.  Normal Retirement Age** shall mean the later of age 65 or the fifth anniversary of the date a Participant commences participation in the Plan, provided the Participant is Employed in the Industry upon attainment of Normal Retirement Age.

**SECTION 1.21.  PBGC** shall mean Pension Benefit Guaranty Corporation.

**SECTION 1.22.   Participant** means any Employee or former Employee who meets the requirements of the provisions of Article 2.

4

**SECTION 1.23.  Pensioner** means any person receiving a pension under this Plan.

**SECTION 1.24.  Plan** means the Pension Plan described herein.

**SECTION 1.25.  Plan Year** is the consecutive twelve month period from September 1 through and including August 31.  The Plan Year shall serve as the computation period for vesting, benefit accrual, and eligibility to participate in the Plan.

**SECTION 1.26.  QDRO** means a Qualified Domestic Relations Order within the meaning of Section 206(d)(3)(B) of ERISA.

**SECTION 1.27  Spouse** shall mean the person to whom the Participant is legally married.  For the purpose of the Pre-retirement Survivor's Annuity, the Spouse shall mean the person to whom the Participant is married on the date of death and for the eleven months preceding the date of death. For the purpose of the Joint and Survivor Annuity, the Spouse shall mean the person to whom the Participant is married on the Benefit Commencement Date and for the eleven months preceding the Benefit Commencement Date.  The Spouse also shall mean a spouse or former spouse as provided under a QDRO.

**SECTION 1.28 Trust Agreement** or **Trust** means the Agreement and Declaration of Trust of the Fund and that instrument as it may be amended from time to time.

**SECTION 1.29.  Union** means Division 1181-1061 Amalgamated Transit Union, AFL-CIO.

**SECTION 1.30.**  A year of **Vesting Service** on or after September 1, 1975 shall be any Plan Year during which a Participant has completed at least 1,000 Hours of Service.

**SECTION 1.30 Welfare Fund** means the Division 1181 A.T.U.-New York Welfare Fund.

## ARTICLE 2
## Participation

### SECTION 2.1. Participation

(a)     Each Employee shall become a Participant as of the later of the following dates:

    (1)      the Employee's first date of Employment or re-Employment;

    (2)      the first day on which the Employee and his Employer are required, under the terms of the Collective Bargaining Agreement or written participation agreement, to make contributions to the Plan on the Employee's behalf.

Notwithstanding the foregoing, an Employee will become a Participant in the Plan upon the completion of 1,000 Hours of Service in Employment within a twelve consecutive month period following his date of Employment. If the Employee does not qualify at this time, he will become a Participant at the beginning of a Plan Year in which he first completes 1,000

Hours of Service in Employment. Non-Bargained Employees shall be considered Participants only to the extent that the participation by such Employees is permitted by applicable law and is in compliance with the participation, coverage and non-discrimination provisions of the Code, to the extent applicable.

(b) Each Participant shall supply the following information to the Trustees on a form or forms to be supplied by them:

    (1) Full name and residence address;

    (2) Age in years and months and date of birth. If requested by the Trustees, each Participant shall submit proof of age; and

    (3) Designated Beneficiary to whom the Participant's contributions shall be returned in the event of the Participant's death, if applicable.

(c) Such Participant shall also acknowledge, in writing, on a form provided by the Trustees, that he agrees to make contributions to the Fund and to the withholding of such contributions by his Employer as provided in Section 7.2.

## SECTION 2.2. Termination of Participation

Participation in the Plan will continue until the first of any one of the following events:

(a) The Employee terminates Employment in the Industry before he is vested and receives a refund of Employee contributions.

(b) The Employee incurs a Break in Service under Section 3.3.

(c) The Employee retires and commences receiving a benefit under the Plan.

If a Participant who ceased to be a Participant again becomes a Participant, he shall be considered a new Participant for all purposes of the Plan, except in the case of Pensioner who is re-employed by any one of the Employers and again becomes a Participant.

## ARTICLE 3
## Credited Service and Vesting Service

SECTION 3.1. A Participant shall earn one year of Credited Service for each Plan Year during which the Participant has completed at least 1,000 Hours of Service in Employment. A Participant shall earn one year of Vesting Service for each Plan Year during which the Participant has completed at least 1,000 Hours of Service.

## SECTION 3.2. Vesting

(a) A Participant's right to receive a pension benefit shall become nonforfeitable upon attainment of Normal Retirement Age, provided the Participant is Employed in the Industry upon attaining Normal Retirement Age.

(b) Effective September 1, 1998, for Employees with an Hour of Service on or after that date, an Employee who has completed 5 or more years of Vesting Service shall be vested in the right to receive a pension payable upon the attainment of Normal Retirement Age. An Employee who leaves Employment in the Industry prior to attaining Normal Retirement Age with less than 5 years of Vesting Service shall not be entitled to receive pension benefits derived from Employer contributions.

(c) Notwithstanding any provision in this Plan to the contrary, a Participant shall at all times be vested in his own contributions to the Fund and the interest earned thereon under the terms of the Plan.

(d) In the event a Participant leaves Employment in the Industry and subsequently returns to Employment and earns additional year(s) of Credited Service, his pension upon retirement shall be the sum of (1) his benefit under the terms of the Plan in effect at the time he first left Employment based on his years of Credited Service earned prior to the date he first left Employment and (2) the benefit based on his year(s) of Credited Service earned subsequent to return to Employment under the terms of the Plan in effect at the time of his retirement from Employment. In the event a Participant leaves Employment in the Industry and does not return to Employment, his pension upon retirement shall determined under the terms of the Plan in effect at the time he left Employment.

## SECTION 3.3. Break In Service

A Participant shall incur a Break in Service in any Plan Year during which a Participant has less than 500 Hours of Service. A Participant who works 500 or more Hours of Service but less than the 1,000 Hours shall not receive Vesting Service for that Plan Year but such Plan Year shall not be a Break in Service.

No Break in Service shall occur and the Participant shall continue to be deemed in Employment if a Participant has worked less than 500 Hours in a year if such failure to work 500 Hours is due to:

(a) Sickness or injury incurred on or off the job if the Participant is receiving weekly disability benefits from the Welfare Fund or Workers' Compensation benefits as a result of sickness or injury incurred during the course of a Participant's Employment, as follows:

    (1)    (A)    If a Participant receives weekly disability benefits from the Welfare Fund and the Employer and the Participant shall both make contributions to the Fund as required by the Collective Bargaining Agreement or written agreement under which the Participant is employed during the first twenty-six (26) consecutive weeks of disability, the Participant shall not be considered to

7

have suffered a Break in Service and shall receive a year of Credited Service and Vesting Service.

(B)    If the requirements of (1)(A) are met and the Participant continues to be not employed of work and to receive weekly disability benefits from the Welfare Fund, the Participant and the Employer shall, at such time as the Participant returns to Employment, contribute to the Fund as required by the Collective Bargaining Agreement for up to 14 additional weeks during which the Participant received weekly disability benefits from the Welfare Fund.

(c)    Contributions required pursuant to this subsection (a)(1) must be made for the number of weeks a Participant receives weekly disability benefits from the Welfare Fund notwithstanding periods, such as the summer, when an Employer is not required to contribute to the Fund. Contributions shall not be required to made pursuant to this subsection (a)(1) during any period that an Employer is not required to contribute but shall resume, without deduction for such period, when the contribution obligation resumes, until the required contributions have been made.

(2)    If the Participant receives Workers' Compensation benefits and the Employer and Participant both contribute to this Fund as required by the Collective Bargaining Agreement or other agreement during such period of time as the Participant receives Workers' Compensation benefits, the Participant shall receive Credited Service and Vesting Service for such period of time as contributions are made during which Participant received Workers' Compensation benefits and was not employed, up to a maximum of two years.

(3)    In the event a Participant does not contribute to the Fund as required in (1)(A), (1)(B) and (2) above, such Participant shall receive no Credited Service or Vesting Service for any period during which contributions were not made and such Participant shall be deemed to have suffered a Break in Service during such period(s).

(b)    (1)    In the event a Participant separates from Employment on a maternity or paternity leave of absence as defined below, such Participant shall be credited with the Hours of Service for which he or she would normally have been scheduled to work, up to a maximum of 501 hours. Such hours shall be credited for the Plan Year in which such absence begins, if the crediting of such hours is necessary to prevent a Break in Service, or in any other case, in the immediately following year. In no event shall the Participant accrue Credited Service for any years in which Hours are credited under this Section.

(2)    A maternity or paternity leave of absence shall occur only if the absence is due to pregnancy of the Participant, the birth of the Participant's child, the placement of a child with the Participant for purposes of adoption by the Participant, or the care of such child for the period immediately following such birth or placement.

8

(3)     The Trustees, within a reasonable period of time after a maternity or paternity leave of absence, may require that the Participant furnish evidence satisfactory to them, such as a doctor's statement, which establishes that such leave of absence was taken for one of the preceding reasons, and the number of days of such absence. If the Participant fails to submit such evidence within a reasonable period of time after such request, no Hours of Service will be credited. For the purposes of this subsection, the determination of what constitutes a reasonable time period shall be made by the Trustees and shall be applied in a uniform and nondiscriminatory manner to all affected Participants.

(c)     Notwithstanding anything to the contrary in this Article, service in the Armed Forces of the United States shall be credited for Vesting Service and Credited Service to the extent required by the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § Ch. 43, as may be amended and the Internal Revenue Code Section 414(u). To protect his full rights, an Employee who left Employment in the Industry to enter such military service must apply for reemployment with the Employer within the time prescribed by law. Furthermore, he must call his claim for credit for military service to the attention of the Trustees and be prepared to supply the evidence necessary to determine his rights. A Participant entitled to rights under the USERRA shall receive Credited Service at the rate of 1,000 Hours a Plan Year, or a proportionate rate thereof, for such military service. Effective December 12, 1994, notwithstanding anything to the contrary, contributions, benefits and Credited Service with respect to qualified military service will be provided in accordance with Code Section 414(u).

(d)     To the extent required by federal law, solely for the purposes of determining whether a Break in Service has occurred, a Participant shall receive credit for up to 500 Hours of Service, if he or she is absent from work because of a period of leave as provided under the Family Medical Leave Act of 1993. Periods of such leave shall not be taken into account for any other purpose under this Plan except to the extent required by federal law.

### SECTION 3.4. Non-Covered Service With Participating Employer

Any Employee who leaves Employment shall receive Hours of Service for Vesting Service purposes only for years of contiguous, non-covered service with any Employer to the extent required by ERISA.

### SECTION 3.5. Permanent Break In Service

A Participant who is not vested in his Accrued Benefit derived from Employer contributions shall irrevocably lose all prior years of Credited Service and Vesting Service at such time as the Participant's consecutive years of Breaks in Service equal or exceed the greater of five years or the total aggregate years of Vesting Service prior to suffering a Break in Service. Upon return to Employment in the Industry, such Participant shall be considered a new Participant in the Plan as of the date of re-employment in accordance with the provisions of Section 2.1.

### SECTION 3.6. Evidence of Hours Worked

9

The number of hours worked by any Participant shall be determined from the records of the Employer and the Social Security Administration, which shall be presumptive evidence of the facts contained therein. Any Participant shall have the right to rebut the presumption and present proof of his employment record to the Board in support of his application for a pension. The Board shall be the sole judge of whether the presumption has been successfully rebutted and the sufficiency of such proof.

## SECTION 3.7.  Pre-1975 Service

(a)    A Participant who, as of August 31, 1975, has 10 years of continuous service, as defined in the Plan in effect on that date, and has 500 or more Hours of Service during the Plan Year beginning on September 1, 1974 and ending on August 31, 1975, shall be vested in an Accrued Benefit payable at age 55 (if Participant is not otherwise eligible for any greater benefit from this Plan) unless the Participant has reached his 55th year in which event his vested benefit may be paid immediately.

(b)    A Participant with less than ten years of continuous service as of August 31, 1975, as defined in the Plan then in effect, shall not become vested in an Accrued Benefit until such time as his years of continuous service prior to August 31, 1975 and years of Credited Service subsequent to August 31, 1975, which have not been canceled by a permanent Break in Service, total 10.  At that time, such Participant shall be vested in his Accrued Benefit payable at age 55 (if Participant is not otherwise eligible for any greater benefit from this Plan) unless the Participant has reached his 55th year in which event his vested benefit may be paid immediately.

## ARTICLE 4
## Eligibility Requirements for Pension Benefits

### SECTION 4.1.  Normal Retirement

To be eligible for a Normal Retirement Pension, a Participant must make formal application to the Board for a retirement pension and meet one of the following requirements:

(a)    Regardless of age, have at least 25 years of Credited Service; or

(b)    Have reached age 62 and have 20 years of Credited Service; or

(c)    Have reached age 55 and have 10 years of Credited Service; or

(d)    Have reached age 62 and have at least 10 years of Credited Service; or

(e)    Shall have reached Normal Retirement Age and furnish proof satisfactory to the Board that he has at least 5 years of Credited Service; or

(f)    Have reached Normal Retirement Age and be actively Employed in the Industry, in which event Participant shall receive a pension based upon years of Credited Service.

10

**SECTION 4.2. Disability Retirement**

(a)    Any Participant who is:

   (1)    forty-five years of age or older;

   (2)    has completed at least ten (10) years of consecutive Credited Service and has worked not less than 1,000 Hours of Service in each of the ten (10) consecutive Plan Years preceding the date he sustained the disability;

   (3)    who becomes Totally and Permanently Disabled;

   (4)    who is actively employed by an Employer in Employment in the Industry at the time he sustains the disability that is or becomes a Total and Permanent Disability; and

   (5)    files an application for a disability pension;

shall be entitled to a Full Disability Pension as provided in Section 5.2(a).

(b)    Any Participant who is:

   (1)    forty-five years of age or older;

   (2)    has completed at least ten (10) consecutive years of Credited Service;

   (3)    who becomes permanently and totally disabled from performing his customary Employment in the Industry (i.e., Participant is unable to perform work for an Employer) but who is not Totally and Permanently Disabled from working and can work outside the Industry;

   (4)    who is actively employed by an Employer in Employment in the Industry at the time he sustains the disability; and

   (5)    files an application for a pension;

shall be entitled to a Partial Disability Pension as provided in Section 5.2(b).

(c)    Effective August 1, 2001, any Participant who is:

   (1)    forty years of age or older;

   (2)    has completed at least ten (10) years of consecutive Credited Service and has worked not less than 1,000 Hours of Service in each of the ten (10) consecutive Plan Years preceding the date he sustained the disability;

   (3)    who becomes Totally and Permanently Disabled and establishes to the satisfaction

11

of the Board of Trustees that he has a life expectancy of six months or less;

(4)    who is actively employed by an Employer in Employment in the Industry at the time he sustains the disability that is or becomes a Total and Permanent Disability; and

(5)    files an application for a disability pension;

shall be entitled to a Full Disability Pension as provided in Section 5.2(a).

### SECTION 4.3. Definition of Total and Permanent Disability

"Totally and Permanently Disabled" or "Total and Permanent Disability" for the purpose of this Plan means total disability as a result of bodily injury or disease such that the Participant is prevented thereby from engaging in any occupation or employment and with respect to which it appears probable that such disability will be permanent and continuous during the remainder of the Participant's lifetime. The Trustees shall determine the existence of Total and Permanent Disability solely on the Participant's qualification or nonqualification for a disability income benefit under the Federal Social Security Act.

However, notwithstanding any determination by the Social Security Administration, no pension on grounds of disability shall be granted to a Participant whose disability was suffered as the result of his criminal activity, habitual drunkenness, self-inflicted injury, addiction to narcotics or as a result of an injury sustained in military service.

### SECTION 4.4. Evidence of Disability

In order for a Participant to be granted a Full Disability Pension under Section 4.2(a), such Participant must substantiate to the satisfaction of the Board that the Participant has qualified for a disability income benefit under the Federal Social Security Act.

### SECTION 4.5. Continuing Eligibility

Upon request of the Board, the Participant must substantiate his continuing receipt of a disability income benefit under the Federal Social Security Act. If a disability Pensioner refuses or is unable to provide evidence of continuing eligibility for a Social Security Disability Benefit, his pension payments shall cease until such time as he is determined to be eligible for continuance of such pension. He shall not, however, lose any right he may have to any other pension benefit to which he may be entitled under this Plan upon such application as the Trustees shall prescribe; provided however, there shall be no duplication of benefits.

### SECTION 4.6. End of Disability

A disability Pensioner's pension shall cease if he is found to be no longer eligible for a Social Security Disability Benefit.

## ARTICLE 5
## Pension Benefit Amounts

Monthly benefit payments provided herein are subject to a reduction to provide a Joint and Survivor Annuity in accordance with Section 6.2.

### SECTION 5.1. Normal Retirement

(a)   The Normal Retirement Pension for Employees who terminated Employment before January 1, 1998 shall be determined under the terms of the Plan as of December 31, 1997. The Normal Retirement Pension for Employees who terminated Employment between January 1, 1998 and January 1, 2001 shall be determined under the terms of the Plan as of December 31, 2000. Effective January 1, 2001, for Employees who terminate Employment on or after January 1, 2001, the Normal Retirement Pension will be determined as follows:

(1)   The monthly pension for Participants retiring under Section 4.1(a), after completion of 25 or more years of Credited Service, regardless of age, will equal the Participant's basic monthly wage in effect on January 1, 2001, multiplied by the percentage indicated in the following chart for the Participant's job classification and years of Credited Service:

TABLE OF APPLICABLE PERCENTAGES FOR RETIREMENTS ON OR AFTER JANUARY 1, 2001

| Years of Credited Service | Matron-Attendants & Escorts | All Other Job Classifications |
|---|---|---|
| 35 | 46.87% | 40.83% |
| 34 | 45.80% | 39.57% |
| 33 | 44.74% | 38.31% |
| 32 | 43.67% | 37.04% |
| 31 | 42.61% | 35.78% |
| 30 | 41.55% | 34.52% |
| 29 | 40.48% | 33.26% |
| 28 | 39.47% | 31.99% |
| 27 | 38.46% | 30.76% |
| 26 | 37.50% | 29.53% |
| 25 | 36.55% | 28.35% |

In no event will the monthly benefit payment be less than the following Minimum Monthly Benefit:

13

**TABLE OF MINIMUM MONTHLY BENEFIT FOR RETIREMENTS ON OR AFTER JANUARY 1, 2001**

| Years of Credited Service | Drivers & Maintenance Employees and Union Officers and Fund Personnel | Matron-Attendants & Escorts | First Class Mechanics | Lead Men |
|---|---|---|---|---|
| 35 | $1,488 | $881 | $1,685 | $2,003 |
| 34 | $1,442 | $861 | $1,633 | $1,941 |
| 33 | $1,396 | $841 | $1,581 | $1,879 |
| 32 | $1,350 | $821 | $1,529 | $1,817 |
| 31 | $1,304 | $801 | $1,476 | $1,755 |
| 30 | $1,258 | $781 | $1,424 | $1,693 |
| 29 | $1,212 | $761 | $1,372 | $1,631 |
| 28 | $1,166 | $742 | $1,320 | $1,569 |
| 27 | $1,121 | $723 | $1,269 | $1,509 |
| 26 | $1,076 | $705 | $1,218 | $1,448 |
| 25 | $1,033 | $687 | $1,170 | $1,390 |

(2)   For Participants retiring under Section 4.1(b), upon attaining age 62 with 20 or more years but less than 25 years of Credited Service, their monthly benefit will equal the Participant's monthly wage in effect on January 1, 2001, multiplied by the percentage indicated in the Table of Applicable Percentages for retirements on or after January 1, 2001 for the Participant's job classification with 25 years of Credited Service. Notwithstanding the preceding sentence, the monthly benefit payment will not be less than the Minimum Monthly Benefit for retirements on or after January 1, 2001 for the Participant's job classification with 25 years of Credited Service.

(3)   For Participants retiring under Section 4.1(c), upon attaining age 55 with 10 or more years but less than 25 years of Credited Service, their monthly benefit will equal the Participant's basic monthly wage in effect on January 1, 2001, multiplied by (i) the percentage indicated in the Table of Applicable Percentages for retirements on or after January 1, 2001 for the Participant's job classification with 25 years of Credited Service, and (ii) by a fraction the numerator of which is Participant's years of Credited Service earned as of retirement and the denominator of which is 25. Notwithstanding the preceding sentence, the monthly benefit payment will not be less than the Minimum Retirement Benefit for retirements on or after January 1, 2001 for

the Participant's job classification with 25 years of Credited Service, multiplied by the fraction described above.

(4)     For Participants retiring under Section 4.1(d), upon attaining age 62 with 10 or more years but less than 20 years of Credited Service, their monthly benefit will equal the Participant's basic monthly wage in effect on January 1, 2001, multiplied by (I) the percentage indicated in the Table of Applicable Percentages for retirements on or after January 1, 2001 for the Participant's job classification with 25 years of Credited Service and (ii) by a fraction the numerator of which is Participant's years of Credited Service earned as of retirement and the denominator of which is 20. Notwithstanding the preceding sentence, the monthly benefit payment will not be less than the Minimum Retirement Benefit for retirements on or after January 1, 2001 for the Participant's job classification with 25 years of Credited Service, multiplied by the fraction described above.

(5)     For Participants retiring under Section 4.1(e), upon attainment of Normal Retirement Age, with less than 10 years of Credited Service while actively Employed in the Industry, their monthly benefit will be the Participant's basic monthly wage in effect on January 1, 2001, multiplied by (I) the percentage indicated in the Table of Applicable Percentages for retirements on or after January 1, 1998 for the Participant's job classification with 25 years of Credited Service, and (ii) by a fraction, the numerator of which is Participant's years of Credited Service earned as of retirement and the denominator of which is 25. Notwithstanding the preceding sentence, the monthly benefit payment will not be less than the Minimum Retirement Benefit for retirements on or after January 1, 2001 for the Participant's job classification with 25 years of Credited Service, multiplied by the fraction described above.

(b)     Effective for Participants who terminate Employment and retire on or after September 1, 2003, the monthly pension will be determined under Section 5.1(a)(1) through (a)(5) using the Participant's basic monthly wage in effect on January 1, 2003 and the following table of applicable percentages for the Participant's job classification:

### TABLE OF APPLICABLE PERCENTAGES FOR RETIREMENTS ON OR AFTER SEPTEMBER 1, 2003

| Years of Credited Service | Matron-Attendants & Escorts | All Other Job Classifications |
|---|---|---|
| 35 | 43.97% | 38.30% |
| 34 | 42.96% | 37.12% |
| 33 | 41.97% | 35.94% |
| 32 | 40.97% | 34.75% |

15

| 31 | 39.97% | 33.56% |
| 30 | 38.98% | 32.38% |
| 29 | 37.97% | 31.20% |
| 28 | 37.03% | 30.01% |
| 27 | 36.08% | 28.86% |
| 26 | 35.18% | 27.70% |
| 25 | 34.29% | 26.59% |

(c)     Effective for Participants who terminate Employment and retire on or after July 1, 2005, the monthly pension will be determined under Section 5.1(a)(1) through (a)(5) using the Participant's basic monthly wage in effect on January 1, 2005 and the following table of applicable percentages for the Participant's job classification. In no event will the monthly benefit payment be less than the Minimum Monthly Benefit, as indicated under each job classification:

**TABLE OF APPLICABLE PERCENTAGES AND MINIMUM MONTHLY BENEFITS FOR RETIREMENTS ON OR AFTER JULY 1, 2005**

| Years of Credited Service | Matrons-Attendants & Escorts | | Drivers & Maintenance Employees, Union Officers and Fund Personnel | | First Class Mechanics | | Lead Men | |
|---|---|---|---|---|---|---|---|---|
| 35 | 45.58% | $969 | 39.72% | $1,637 | 39.72% | $1,854 | 39.72% | $2,205 |
| 34 | 44.54% | $947 | 38.48% | $1,586 | 38.48% | $1,796 | 38.48% | $2,136 |
| 33 | 43.51% | $925 | 37.27% | $1,536 | 37.27% | $1,739 | 37.27% | $2,069 |
| 32 | 42.47% | $903 | 36.03% | $1,485 | 36.03% | $1,681 | 36.03% | $2,000 |
| 31 | 41.44% | $881 | 34.79% | $1,434 | 34.79% | $1,623 | 34.79% | $1,931 |
| 30 | 40.40% | $859 | 33.58% | $1,384 | 33.58% | $1,567 | 33.58% | $1,864 |
| 29 | 39.37% | $837 | 32.34% | $1,333 | 32.34% | $1,509 | 32.34% | $1,795 |
| 28 | 38.38% | $816 | 31.13% | $1,283 | 31.13% | $1,453 | 31.13% | $1,728 |
| 27 | 37.39% | $795 | 29.92% | $1,233 | 29.92% | $1,396 | 29.92% | $1,661 |

16

| 26 | 36.50% | $776 | 28.73% | $1,184 | 28.73% | $1,341 | 28.73% | $1,595 |
| 25 | 35.56% | $756 | 27.56% | $1,136 | 27.56% | $1,286 | 27.56% | $1,530 |

(d)  Effective for Participants who terminate Employment and retire on or after July 1, 2006, the monthly pension will be determined under Section 5.1(a)(1) through (a)(5) using the Participant's basic monthly wage in effect on January 1, 2005 and the following table of applicable percentages for the Participant's job classification. In no event will the monthly benefit payment be less than the Minimum Monthly Benefit, as indicated under each job classification:

### TABLE OF APPLICABLE PERCENTAGES AND MINIMUM MONTHLY BENEFITS FOR RETIREMENTS ON OR AFTER JULY 1, 2006

| Years of Credited Service | Matrons-Attendants & Escorts | | Drivers & Maintenance Employees, Union Officers and Fund Personnel | | First Class Mechanics | | Lead Men | |
|---|---|---|---|---|---|---|---|---|
| 40 | 50.75% | $1,079 | 45.91% | $1,892 | 45.91% | $2,142 | 45.91% | $2,549 |
| 39 | 49.72% | $1,057 | 44.67% | $1,841 | 44.67% | $2,085 | 44.67% | $2,480 |
| 38 | 48.68% | $1,035 | 43.43% | $1,790 | 43.43% | $2,027 | 43.43% | $2,411 |
| 37 | 47.65% | $1,013 | 42.19% | $1,739 | 42.19% | $1,969 | 42.19% | $2,342 |
| 36 | 46.61% | $991 | 40.96% | $1,688 | 40.96% | $1,911 | 40.96% | $2,274 |
| 35 | 45.58% | $969 | 39.72% | $1,637 | 39.72% | $1,854 | 39.72% | $2,205 |
| 34 | 44.54% | $947 | 38.48% | $1,586 | 38.48% | $1,796 | 38.48% | $2,136 |
| 33 | 43.51% | $925 | 37.27% | $1,536 | 37.27% | $1,739 | 37.27% | $2,069 |
| 32 | 42.47% | $903 | 36.03% | $1,485 | 36.03% | $1,681 | 36.03% | $2,000 |
| 31 | 41.44% | $881 | 34.79% | $1,434 | 34.79% | $1,623 | 34.79% | $1,931 |
| 30 | 40.40% | $859 | 33.58% | $1,384 | 33.58% | $1,567 | 33.58% | $1,864 |
| 29 | 39.37% | $837 | 32.34% | $1,333 | 32.34% | $1,509 | 32.34% | $1,795 |

17

| 28 | 38.38% | $816 | 31.13% | $1,283 | 31.13% | $1,453 | 31.13% | $1,728 |
| 27 | 37.39% | $795 | 29.92% | $1,233 | 29.92% | $1,396 | 29.92% | $1,661 |
| 26 | 36.50% | $776 | 28.73% | $1,184 | 28.73% | $1,341 | 28.73% | $1,595 |
| 25 | 35.56% | $756 | 27.56% | $1,136 | 27.56% | $1,286 | 27.56% | $1,530 |

(e) A Participants who attains age 55 and completes at least 10 (but less than 25) years of Credited Service or who attains the age of 62 and completes at least 10 (but less than 20) years of Credited Service may elect to continue working until he has completed 30, 25 or 20 years of Credited Service respectively, and shall receive a pension in accordance with the appropriate provisions of Section 4.1.

(f) (1) For Employees who commence participation before June 5, 1997, if a Participant retires on and after January 1, 1998 and has served on the Executive Board of the Union for five (5) or more years in addition to Employment in the Industry under a collective bargaining agreement, the basic monthly wage rate used for calculating a monthly pension shall be that of a full-time member of the Executive Board in accordance with the above tables.

   (2) Effective June 5, 1997, Employees who commence participation on or after that date must serve on the Executive Board of the Union on a full-time basis for five (5) or more years in order for the basic monthly wage rate used for calculating a monthly pension to be that of a full-time member of the Executive Board.

(g) For the purposes of calculating pension benefit amounts under Article V, a Participant's basic monthly wage shall be the sum of the Participant's basic monthly wages from all Employers.

**SECTION 5.2. Disability Retirement**

(a) For Participants retiring on and after January 1, 2001, having satisfied the eligibility requirements for a Disability Pension under Section 4.2, the monthly benefit shall be equal to the Participant's basic monthly wage in effect on January 1, 2001, multiplied by (i) the percentage indicated in the Table of Applicable Percentages for the Participant's job classification with 25 years of Credited Service, and (ii) by a fraction the numerator of which is Participant's years of Credited Service earned as of retirement and the denominator of which is 20.

For Participants who terminate Employment and retire on and after September 1, 2003, having satisfied the eligibility requirements for a Disability Pension under Section 4.2, the monthly benefit shall be equal to the Participant's basic monthly wage in effect on January 1, 2003, multiplied by (i) the percentage indicated in the Table of Applicable Percentages for

the Participant's job classification with 25 years of Credited Service, and (ii) by a fraction the numerator of which is Participant's years of Credited Service earned as of retirement and the denominator of which is 20.

For Participants who terminate Employment and retire on and after July 1, 2005, having satisfied the eligibility requirements for a Disability Pension under Section 4.2, the monthly benefit shall be equal to the Participant's basic monthly wage in effect on January 1, 2005, multiplied by (i) the percentage indicated in the Table of Applicable Percentages for the Participant's job classification with 25 years of Credited Service, and (ii) by a fraction the numerator of which is Participant's years of Credited Service earned as of retirement and the denominator of which is 20.

Notwithstanding the preceding sentences, the monthly pension will not be less than the Minimum Monthly Benefit for the Participant's job classification with 25 years of Credited Service, multiplied by a fraction of his years of service earned at retirement over 20.

If a Participant has between 20 and 25 years of Credited Service upon applying for a Disability Pension, the monthly benefit will be determined under Section 4.1(a), as if the Participant had 25 years of Credited Service upon retirement. If a Participant has more than 25 years of Credited Service upon applying for a Disability Pension, the monthly benefit will be determined under Section 4.1(a).

(b)     A Participant who is eligible for a Partial Disability Pension under Section 4.2(b) shall receive a monthly disability pension equal to one half the amount he would have received if he were Totally and Permanently Disabled provided he is not eligible for any greater benefit under this Plan.

(c)     (1)     For Employees who commence participation before June 5, 1997, if a Participant retires on and after January 1, 1998 and has served on the Executive Board of the Union for five (5) or more years in addition to Employment in the Industry under a collective bargaining agreement, the basic monthly wage rate used for calculating a Disability Pension shall be that of a full-time member of the Executive Board in accordance with the above tables.

        (2)     Effective June 5, 1997, Employees who commence participation on or after that date must serve on the Executive Board of the Union on a full-time basis for five (5) or more years in order for the basic monthly wage rate used for calculating a Disability Pension to be that of a full-time member of the Executive Board.

(d)     For Participants who have satisfied the eligibility provisions for a Disability Pension, the Benefit Commencement Date of the Disability Benefit shall be the first day of the month following the date that the Participant became Totally and Permanently Disabled as determined by the Social Security Administration, unless the Trustees, in their sole discretion, determine that the Participant became Totally and Permanently Disabled on a different date. Notwithstanding the foregoing, the Benefit Commencement Date of the Disability Benefit shall not be earlier than the first day of the month following the date that

19

the Participant submitted a pension application to the Fund.

(e) No Disability Pension may be commenced for a Participant after the Benefit Commencement Date of the Participant's Normal Retirement Pension hereunder even if the Benefit Commencement Date of such Disability Pension is proposed to be prior to the Benefit Commencement Date of such Normal Retirement Pension. Notwithstanding the foregoing, a Pensioner who commences receiving an Early Pension under Section 4.1(c) before receiving a Social Security Administration finding of Total and Permanent Disability shall be entitled to elect to convert the benefit form from an Early Pension to a Disability Pension upon satisfaction of the requirements of Section 4.2 for entitlement to a Disability Pension. Any increase from Early to Disability Pension will be payable retroactive to the Participant's Benefit Commencement Date under Section 5.2(d).

(f) Special Pension Benefit Rule for Participants Formerly Employed by United Cerebral Palsy of New York City, Inc.

   (1) Notwithstanding the provisions of Section 5.1 or of any other provision of this Plan, effective as of September 10, 1989, retirement benefits for Participants who:

      (A) (I) were employed by United Cerebral Palsy of New York City, Inc. (UCP), (ii) terminated employment with UCP as of September 9, 1989, and (iii) as of September 10, 1989, became Employees of Pro-Transit, Inc., a successor Employer in Employment in the Industry, and (iv) who had transferred the value of their Accrued Benefit in the Pension Plan for Employees of United Cerebral Palsy of New York City, Inc. (UCP Plan) to this Plan; or

      (B) prior to September 9, 1989, terminated employment with UCP with a vested right to a benefit under the UCP Plan who then became Participants in this Plan as a result of their Employer's participation in the Plan and had transferred the value of their Accrued Benefit under the UCP Plan to this Plan;

      shall receive Credited Service and Vesting Service under this Plan for years of service with UCP in accordance with Appendix A. In no event, however, shall such Vesting Service exceed the actual years of vesting service earned by such Participant under the UCP Plan.

   (2) Former UCP employees shall vest in the value of their Accrued Benefits that are transferred to this Plan from the UCP Plan in accordance with the vesting provisions of the UCP Plan that are set forth in full at Appendix A.

   (3) At such time as any former UCP employee shall attain age 55 or at any age thereafter, he may retire and elect to have that part of his Accrued Benefit under this Plan attributable to the assets transferred from the UCP Plan to this Plan paid in the Normal Form or one of the Optional Forms that were available under the UCP Plan which have been set forth in full at Appendix A, subject to a percentage reduction for

20

each year that commencement of benefits precedes his 65th birthday, in accordance with the provisions of the UCP Plan that are set forth at Appendix A.

(4) All benefit accruals that result from these Participants' employment with Pro-Transit, Inc. and/or any other Employer shall be determined and paid solely in accordance with the provisions of this Plan.

(5) Nothing contained in this Section or in Appendix A shall be deemed to require that any former UCP Participant elect to receive payment of that part of his benefit resulting from the transfer of his Accrued Benefit to this Plan in any of the UCP Plan's optional annuity forms set forth at Appendix A. Such Participant may elect, at the time of retirement, to have his pension benefit paid solely in accordance with the provisions of this Plan.

(6) Retirement benefits under this Plan for those Participants formerly employed by UCP who do not transfer the value of their UCP Plan Accrued Benefit to this Plan shall be determined and paid solely in accordance with the provisions of this Plan and based solely on their Credited Service earned under this Plan. Such Participants shall, however, receive Vesting Service in accordance with Appendix A. In no event, however, shall any such Participant receive Credited Service for vesting purposes exceeding the actual years of vesting service earned by such Participant under the UCP Plan.

## SECTION 5.3. Maximum Retirement Benefit

(a) The Annual Benefit otherwise payable to a Participant at any time will not exceed the Maximum Permissible Amount. If the benefit the Participant would otherwise accrue in a limitation year would produce an Annual Benefit in excess of the Maximum Permissible Amount, the rate of accrual will be reduced so that the Annual Benefit will equal the Maximum Permissible Amount.

(b) The Maximum Permissible Amount limitation is deemed satisfied if the Annual Benefit payable to a Participant is not more than $1,000 multiplied by the Participant's years of Credited Service (not to exceed 10) with the Employer, and the Employer has not, at any time, maintained a defined contribution plan, a welfare benefit plan or an individual medical account in which such Participant participated.

(c) In the case of an individual who was a Participant in one or more defined benefit plans maintained by the Employer, as of the first day of the first Limitation Year beginning after December 31, 1986, the application of the limitations of this Section 5.4 shall not cause the Maximum Permissible Amount for such individual under all such defined benefit plans to be less than the individual's current Accrued Benefit. The preceding sentence applies only if such defined benefit plans met the requirements of Code §415, for all limitation years beginning before January 1, 1987.

For this purpose, a Participant's Accrued Benefit under the Plan shall be determined as if the

21

Participant had separated from service as of the close of the last limitation year beginning before January 1, 1987, expressed as an Annual Benefit within the meaning of Code §415(b)(2). In determining the amount of a Participant's current Accrued Benefit, any change in the terms and conditions of the Plan after May 5, 1986 and any cost of living adjustments occurring after May 5, 1986 shall be disregarded.

(d)    Definitions

(1)    Annual Benefit: A retirement benefit under the Plan which is payable annually in the form of a straight life annuity. Except as provided below, a benefit payable in a form other than a straight life annuity must be adjusted to an actuarially equivalent straight life annuity before applying the limitations of this Section. The interest rate assumption used to determine actuarial equivalence will be the greater of the rate adopted by the Trustees or 5%. The Annual Benefit does not include any benefits attributable to Employee contributions or rollover contributions, or the assets transferred from a qualified plan that was not maintained by the Employer. No actuarial adjustment to the benefit is required for (A) the value of a qualified joint and survivor annuity, (B) the value of benefits that are not directly related to retirement benefits (such as the qualified disability benefit, pre-retirement death benefits, and post-retirement medical benefits), and © the value of post-retirement cost-of-living increases made in accordance with Code Section 415(d) and Regulations Section 1.415-3(c)(2)(iii).

(2)    Compensation: Compensation means all of each Participant's earnings for the taxable year ending with or within the Plan Year which are subject to tax under Code Section 3101(a) without the dollar limitation of Code Section 3121(a), but not including deferred compensation except, effective for Plan Years beginning on or after January 1, 1998, contributions through a salary reduction agreement to a cash or deferred plan under Code Section 401(k), Code Section 401(h)(1)(B), cafeteria plan under Code Section 125, deferred compensation under Code Section 457 or to a tax deferred annuity under Code Section 403(b) and shall exclude any other fringe benefit program maintained by an Employer. Effective January 1, 2001, Compensation shall include amounts excluded from gross income pursuant to Code Section 132(f)(4). Effective January 1, 2002, compensation that may be taken into account may not exceed Two Hundred Thousand Dollars ($200,000.00) (or such increased amount prescribed by the Code). In addition to other applicable limitations set forth in the Plan, and notwithstanding any other provision of the Plan to the contrary, effective September 1, 1994, the annual compensation of each Employee taken into account under the Plan shall not exceed $150,000, as adjusted in accordance with the Code and applicable regulations.

(3)    Employer: For purposes of this Section 6, Employer shall mean the Employer that participates in this Plan, and all members of a controlled group of corporations (as defined in Code Section 414(b) as modified by Section 415(h)), all commonly controlled trades or businesses (as defined in Code Section 414© as modified by Code Section 415(h)), or affiliated service groups (as defined in Code Section

22

414(m)) of which the participating Employer is a part, and any other entity required to be aggregated with the Employer pursuant to regulations under Code Section 414(o).

(4)    Limitation Year: The calendar year.

(5)    Maximum Permissible Amountfor Limitation Years before January 1, 2002:

    (A)    The lesser of $140,000 (or such other adjusted limitation) or one hundred percent (100%) of the Participant's highest average compensation for the three consecutive years of service with the Employer that produce the highest average. Any new limitation will apply to Plan Years ending within the calendar year of the date of the adjustment.

    (B)    If the Participant has less than 10 years of participation with the Employer, the $140,000 is reduced by one-tenth (1/10) for each year of participation (or part thereof) less than 10. To the extent provided by the Code, the preceding sentence shall be applied separately with respect to each change in the benefit structure of the Plan. If the Participant has less then 10 years of Credited Service, the compensation limitation is reduced by one-tenth (1/10) for each year of Credited Service (or part thereof) less than 10.

    (C)    If the Annual Benefit of the Participant commences before the Participant's Social Security retirement age, but on or after age 62, the $140,000 shall be determined as follows:

        (1)    If a Participant's Social Security retirement age is 65, the dollar limitation for benefits commencing on or after age 62 is determined by reducing the defined benefit dollar limitation by five-ninths (5/9) of one percent (1%) for each month by which benefits commence before the month in which the Participant attains age 65.

        (2)    If a Participant's Social Security retirement age is greater than 65, the $140,000 limitation for benefits commencing on or after age sixty-two (62) is determined by reducing the defined benefit dollar limitation by five-ninths (5/9) of one percent (1%) for each of the first 36 months and five-twelfths (5/12) of one percent (1%) for each of the additional months (up to 24 months) by which benefits commence before the month of the Participant's Social Security retirement age.

    (D)    If the Annual Benefit of a Participant commences prior to age 62, the $140,000 limitation shall be the actuarial equivalent of an annual benefit beginning at age 62, as determined above, reduced for each month by which benefits commence before the month in which the Participant attains age 62. Any decrease in the defined benefit dollar limitation determined in accordance with this provision (D) shall not reflect the mortality decrement

23

to the extent that benefits will not be forfeited upon the death of the Participant.

(E)    If the Annual Benefit of a Participant commences after the Participant's Social Security retirement age, the $140,000 shall be adjusted so that it is the Actuarial Equivalent of an annual benefit of such dollar limitation beginning at the Participant's Social Security retirement age. To determine Actuarial Equivalence, the interest rate assumption used is the lesser of the rate specified in the Plan or five percent (5%).

(F)    With regard to Non-Bargaining Unit Employees, subsection © above shall be applied by substituting "age 62" for "Social Security retirement age" each place it appears, and by limiting the reduction of the dollar limitation so that it is not reduced below $75,000 if the benefit begins at or after age 55, or if the benefit begins before age 55, the equivalent of the $75,000 limitation for age 55; and Subsection (E) above shall be applied by substituting "age 65" for "Social Security retirement age" each place it appears.

To the maximum extent permitted, (c) through (E) of this subsection shall not apply to tax-exempt organizations maintaining the Plan.

(6)    Social Security Retirement Age: Age 65 in the case of a Participant attaining age 62 before January 1, 2000 (i.e., born before January 1, 1938), age 66 for a Participant attaining age 62 after December 31, 1999, and before January 1, 2017), (i.e., born after December 31, 1937, but before January 1, 1955), and age 67 for a Participant attaining age 62 after December 31, 2016 (i.e., born after December 31, 1954).

(7)    Maximum Permissible Amount for Limitation Years beginning on or after January 1, 2002.

Anything to the contrary notwithstanding, the Maximum Permissible Amount is the benefit dollar maximum under Code Section 415(b)(1)(A) (as adjusted under Code Section 415(d)), subject to the following:

(A)    If the Participant has fewer than ten (10) years of participation, the Code Section 415(b)(1)(A) maximum shall be multiplied by a fraction of which the numerator is his years of participation and the denominator is ten (10).

(B)    If the annual benefit commences before age sixty-two (62), the maximum permissible amount may not exceed the actuarial equivalent of the Code Section 415(b)(1)(A) maximum annual benefit beginning at age sixty-two (62).

(C)    If the annual benefit commences after age sixty-five (65), the benefit may not exceed the actuarial equivalent of the Code Section 415(b)(1)(A) maximum annual benefit beginning at age sixty-five (65).

24

(D) The maximum benefit limitations contained in the Plan shall be determined in accordance with Code Section 415(b)(2)(E).

(E) The Code Section 415(b)(1)(A) maximum limitation above will be automatically adjusted to the new dollar limitation determined by the Commissioner of the Internal Revenue. The new limitation will apply to Plan Years ending within the calendar year of the date of the adjustment.

(e) For purposes of this subsection, all tax-qualified defined contribution plans of an Employer shall be treated as a single-defined contribution plan and all tax-qualified defined benefit plans shall be treated as a single defined benefit plan, to the extent required under Code Section 415(f).

(f) Effective as of the first limitation year beginning after December 31, 1999, the maximum benefit limitations contained in the Plan shall be determined in accordance with the applicable provisions of GATT, as amended by the Small Business Job Protection Act of 1996, utilizing the applicable mortality table, applicable interest rate, and applicable stability period as defined in Section 1.3.

(g) Effective for limitation years commencing on and after January 1, 2000, the combined plan limitation contained in Code Section 415(e) shall no longer apply.

## ARTICLE 6
## Payment of Benefits

### SECTION 6.1.  Payment of Pensions

(a) The Participant, upon approval of his application, shall be entitled to a monthly retirement benefit beginning on the first day of the calendar month following the date of his termination of Employment with an Employer and submission of a complete written application and continuing to and including the payment due on the first day of the month in which his death occurs. Unless the Participant elects otherwise, all pension benefits payable to a Pensioner in accordance with this Plan shall commence no more than 60 days after August 31st of the Plan Year in which the latest of the following events occur:

    (1) The attainment by the Participant of age 65;

    (2) The 10th anniversary of the year in which the Participant commenced participation in the Plan; and

    (3) The termination of the Participant's service with an Employer.

(b) If the present value of the Participant's vested Accrued Benefit derived from both the Participant's and the Employer's contributions as of the Benefit Commencement Date is less than or equal to $5,000, the present value will be distributed to the Participant or surviving

spouse in a single cash payment.

(c)     Effective January 1, 2000, for Employees who attain age 70½ on or after January 1, 2000,
        distribution of pension benefits shall commence no later than the April 1 of the calendar year
        following the later of the calendar year in which the Participant attains age 70½ or the
        calendar year in which the Participant retires. The accrued benefit of an Employee (other than
        a 5-per cent owner) who retires in a calendar year after the calendar year in which the
        employee attains age 70½ shall be actuarially increased from April 1 after the calendar year
        in which the Employee attains age 70½ to the date on which benefits commence after
        retirement in an amount sufficient to satisfy Code Section 401(a)(9), in order to take into
        account the period during which the Employee is not receiving benefits under the Plan in
        accordance with Code Section 401(a)(9)(C)(iii). In addition such actuarial increases shall
        apply during the period that an Employee is in suspendible service under Section
        203(a)(3)(B) of ERISA and Code Section 411(a)(3)(B).

(d)     Distributions under this Section will be made in accordance with Section 401(a)(9) of the
        Code.

        (1)     Notwithstanding any election made by a Participant, a Participant's pension benefit
                under this Pension Plan shall be distributed over a period not longer than:

                (A)     the Participant's life;

                (B)     the life expectancy of the Participant; or

                (C)     his life and the life of his beneficiary, or

                (D)     the life expectancy of the Participant and his beneficiary.

        (2)     In the case of benefits to a surviving Spouse, payments shall begin on or before the
                later of the December 31st of the calendar year immediately following the calendar
                year in which the Participant died, the December 31st of the calendar year in which
                the Employee would have attained age 70½, or as soon as practicable after the
                Trustees learn of the death.

        (3)     Death Distribution Provisions

                (A)     Distributions beginning before death: If the Participant dies after distribution
                        of his or her interest has begun, the remaining portion of such interest will
                        continue to be distributed at least as rapidly as under the method of
                        distribution being used prior to the Participant's death.

                (B)     Distribution beginning after death: If the Participant dies before distribution
                        of his or her interest begins, distribution of the Participant's entire interest
                        shall be completed by December 31 of the calendar year containing the fifth
                        anniversary of the Participant's death except to the extent that distributions

                                                26

are made in accordance with (I) below:

(I)   if the designated Beneficiary is the Participant's surviving spouse, the date distributions are required to begin in accordance with (A) above shall not be earlier than the later of (I) December 31st of the calendar year immediately following the calendar year in which the Participant died or (II) December 31st of the calendar year in which the Participant would have attained age 70½.

(ii)   For purposes of this Section, if the surviving spouse dies after the Participant, but before payments to the spouse begin, the provisions of this Section, with the exception of paragraph (I) herein, shall be applied as if the surviving spouse were the Participant.

(e)   Actuarial Adjustment for Delayed Retirement

(1)   If a Participant's Annuity Starting Date is after the Participant's Normal Retirement Age, the Participant's monthly benefit will be an amount equal to the Participant's accrued benefit at Normal Retirement Age, actuarially increased (as provided in Section 2.1) for each complete calendar month in which the Participant's benefit is not suspended under Section 6.8 between the Participant's Normal Retirement Age and the Annuity Starting Date.

(2)   If a Participant first becomes entitled to additional benefits after Normal Retirement Age, the actuarial increase, if any, in those benefits will be calculated from the date they would first have been paid rather than Normal Retirement Age. Notwithstanding the foregoing, any such additional credited service earned after Normal Retirement Age shall be reduced, but not below zero, by the amount of any actuarial adjustment in accordance with Section 1.411(b)-2(b) of the Treasury Regulations.

## SECTION 6.2.  Joint and Survivor Annuity and Preretirement Survivor Annuity

(a)   A Joint and Survivor Annuity will become effective automatically if, on or after September 1, 1975, a married Participant who has been married to his Spouse for at least one (1) year retires or dies while employed and is eligible for a pension but has not made application for a pension.  Effective January 1, 1998, a Joint and Survivor Annuity will become effective automatically if a married Participant who has been married to his Spouse for at least eleven (11) months retires or dies while employed and is eligible for a pension but has not made application for a pension.  Under this benefit, the Spouse will receive for the remainder of such Spouse's life, 50% of the pension which the Pensioner was receiving under the Joint and Survivor Annuity or 50% of the pension the Participant would have been receiving under the Joint and Survivor Annuity had he been retired at the time he died while Employed in the Industry provided that the Participant had not elected, with the consent of the spouse, not to provide the Joint and Survivor Annuity.  The Joint and Survivor Annuity shall be the Actuarial Equivalent of the single life annuity form of benefit.  Actuarial Equivalence shall

27

be determined on the basis of mortality rates and interest rate(s) specified under Appendix B of the Plan. For Participants with an Hour of Service on or before March 20, 1997, such factor shall not be less than .8000.

(b)    If a married Participant who is married to his Spouse dies and has at least one (1) Hour of Service on or after August 23, 1984 with sufficient years of Credited Service for a pension:

    (1)    who has not attained age 55 then, at such time as he would have met the age requirement, his surviving spouse shall be entitled to receive a Preretirement Survivor Annuity payable as of the first of the month following the month in which the Participant would have attained age 55. The benefit amount the Spouse will receive shall be 50% of the pension the Participant would have been entitled to receive upon attainment of age 55 in the form of a Joint and Survivor Annuity, based upon the benefit rate in effect at the time of Participant's death; or

    (2)    who has attained age 55 but has not commenced receiving a benefit, his surviving spouse shall be entitled to receive the Joint and Survivor Annuity as of the first of the month following the Participant's death. The benefit amount the Spouse will receive shall be 50% of the pension the Participant would have been receiving in the form of a Joint and Survivor Annuity had he retired at the time of his death.

(c)    The Trustees shall notify each Participant of the terms and conditions of the Joint and Survivor Annuity and of the right to elect not to take the pension in that manner, the effect of any election to waive the Joint and Survivor Annuity, and of the right of the Spouse to consent to such election.

(d)    (1)    A married Participant or a married former Participant applying for a pension shall have no less than 30 days and no more than 180 days ending on the Benefit Commencement Date to elect not to receive the Joint and Survivor Annuity provided herein. Notwithstanding the foregoing, effective September 1, 1997, a Participant and Spouse may waive the requirement that the explanation required hereunder be given at least thirty (30) days before the Benefit Commencement Date provided the explanation is given at least seven (7) days prior to the date payment of benefits commence. Such election shall be in writing, on a form provided by the Trustees, and shall be signed by the Spouse to indicate the Spouse's consent to this diselection and the effect of any election to waive the Joint and Survivor Annuity. All spousal consents must be notarized or witnessed by a Plan representative. The waiver must include the acknowledgment by the Participant's Spouse of the non-spouse Beneficiary designation, if any, that may not be changed without spousal consent (unless the Spouse expressly permits designations without further consent). However, no consent shall be required if the Participant has been demonstrated to the satisfaction of the Trustees that:

    (A)    there is no Spouse;

    (B)    the Spouse cannot be located;

28

(C)   the Participant and Spouse are legally separated; or

(D)   the Participant has been abandoned by the Spouse as confirmed by court order.

(2)   Any election made hereunder may be revoked during the 180 day period provided above by notifying the Trustees, in writing, of such revocation and acknowledging the effect of such revocation.

(e)   A Participant's surviving Spouse may, in the event the Participant was employed by an Employer under a Collective Bargaining Agreement prior to December 31, 1990, elect to receive a refund of the Participant's employee contributions plus interest. However, in this event, the surviving spouse's annuity will be reduced by the actuarial value of such refund. In the event Participant was first employed on or after January 1, 1991, Participant's surviving Spouse may not elect to receive such refund.

(f)   The benefit payable to a Participant who is not married as of the Benefit Commencement Date shall be payable only as an annuity for the Participant's life.

## SECTION 6.3. Death Benefits

In the event a Participant (1) dies at any time before becoming eligible for a pension benefit, (2) is eligible for a pension benefit but dies prior to commencement thereof having elected not to provide a survivor's annuity, or (3) is unmarried, such Participant's Beneficiary shall be entitled to a refund equal to the sum of the Participant's contributions to the Fund plus interest at the applicable rate.

A Pensioner may designate one or more person(s) as a Beneficiary and if he wishes, one or more other person(s) as a contingent Beneficiary, in writing in the form and manner required by the Trustees and may change his designation in the same manner.

A Beneficiary may also be designated in an entered court order, provided that such order contains a clear designation of rights and is presented to the Fund prior to any payment being made to another Beneficiary of the same Pensioner. A Beneficiary designation in a court order meeting the above requirements will supercede any prior or subsequent conflicting Beneficiary designation that is filed with the Fund.

A Beneficiary may waive his or her rights as a Beneficiary under the Plan in an entered court order, provided that such order contains a clear waiver of rights and is presented to the Fund prior to any payment being made to said Beneficiary. A waiver in a court order meeting the above requirements will supercede any prior conflicting Beneficiary designation that has been filed with the Fund. If a court order meeting the above requirements contains a waiver of rights by the Beneficiary on file with the Fund Office, and the Pensioner subsequently dies without naming a new Beneficiary, any benefits payable on behalf of the Pensioner will be paid pursuant to the Plan as though the Pensioner died without designating a Beneficiary.

The Trustees shall be the sole judges of the effectiveness of the designation, change or waiver of a

Beneficiary pursuant to this Section.

In the event of the death of a Pensioner who has elected not to receive a Joint and Survivor's Annuity or who is unmarried, such Pensioner's Beneficiary shall receive a refund equal to the sum of the Participant's contributions and interest at the applicable rate minus the amount of Participant contributions and interest distributed to the retiree prior to the Pensioner's death.

In the event of the death of a Spouse who is receiving or would be entitled to receive a Joint and Survivor Annuity, the Spouse's Beneficiary shall receive a refund equal to the sum of the Participant's contributions and interest at the applicable rate minus the amount of Participant contributions and interest distributed to the Pensioner and/or the Spouse prior to death.

Prior to making any payment under this Article, the Board shall require proof of death of the Participant, Pensioner or Spouse. In the event no Beneficiary has been designated, payment shall be made as follows:

(a)     To the surviving spouse, if any;

(b)     If no surviving spouse, to the deceased's surviving children, if any, equally;

(c)     If no surviving spouse, and no surviving children, to the deceased's surviving parents or parent, if any, equally;

(d)     If no surviving spouse and no surviving children and no surviving parent, to the deceased's surviving brothers and sisters, if any, equally.

In the event there is no designated Beneficiary, surviving spouse, surviving children, surviving parent or surviving brother and/or sisters, then the payment shall be made to the Estate of the deceased. In the event there is no Estate, and no claim is made by any of the above listed next-of-kin within three years from date of death, then no death benefit shall be paid. However, restoration of the amount forfeited shall be made upon presentation of a valid claim by any person entitled thereto. The identity of any person claiming to be the Beneficiary, next-of-kin or to be otherwise entitled to payment hereunder shall be substantiated to the satisfaction of the Trustees.

Anything to the contrary notwithstanding, the Trustees may, at their option, pay an amount not to exceed the amount due, on the death of the Participant, Pensioner or surviving spouse, determined as set forth above, to any person appearing to be equitably entitled to the payment of actual expenses incurred in connection with the burial of the Participant where the named Beneficiary or next of kin as listed above, whichever is applicable, cannot be located within a reasonable time. Any payment of a benefit or installment thereof in accordance with the provisions of this Section shall be a complete discharge of any liability for the making of such payment under the provisions of the Plan.

## SECTION 6.4. Benefits Upon Severance

(a)     If a Participant terminates Employment in the Industry prior to vesting in the right to receive a pension benefit derived from Employer contributions and the present value of the

30

Participant's vested Accrued Benefit derived from the Participant's contributions as of the termination of employment exceeds $5,000 such Participant shall, upon such application as shall be provided by the Fund Office, receive a cash refund equal to the aggregate sum of Participant's contributions for each year of Employment in the Industry plus interest at the applicable rate. If a Participant terminates Employment in the Industry prior to vesting in the right to receive an Accrued Benefit derived from Employer contributions, and the present value of the Participant's vested Accrued Benefit derived from the Participant's contributions as of the termination of Employment is $5,000 or less, the Trustees shall distribute the present value to the Participant or surviving Spouse if applicable in a single cash payment and the Participant and surviving spouse if any shall be entitled to no other benefits under the Plan.

In the event a Participant returns to Employment in the Industry, he shall, for all purposes of this Plan, be treated as a new Employee. However, if such Participant has not suffered a Permanent Break in Service, the Participant may repay the full amount of the refund received in accordance with the foregoing provision (including interest paid thereon by the Fund) plus the interest due on the total amount through the date of repayment, compounded annually at the applicable rate. Upon repayment, prior Credited Service shall be restored. Repayment of contributions plus interest must be made within five (5) years of the Participant's re-Employment in the Industry. In the event a Participant who has not suffered a Permanent Break in Service returns to Employment in the Industry but does not repay withdrawn contributions as provided above, Credited Service prior to return of the Participant's contributions shall be considered for vesting purposes only.

(b) Any vested Participant who was Employed in the Industry with an Employer prior to December 31, 1990, who has accrued ten or more years of Credited Service and who terminates employment with an Employer, may withdraw employee contributions to the Fund plus interest. However, if the present value of the Participant's vested Accrued Benefit derived from both Participant's and the Employer's contributions is $5,000 or more, the consent of the Participant's Spouse shall be required to any withdraw of contributions and interest. Such consent shall be in writing on a form provided by the Board. Any Participant who withdraws his contributions to the Fund nevertheless shall be vested in his Accrued Benefit derived from his Employer's contributions on his behalf. The Participant's vested pension will be actuarially reduced to reflect this in accordance with the provisions of Code Section 411(c)(2).

(c) A Participant who first earns an Hour of Service on or after January 1, 1991 may not withdraw his contributions to the Fund and interest earned thereon in a lump sum upon termination if the Participant is eligible to commence receipt of a pension under Section 4.1 or 4.2.

### SECTION 6.5. Facility of Payment

If the Board determines that any Pensioner is unable to care for his affairs because of illness or accident, payments due to such Pensioner may be paid to the spouse, a child, a parent, a brother, a sister or any other person found by the Board to have incurred expenses in the care of the Pensioner.

Any payment of a benefit or installment thereof in accordance with the provisions of this Section shall be a complete discharge of any liability for the making of such payment under the provisions of the Plan.

### SECTION 6.6. Payments Not Deemed Wages

Payments made by an Employer to the Fund and pension payments made by the Fund shall not constitute or be deemed to be wages. No Employee shall have any right, title, interest or claim, legal or equitable, in or to his Employer's or any other Employer's payments to the Fund.

### SECTION 6.7. Lump Sum Ancillary Benefits

Pensioners and Beneficiaries receiving a monthly benefit from the Plan on April 1, 1996 shall receive an ancillary lump sum payment equal to the monthly pension payment the Pensioner or Beneficiary receives on April 1, 1996.

### SECTION 6.8. Return to Industry After Retirement

(a) Effective November 1, 2001, if, at any time after his or her Benefit Commencement Date, a Pensioner returns to:

   (1) employment in the school transportation industry funded by a contract between any employer and the City of New York Board of Education, regardless of whether a contribution is required to the Fund under a collective bargaining agreement with the Union, except work as a supervisor or in a managerial position; or

   (2) Employment with the Union, the Credit Union, the Welfare Fund or this Fund for which contributions are required to the Fund under a written agreement with the Fund or a collective bargaining agreement;

(such employment constituting "Suspendable Employment") then the Pensioner shall immediately notify the Fund Office and pension payments shall cease for each month such Pensioner is so employed for forty (40) hours or more during in Suspendable Employment.

(b) Thereafter, upon approval of such application as the Board of Trustees may prescribe, the Pensioner's right to pension payments shall recommence. After re-employment, the pension benefit upon re-retirement shall be calculated by adding to the amount the Pensioner was originally receiving as a pension, the benefit earned for each year of Credited Service earned subsequent to return to employment.

(c) There shall be deducted from retirement benefits payable under the Plan any payments previously made to the Pensioner during those calendar months in which the Pensioner was in Suspendable Employment, provided that such deduction shall not exceed, in any one (1) month, twenty-five percent (25%) of that month's total retirement benefits that would have been due but for the deduction, excluding the initial payment upon re-retirement, which may be subject to deduction without limitation.

32

(d)     A Pensioner may request a determination of whether a specific contemplated employment constitutes Suspendable Employment as defined in subsection (a). The Board of Trustees within a reasonable time after receipt of such request shall advise the Pensioner of its determination. A Pensioner may appeal the determination of the Board of Trustees in accordance with the Claims Procedure set forth in the Plan.

(e)     The provisions of this Section shall apply each time the Pensioner returns to employment in the Suspendable Employment, as set forth above, after his/her Benefit Commencement Date.

(f)     For all periods prior to November 1, 2001, the suspension of benefits rules of the Plan are revoked.

(g)     This Section shall be administered in accordance with the applicable Department of Labor Regulations under Section 2530.203-3.

## SECTION 6.9. Continuation of Employment After Normal Retirement Age

If an Employee in Employment in the Industry attains Normal Retirement Age and continues in Employment in the Industry, such Employee's retirement benefits under the Plan shall in suspension for so long as such Employee shall be so employed, provided such Employee completes forty (40) or more Hours of Employment during any one month period. Such suspension shall be in accordance with the applicable Department of Labor Regulations under Section 2530.203-3. Upon termination of Employment, such Employee's retirement benefit under the Plan shall commence in accordance with the provisions of this Plan, including Section 6.1.

## SECTION 6.10. Rollover Distributions

(a)     Effective January 1, 1993, for distributions made on or after January 1, 1993, notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Article, a Distributee may elect, at the time and in the manner prescribed by the Board of Trustees, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a direct rollover.

(b)     (1)     Eligible Rollover Distribution: An Eligible Rollover Distribution is any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include (1) any distribution that is one of a series of substantially equal periodic payments made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated Beneficiary, or for a specified period of ten years or more; (2) any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; and (3) the portion of any distribution that is not includible in gross income. For distributions made on or after January 1, 2002, a portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of after-tax employee contributions which are not includible in gross income. However, such portion may be paid only to an individual retirement account

33

or annuity described in section 408(a) or (b) of the Code, or to a qualified defined contribution plan described in section 401(a) or 403(a) of the Code that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution that is includible in gross income and the portion of such that is not so includible.

(2)     Eligible Retirement Plan: An Eligible Retirement Plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, or a qualified trust described in Section 401(a) of the Code, that accepts the Distributee's Eligible Rollover Distribution. However, in the case of an Eligible Rollover Distribution to the surviving spouse, an Eligible Retirement Plan is an individual retirement account or individual retirement annuity. Effective for any distribution made on or after January 1, 2002, an eligible retirement plan shall also mean an annuity contract described in section 403(b) of the Code and an eligible plan under section 457(b) of the Code that is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and that agrees to separately account for amounts transferred into such plan from this plan. The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code. Effective January 1, 2007, eligible retirement plan shall also mean an "Inherited IRA" as defined in Section 408(d)(3)(C)(ii) of the Internal Revenue Code with respect to non-spouse Beneficiary rollovers.

(3)     Distributee: A Distributee includes an Employee or former Employee. In addition, the Employee's or former Employee's surviving spouse and the Employee's or former Employee's spouse or former spouse who is the alternate payee under a QDRO are Distributees with regard to the interest of the spouse or former spouse. Effective January 1, 2007, a non-spouse Beneficiary will be considered a Distributee under the Plan to the extent permitted by law.

(4)     Direct Rollover: A Direct Rollover is payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

## SECTION 6.11.   Benefit Increase for Retirees Effective January 1, 2003

(a)     Pensioners and surviving Spouses receiving a monthly benefit from the Plan for the month of January 2003 based on ten or more years of Credited Service shall receive an increase of $50.00 to the amount of the monthly pension payment that the Pensioner or surviving Spouse receives for the month of January 2003 and to the amount of each monthly benefit thereafter payable to such Pensioner or surviving Spouse.

(b)     Pensioners and surviving Spouses receiving a monthly benefit from the Plan for the month of December, 2005 shall receive a one-time supplemental payment of $250 with the December, 2005 pension payment.

## ARTICLE 7
## Financing

### SECTION 7.1. Contributions

(a) The Employer shall pay to the Trustees contributions in accordance with the Collective Bargaining Agreement in effect between the Employer and the Union or other written agreement requiring contributions to the Fund.

(b) All Employers shall transmit to the Fund with each monthly payment of contributions a written statement that shall include the name of each Employee for whom contributions are made, the amount of contributions paid and the calculation of such payment.

### SECTION 7.2. Contributions

(a) Employees shall make such contributions to the Fund as are provided for in the Collective Bargaining Agreement then in effect between the Employee's Employer and the Union or in the other written agreement then in effect between the Employee's Employer and the Fund.

(b) Each Employee's contribution shall be paid by a weekly deduction from salary. Such deduction shall be made by the Employer pursuant to the authorization executed by the Employee.

(c) The Employer shall pay to the Fund each month such sum(s) as shall have been withheld from each Employee's salary and shall provide a statement showing the amount paid and the name of the Employee.

(d) If, upon an Employee becoming a Participant, the Employee is obligated under the Collective Bargaining Agreement to contribute to the Fund for periods of employment preceding the date of his participation, such Participant shall be permitted to contribute for such prior period over a period (beginning with the date of participation) not to exceed twenty-four months. The Participant shall receive Credited Service for these contributions and interest shall be calculated only to the extent, and as of the date, that the Participant actually makes the required employee contribution to the Fund.

### SECTION 7.3. Form of Payment

All contributions made by an Employer and all contributions made by Employees under this Plan shall be made to the Fund, and shall be retained for the exclusive benefit of Participants, Pensioners and their beneficiaries, and used to pay benefits to such persons as provided in this Plan, and shall not revert or inure to the benefit of any Employer or any Employee(s) except as otherwise herein provided. Neither the Employer nor any Participant shall have any right, title or interest in contributions to the Fund.

35

### SECTION 7.4. Limitation of Liability

The Fund established pursuant to the Trust Agreement has been adopted on the basis of actuarial calculations that have established, to the extent possible, that the contributions will, if continued, be sufficient to maintain the Fund on a permanent basis. However, it is expressly recognized that the benefits provided by the Fund can be paid only to the extent that there are adequate Fund assets for those payments. In the event that at any time the Trust does not have sufficient assets to permit continued payments under the Plan, there shall be no liability upon the Employers, the Trustees or the Union to provide the benefits established by the Plan if the Fund does not have the assets to make such benefit payments, except to the extent required by Article 9 and applicable law. Expressions as to the form of the benefit (such as, for example, "life annuity") or as to the time when a benefit is to begin or cease shall be considered only descriptive terms for the sole purpose of determining the form and amount of benefit payments and shall not, under any circumstances, be deemed a guarantee of payments for the period described.

### SECTION 7.5. Exclusive Benefit

No part of the corpus or income of the Fund, except for such sums as may be expended in the administration of the Plan, is to be used for or diverted to purposes other than for the exclusive benefit of Participants, Pensioners and their beneficiaries. At all times, the assets of the Fund, to the extent they shall be sufficient, shall be allocated for the purpose of paying pension benefits to the persons then receiving them and to Participants who subsequently may become eligible therefor under the provisions of this Plan. Payment of pension benefits shall continue in accordance with the provisions of the Plan, until the entire Fund is disbursed or otherwise terminated in accordance with the terms of this Plan and the Trust Agreement and applicable law. In no event shall any amendment operate to reduce accrued pension benefits in violation of Section 411(d)(6) of the Internal Revenue Code.

### SECTION 7.6. Employee Contributions for Periods of Military Service

Notwithstanding anything to the contrary in this Article, a Participant shall be entitled to make Employee contributions that such Participant would have made if such Participant had remained in Employment under the Plan, to the extent required by law and if the Participant is entitled to reemployment rights and pension benefits under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. Section Ch. 43 and the Code Section 414(u), as may be amended, the Participant shall receive Credited Service for such periods without the requirement that the Employee make Employee contributions to the Fund for such period.

### ARTICLE 8
### Special Withdrawal Liability Rule for Employers
### Engaged in Pupil Transportation Effective as of January 1, 1982

### SECTION 8.1.

(a)     Complete withdrawal from this Plan shall occur, if:

36

(1)   An Employer, engaged in pupil transportation pursuant to contract between that Employer and the Board of Education of the City of New York, ceases to have an obligation to contribute under the Plan, and

(2)   Such Employer -

    (A)   continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or

    (B)   resumes such work within 5 years after the date on which the obligation to contribute under the Plan ceases, and does not renew the obligation at the time of the resumption.

(3)   In the event the Plan is terminated by mass withdrawal as defined in ERISA Section 4041A(a)(2), paragraph (2)(B) above shall be applied by substituting "3 years" for "5 years".

(b)   Partial withdrawal from the Plan shall occur if, on the last day of the Plan Year, for such year:

    (1)   there is a 70-percent contribution decline in any such Employer's contribution to the Plan, which shall be defined in accordance with the appropriate provisions of ERISA Section 4205, or

    (2)   there is a partial cessation of such Employer's contribution obligation which shall be defined in accordance with the appropriate provisions of ERISA Section 4205, and

    (3)   in addition to (1) or (2) above, such Employer is performing work of the type for which contributions were required in the jurisdiction of the collective bargaining agreement on a non-covered basis.

## SECTION 8.2.

(a)   The special withdrawal rules for Employers engaged in pupil transportation set forth in Section 8.1 shall not apply to the year in which termination of the Plan, as defined in ERISA Section 4041A(a)(2), occurs and for cessation of any Employer's obligations to contribute occurring during any of the three Plan years immediately preceding the year in which such termination occurs.

(b)   The special withdrawal rules set forth in Section 8.1 apply to an Employer only if substantially all of the Employees with respect to whom the Employer has an obligation to contribute under the Plan, are engaged in pupil transportation pursuant to contract between that Employer and the Board of Education of the City of New York.

An Employer that withdraws from this Fund under this Article 8 shall be liable for payment of withdrawal liability calculated pursuant to Article 9.

37

## ARTICLE 9
## Withdrawal Liability Employers Who Are Not Covered
## under the Special Withdrawal Liability Rule Set Forth in Article 8

### SECTION 9.1.

Any Employer that withdraws from this Fund that is responsible for payment of withdrawal liability pursuant to this Article 9 shall be liable for an amount of the unfunded vested benefits equal to the product of:

(a)     The Plan's unfunded vested benefits as of the end of the Plan Year preceding the Plan Year in which the Employer withdraws, less the value as of the end of such year of all outstanding claims for withdrawal liability which can reasonably be expected to be collected from Employers withdrawing before such year multiplied by:

(b)     a fraction -

    (1)     the numerator of which is the total amount required to be contributed by the Employer under the Plan for the last five (5) years ending before the withdrawal, and

    (2)     the denominator of which is the total amount contributed under the Plan by all Employers for the last five (5) years ending before the withdrawal, increased by any Employer contributions owed with respect to earlier periods which were collected in those Plan Years, and decreased by any amount contributed to the Plan during those Plan Years by Employers who withdrew from the Plan under this Section during those Plan Years.

### SECTION 9.2.

Under Section 9.1, the amount of the unfunded vested benefits allocable to any Employer that withdraws from this Plan shall be reduced by the lesser of:

(a)     ¾ of 1 percent of the Plan's unfunded vested obligations (determined as of the end of the Plan Year ending before the date of withdrawal), or

(b)     $50,000, reduced by the amount, if any, by which the unfunded vested benefits allocable to the Employer exceeds $100,000.

### SECTION 9.3.

In the event of a partial withdrawal by an Employer, the liability that such Employer will incur is to be determined by the provisions of ERISA Section 4206.

### SECTION 9.4.

For the purposes of this Section, the Fund's actuary shall determine the actuarial assumptions to be

38

used in accordance with ERISA Section 4213.

## SECTION 9.5.

In any suit by the Trustees to collect complete or partial withdrawal liability, including a suit to enforce an arbitrator's award or a claim asserted by the Trustees in an action brought by an Employer or other party, if judgment is awarded in favor of the Fund, the Employer shall pay to the Fund the following:

(a)    the unpaid liability;

(b)    interest on the unpaid liability, which interest shall be charged on any amount in default from the date the payment was due to the date it is paid at an annual rate equal to the prime rate charged by the Fund's custodian on the 1st day of the calendar quarter preceding the due date of the payment;

(c)    liquidated damages equal to the greater of--

    (1)    the amount of interest charged on the unpaid balance, or

    (2)    20-percent (or, if greater, the percentage permitted by Federal or State law) of the unpaid amount awarded.

The Employer shall also pay attorneys' fees, audit and actuarial fees and all costs incurred in the action, as awarded by the court. Nothing in this Section shall be construed as a waiver or limitation of the Plan's right to any other legal or equitable relief to which it may be entitled.

## SECTION 9.6. Prepayment

An Employer may prepay all or part of its withdrawal liability, without penalty.

## SECTION 9.7. Other Terms and Conditions

The Plan may require that an Employer post a bond or provide the Plan other security for payment of its withdrawal liability, if:

(a)    the Employer's payment schedule would extend for longer than 18 months; or

(b)    substantially all of the Employer's assets are sold, distributed or transferred out of the jurisdiction of the courts of the United States.

## SECTION 9.8.

If, in accordance with ERISA Section 4219(c)(5)(B), the Trustees have determined that the occurrence of any one of the following other events indicates a substantial likelihood that an Employer will be unable to pay its withdrawal liability and will constitute a default, the Trustees may

require immediate payment of the outstanding amount of an Employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made:

(a) The Employer's insolvency, or any assignment by the Employer for the benefit of creditors, or the Employer's calling of a meeting of creditors for the purpose of offering an extension to such creditors, or the Employer's appointment of a committee of creditors or liquidating agent, or the Employer's offer of an extension to creditors; or

(b) the Employer's dissolution or liquidation; or

(c) the filing or commencement by the Employer, or the filing or commencement against the Employer or any of its property, of any proceeding, suit or action, at law or in equity, under or relating to any bankruptcy, reorganization, arrangement-of-debt, adjustment-of-debt, insolvency, receivership, liquidation or dissolution; or

(d) such other event as the Trustees may determine indicates a substantial likelihood that the Employer will be unable to pay its withdrawal liability, provided written notice of such determination is given to the Employer with a reasonable opportunity to demonstrate to the satisfaction of the Trustees that such determination was in error.

### SECTION 9.9.

(a) Any arbitration concerning a withdrawal liability assessment shall be initiated and conducted in accordance with rules of the American Arbitration Association ("AAA"). The venue for initiation and hearing of arbitrations shall be at the New York Regional office of the AAA.

(b) Nothing contained in subsection (a) above shall be construed to permit the initiation of arbitration when by law the time for initiating such arbitration has elapsed.

### ARTICLE 10
### Approval of Trust and Plan

### SECTION 10.1.

This Plan shall be submitted for such approval of the District Director of the Internal Revenue Service as may be necessary to continue the Trust as a Trust and Plan qualifying for exemption from taxation under Code Sections 401 and 501 or any other applicable section of the Code entitling all contributing Employers to deduction for contributions under Code Section 404 or any other applicable section of the Federal law (as such sections are now in effect or are hereafter amended or adopted).

### SECTION 10.2.

The Plan and the Trust shall be submitted to such other Federal Agencies as is or may be required by an applicable provision of any present or future law or regulation.

**SECTION 10.3.**

In the event any revision is necessary to obtain or maintain such approval, the Board (which shall have such authority even though the approval referred to above shall not have been obtained), is authorized to make such changes, retroactively if necessary, as will enable the Plan to receive or retain approval adhering as closely as possible to the intent of the Employer and the Union, as expressed in this Plan. Further, the Board shall have authority to review all the provisions of the Plan, and to make such changes, modifications, and amendments as the Board shall deem necessary and as may be required by any applicable law, or regulations issued pursuant thereto.

**SECTION 10.4.**

The Trustees may terminate this Plan or merge it into or consolidate it with any other Plan at any time. No such termination or partial termination, merger or consolidation shall permit any part of the Trust Fund to be used for, or diverted to, purposes other than the exclusive benefit of Participants and Pensioners nor shall any such consolidation or merger, permit the transfer of the assets of this Plan to any other Plan, unless each Participant in this Plan would (if such other Plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit to which he would have been entitled immediately before the merger, consolidation, or transfer (if this Plan had then terminated). Upon termination of the Plan, or upon termination of employment of a group of Participants constituting a partial termination of the Plan, or upon merger of the Plan, each Participant's Accrued Benefit, based on his Credited Service for accrual of benefits prior to the date of termination, shall become fully vested and nonforfeitable to the extent funded. The assets of the Fund or the portion thereof segregated in the case of a partial termination, shall be allocated (after provision is made for the expenses of liquidation) in accordance with ERISA Section 4044(a).

## ARTICLE 11
## Limitations on Benefits and Distributions

### SECTION 11.1.  Top-Heavy Plan

If the Plan is or becomes Top-Heavy Plan, as defined in Section 11.2(h), in any Plan Year beginning after December 31, 1983, the provisions of this Article will supersede any conflicting provisions in this Plan.

### SECTION 11.2 For purposes of this Article:

(a)    "Key-Employee" shall mean:

    (1)    Any Participant or former Participant (and the Beneficiaries of such Participant) who, at any time during the Plan Year or any of the four preceding Plan Years was:

        (A)    an officer of an Employer whose annual compensation exceeds 50 percent of the dollar limitation under Code Section 415(b)(1)(A);

41

    (B)    one of the ten Employees owning (or considered as owning within the meaning of Code Section 318) the largest interests in an Employer, if such individual's annual compensation exceeds 100 percent of the dollar limitation under Code Section 415(c)(1)(A);

    (C)    a five-percent owner of an Employer; or

    (D)    a one-percent owner of an Employer having an annual compensation from such Employer of more than $150,000.

For purposes of (A), no more than 50 Employees (or, if lesser, the greater of 10 percent or 3 of the Employees) shall be treated as officers.

(2)    For purpose of this Article, the term "five-percent owner" means:

    (A)    if the Employer is a corporation, any person who owns (or is considered as owning within the meaning of Code Section 318) more than five percent of the outstanding stock of the corporation, or stock possessing more than five percent of the total combined voting power of all stock of the corporation, or

    (B)    if the Employer is not a corporation, any person who owns more than five percent of the capital or profits interest in the Employer.

(3)    For purposes of this Section, the term "one percent owner" means any person who would be described in Subsection (2) if "one percent" were substituted for "five percent" each place it appears in Subsection (2).

(4)    Notwithstanding the foregoing, the determination of who is a Key Employee will be made in accordance with Code Section 416(i)(1) and the regulations thereunder.

(b)    "Non-Key Employee" shall mean any Employee who is not a Key Employee.

(c)    "Determination Date" shall mean the last day of the preceding Plan Year, or with respect to a new Participant, the last day of the first Plan Year in which he was a Participant.

(d)    "Aggregation Group" shall mean:

(1)    Required Aggregation:

    (A)    each plan of an Employer in which a Key Employee is a participant, and

    (B)    any other plan of such Employer which enables any plan described in (A) to meet the requirements of Code Sections 401(a)(4) or 410.

(2)    Permissive Aggregation: An Employer may treat any plan not required to be included in an Aggregation Group as being a part of such group if such group would

42

continue to meet the requirements of Code Sections 401(a)(4) and 410 with such plan being taken into account.

(e)   "Top-Heavy Ratio" shall mean:

(1)   If an Employer maintains one or more defined benefit plans and the Employer has not maintained any defined contribution plans (including any Simplified Employee Pension Plan) which during the five year period ending on the Determination Date(s) has or has had account balances, the Top-Heavy Ratio for this Plan alone or for the Required or Permissive Aggregation Group, as appropriate, is a fraction, the numerator of which is the sum of the present values of accrued benefits of all Key Employees as of Determination Date(s) (including any part of any accrued benefit distributed in the five-year period ending on the Determinate Date(s)), and the denominator of which is the some of all accrued benefits (including any part of any accrued benefit distributed in the five year period ending on the Determination Date(s), determined in accordance with Code Section 416 and the regulations thereunder.

(2)   If an Employer maintains one or more defined benefit plans and the Employer maintains or has maintained one or more defined contribution plans (including any Simplified Employee Pension Plan) which during the five year period ending on the Determination Date(s) has or has had any account balances, the Top-Heavy Ratio for any Required or Permissive Aggregation Group, as appropriate, is a fraction, the numerator of which is the sum of the present value of accrued benefits under the aggregate defined benefit plan or plans for all Key Employees, determined in accordance with (1) above, and the sum of account balances under the aggregated defined contribution plan or plans for all Key Employees as of the Determination Date(s), and the denominator of which is the sum of the present values of accrued benefits under the aggregated defined benefit plan or plans, determined in accordance with (1) above, for all Participants and the sum of the account balances under the aggregated defined contribution plan or plans for all Participants as of the Determination Date(s), all determined in accordance with Code Section 416 and the regulations thereunder. The account balances under a defined contribution plan in both numerator and denominator of the Top-Heavy Ratio are adjusted for any distribution of an account balance made in the five year period ending on the Determination Date(s).

(3)   For purposes of (1) and (2) above, the value of account balances and the present value of accrued benefits will be determined as of the most recent Valuation Date that falls within or ends with the 12 month period ending on the Determination Date, except as provided in Code Section 416 and the regulations thereunder, for the first and second plan years of a defined benefit plan. The account balances and accrued benefits of a Participant (1) who is not a Key Employee but who was a Key Employee in a prior year, or (2) who has not received any compensation from any Employer maintaining the Plan at any time during the five year period ending on the Determination Date will be disregarded. The calculation of the Top-Heavy Ratio,

43

and the extend to which distributions, rollovers, and transfers are taken into account, will be made in accordance with Code Section 416 and the regulations thereunder. Deductible employee contributions will not be taken into account for purposes of computing the Top-Heavy Ratio. When aggregating plans, the value of account balances and accrued benefits will be calculated with reference to the Determination Date(s) that fall within the same calendar year.

(f)     "Valuation Date" shall mean, for purposes of computing the Top-Heavy Ratio, September 1 of each Plan Year.

(g)     "Top-Heavy group" shall mean:

(1)     any Aggregation Group if, as of the Determination Date, the sum of:

   (A)   the present value of the cumulative accrued benefits for Key Employees under all defined benefit plans included in such group, and

   (B)   the aggregate of the accounts of Key Employees under all defined contribution plans included in such group,

exceeds 60 percent of a similar sum determined for all Employees.

(2)   (A)   For purposes of determining the present value of the cumulative accrued benefit for any Employee or the amount of the account of any Employee as of the determination date, such present value or the amount shall be increased by the distributions made with respect to the employee under the Plan and any Plan aggregated with the Plan under Section 416(g)(2) of the Code during the 1-year period ending on the determination date. The preceding sentence shall also apply to distributions under a terminated Plan which, had it not been terminated, would have been aggregated with the Plan under Section 416(g)(2)(A)(i) of the Code. In the case of a distribution made for a reason other than separation from service, death, or disability, this provision shall be applied by substituting "5-year period" for "1-year period."

   (B)   Employees not performing services during year ending on the determination date. The accrued benefits and accounts of any individual who has not performed services for the employer during the 1-year period ending on the determination date shall not be taken into account.

(3)     For purposes of this Section:

   (A)   Except to the extent provided in regulations, any rollover contribution (or similar transfer) initiated by the Employee and made after December 31, 1983, to a plan shall not be taken into account with respect to the transferee plan for purposes of determining whether such plan is a Top-Heavy Plan or

whether any Aggregation Group which includes such plan is a Top-Heavy Group.

    (B)   If any individual is a Non-Key Employee with respect to such plan for any prior Plan Year, any accrued benefit for such Employee (and the account of such Employee) shall not be taken into account.

(h)   "Top-Heavy Plan": For any Plan Year beginning after December 31, 1983, this Plan is a Top-Heavy Plan if any of the following conditions exists:

    (1)   If the Top-Heavy Ratio for this Plan exceeds 60 percent and this Plan is not part of any Required Aggregation Group or Permissive Aggregation Group;

    (2)   If this Plan is part of a Required Aggregation Group (but which is not part of a Permissive Aggregation Group) and the Top-Heavy Ratio for the group exceeds 60 percent; or

    (3)   If this Plan is a part of a Required Aggregation Group and part of a Permissive Aggregation Group and the Top-Heavy Ratio for the Permissive Aggregation Group exceeds 60 percent.

(i)   Compensation under this Article shall be determined under Plan Section 5.4(d)(2).

### 11.3   Other Provisions of this Plan

Notwithstanding any other provision of this Plan, for any Plan Year in which this Plan is determined to be a Top-Heavy Plan:

(a)   Each Participant who is a Non-Key Employee and who has completed 1,000 Hours of Service shall accrued a benefit expressed as a life annuity commencing at Normal Retirement Age of not less than 2% of his highest average compensation for the period of consecutive years not exceeding five for which the Participant had the highest compensation.

(b)   No additional benefit accruals shall be provided pursuant to (a) to the extend that the total accruals on behalf of the Participant attributable to Employer contributions will provide a benefit expressed as a life annuity commencing at Normal Retirement Age that equals or exceeds 20% of the Participant's highest average compensation for the period of consecutive years not exceeding five for which the Participant had the highest compensation.

(c)   For purposes of determining the period of consecutive years not exceeding five for which the Participant had the highest compensation, a year shall not be taken into account if such year ends in a Plan Year beginning before January 1, 1984 or such year begins after the close of the last year in which the Plan was a Top-Heavy Plan.

(d)   The provisions of (a) above shall not apply to any Participant to the extent that the Participant is covered by any other plan or plans of an Employer under which the minimum

allocation or benefit requirements applicable to this Top-Heavy Plan will be met in the other plan or plans.

## SECTION 11.4. Top-Heavy Plan -- Minimum Vesting Schedule

(a) For any Plan Year in which this Plan is a Top-Heavy Plan, the minimum vesting schedule set forth in (b) below shall apply to all benefits within the meaning of Code 411(a)(7) except those attributable to Employee contributions. No reduction in vested benefits may occur in the event the Plan ceases to be a Top-Heavy Plan in a subsequent Plan Year. Notwithstanding the foregoing, this Section does not apply to the accrued benefits of any Participant who does not have an Hour of Service after the Plan initially becomes a Top-Heavy Plan; such Participant's accrued benefits will be determined without regard to this Section.

(b) For any Plan Year in which this Plan is a Top-Heavy Plan, the nonforfeitable interest of each Participant in Employer-derived accrued benefits shall be determined on the basis of the following:

| Years of Service | Percentage Vesting |
|------------------|--------------------|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 | 100% |

(c) Non-vested Participants must be permitted to elect, within a reasonable time after the application of the schedule in (b) above, to have nonforfeitable percentages calculated under the Plan without regard to the schedule in (b) above.

(d) If this Plan becomes a Top-Heavy Plan and then ceases to be a Top-Heavy Plan, each non-vested Participant must be permitted to elect, within a reasonable time after the schedule in (b) above reverts to the vesting schedule otherwise applicable, to have his nonforfeitable percentage computed under (b) above.

## SECTION 11.5

For Plan Years beginning on or after January 1, 2002, "Key Employee" means any employee or former employee (including any deceased employee) who at any time during the Plan year that includes the determination date was an officer of the employer having annual compensation greater than $130,000 (as adjusted under Section 416(i)(1) of the Code for Plan Years beginning on or after January 1, 2002), a 5-percent owner of the employer, or a 1-percent owner of the employer having annual compensation of more than $150,000. For this purpose, annual compensation means compensation within the meaning of Plan Section 5.4(d)(2). The determination of who is a key employee will be made in accordance with Section 416(i)(1) of the Code and the applicable regulations and other guidance of general applicability issued thereunder.

## ARTICLE 12
## Miscellaneous

### SECTION 12.1. Administration

The responsibility for administration, interpretation and application of this Plan rests with the Board of Trustees, who shall act in accordance with the provisions of this Plan and the Trust Agreement. Any interpretation by the Trustees of the Pension Plan and Trust Agreement shall be accorded the maximum deference permitted by law.

Wherever in the Plan the Trustees are given discretionary powers, they shall exercise such powers in a uniform and non-discriminatory manner. All questions or controversies, or whatsoever character, arising in any manner or between any parties or persons, in connection with the Pension Plan or the administration thereof, whether as to any claim for any benefits by an Employee, Beneficiary or any other person, or whether as to the construction or the language or meaning of the Pension Plan or Trust Agreement, or as to any writing, decision, instrument or accounts in connection with the operation of the Pension Plan or otherwise, shall be submitted to the Trustees and the decision of the Trustees shall be binding upon all persons dealing with the Pension Plan or claiming benefits under the Pension Plan.

The Board of Trustees shall be the sole judge of the standard proof required in any case, the entitlement to or amount of benefits and the crediting of Credited Service. The Board of Trustees shall have the power to interpret, apply, construe, and amend the provisions of the Plan and make factual determinations regarding its construction, interpretation and application, and any construction, interpretation and application adopted by the Trustees in good faith shall be binding upon the Union, the Employer, as well as upon Employees, Participants, Beneficiaries, and all other persons who may be involved or affected.

### SECTION 12.2. Non-Alienation of Benefits

No benefit payable at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment or encumbrance of any kind. Any attempt to alienate, sell, transfer, assign, pledge or otherwise encumber any such benefit, whether presently or hereinafter payable, shall be void. No benefit nor the Fund shall in any manner be liable for or subject to the debts or liabilities of any Participant or Pensioner entitled to any benefits. If the Participant or Pensioner shall attempt to or shall alienate, sell, transfer, assign, pledge or otherwise encumber his benefits under the Plan or any part thereof, or if by reason of his bankruptcy or other event happening at any time, such benefits would devolve upon anyone else or would not be enjoyed by him, then the Board in its sole discretion may terminate his interest in any such benefit and hold or apply it to or for the benefit of such person, his spouse, children or other dependents, or any of them in such manner as the Board in its discretion may deem proper.

The preceding paragraph shall not apply to the creation, assignment or recognition of a right to any benefit payable by a Participant to a Participant's spouse, pursuant to a QDRO. In this event, benefits shall be paid from the Plan in accordance with the applicable requirements of any such QDRO. The Trustees shall set forth in writing, reasonable procedures for determining the qualified

47

status of a domestic relations order and for administering distributions under such qualified order. Any determination made by the Trustees shall be final and binding upon the Participant.

Notwithstanding the foregoing, a Participant may, in the manner permitted by law, make an arrangement for the payment of all, or any portion, of a Plan benefit payment to the Welfare Fund.

## SECTION 12.3.  Reliance Upon Participant Representations

The Trustees, all fiduciaries with respect to the Plan, and all other persons or entities associated with the operation of the Plan, the management of its assets, and the provision of benefits thereunder, may reasonably rely on the truth, accuracy, and completeness of all data provided by the Participant and his or her Beneficiaries, including, but not limited to, data with respect to age, health and marital status.  Furthermore, the Trustees, and all fiduciaries with respect to the Plan may reasonably rely on all consents, elections, and designations filed with the Plan or those associated with the operation of the Plan and the Trust Fund by any Participant, the spouse of any Participant, any Beneficiary of any Participant, or the representatives of such persons, without duty to inquire into the genuineness of any such consent, election, or designation.  None of the aforementioned persons or entities associated with the operation of the Plan, its assets and the benefits provided under the Plan shall have any such duty to inquire into any such data, and all may rely upon such data being current to the date of reference, it being the duty of the Participants, spouses of Participants, and Beneficiaries to advise the appropriate parties of any change in such data.

## SECTION 12.4.  "Right to Appeal"

(a)    Claims Review Procedure. Each claim for benefits hereunder pursuant to application filed with the Trustees shall be reviewed and approved (or disapproved) by the Trustees within ninety (90) days of receipt of the application, unless special circumstances require an extension of time for processing the claim; such extension not to exceed ninety (90) days. If additional time is required, the claimant will be notified in writing of the reason for the delay, and the date that the Fund expects to issue a final decision. A decision will be made with respect to each claim no more than 180 days from the date the claim is first filed with the Fund office.

If a claim for benefits hereunder is denied by the Trustees, the claimant shall be provided with adequate notice in writing of such denial, setting forth the specific reason or reasons for denying payment of the benefits, written in as clear a manner as possible.  The written notice shall make specific reference to the pertinent Plan provision upon which the denial is based, shall describe any additional material or information necessary to complete the claim, shall explain why such material or information is necessary, and shall furnish an explanation of the Plan's claim review procedure.  The written notice shall also include a statement that the claimant has a right to a full and fair review by the Trustees of the claim denial, and has the right to bring an action under ERISA if his or her claim is denied on appeal.

If a review is requested by the claimant, such request must be filed within sixty (60) days after receipt by the claimant of the notice of claim denial.  The claimant should include in the written appeal all the facts regarding the claim as well as the reason(s) the claimant feels

48

the denial was incorrect. The claimant will receive, upon request, reasonable access to and free copies of documents relevant to the claim. The claimant may submit issues and comments in writing, and documents, relating to the claim.

A claimant may name a representative to act on his or her behalf. To do so, the claimant must notify the Fund in writing of the representative's name, address, and telephone number. A claimant may, at his or her own expense, have legal representation at any stage of these review procedures. Regardless of the outcome of the appeal, neither the Board of Trustees nor the Fund will be responsible for paying any legal expenses that a claimant incurs during the course of his or her appeal.

When the Board of Trustees reviews a claim, it will take into account all information the claimant submits in making its decision. The Board of Trustees will make its decision at the next regular meeting following receipt of the appeal, unless there are special circumstances in which case the Board of Trustees will decide the case at its next regular meeting. If a claimant submits an appeal less than 30 days before the next scheduled Board of Trustees meeting, the Board of Trustees will decide the case at the second scheduled meeting, or, if there are special circumstances, the third meeting after it receives the appeal. If the Board of Trustees requires a postponement of the decision to the next meeting, the claimant will receive a notice describing the reason for the delay and an expected date of the decision.

The Board of Trustees will send the claimant a notice of its decision within 5 days of the decision. If the Board of Trustees denies the appeal, the notice will contain the reasons for the decision, specific references to the plan provisions on which the decision was based, notice that the claimant may receive, upon request and free of charge, reasonable access to and copies of all documents and records relevant to the claim, and a statement of the claimant's right to bring a lawsuit under ERISA.

The Board of Trustees, in making its decisions on applications and appeals, will apply the terms of the Plan document and any applicable guidelines, rules and schedules, and will periodically verify that benefit determinations are made in accordance with such documents, and where appropriate, are applied consistently with respect to similarly situated claimants. The Board of Trustees will also take into account all information that the claimant submits.

A decision by the Board of Trustees is final and binding.

## SECTION 12.5. Governing Law

Subject to the provisions of ERISA, this Plan shall be administered, construed and enforced according to the laws of the State of New York and the United States and enforced in the Courts situated in the State of New York.

49

**SECTION 12.6. Construction**

Whenever used herein, unless the context shall clearly indicate otherwise, the male gender shall also be construed to mean the female gender and vice versa and the singular shall include the plural and vice versa.

IN WITNESS WHEREOF the undersigned have set their hands as of the date(s) indicated below.

Date: _5-10-07_

**UNION TRUSTEE**

Date: _5-22-07_

**UNION TRUSTEE**

Date: _5-10-07_

**MANAGEMENT TRUSTEE**

Date: _5-10-07_

**MANAGEMENT TRUSTEE**

Date: _10-22-07_

**MANAGEMENT TRUSTEE**

Date: _1-28-08_

**MANAGEMENT TRUSTEE**

45736

50

## APPENDIX A

Available only to UCP Plan Participants who had transferred the value of their UCP Plan accrued benefits to the Division 1181 A.T.U.-New York Employees' Pension Fund and Plan and Applicable only to the value of the UCP Plan Participant's transferred accrued benefit

## PAYMENT OPTIONS

### SECTION 1.  Normal Form of Annuity

The Normal Form of Annuity shall be the 10 Years Certain and Continuous Form which provides a monthly benefit payable during the lifetime of the Pensioner, but if the Pensioner dies prior to receiving 120 monthly payments, or their equivalent, the same monthly benefit will be paid after his death to his beneficiary, until the number of payments paid to the Pensioner and his Beneficiary shall equal 120.  However, if the Participant is married, his Normal Form of Annuity shall be the 66⅔% Joint and Survivor Annuity, optional Form of Annuity set forth at Section 2© below, unless it is, with the consent of the Spouse as is provided at Section 6.2 of this Plan, rejected by the Participant in favor of the Normal Form described in the preceding sentence or one of the optional Forms of Annuity described in Section 2 below.

### SECTION 2.  Optional Forms of Annuity

Any Participant eligible to receive a retirement benefit may elect, on a form provided by the Trustees, to receive a retirement benefit under one of the options named below.  The amount of the benefit shall be the actuarial equivalent of the retirement benefit otherwise payable.  For these purposes only, actuarial equivalent shall be determined using the basis used by the UCP Plan as of the effective date of transfer that is set forth in full in the letter from Mutual of America dated January 4, 1991, that is attached and made a part of this Appendix A.

(a) 3 Years Certain and Continuous Annuity:  An adjusted monthly benefit payable during the lifetime of the Pensioner but, if the Pensioner dies prior to receiving 36 monthly payments or their equivalent, the same adjusted monthly benefit will be paid after death to Pensioner's Beneficiary until the number of payments paid to the Pensioner and Beneficiary shall equal 36.

(b) 15 Year Certain and Continuous Annuity:  An adjusted monthly benefit payable during the lifetime of the Pensioner but, if the Pensioner dies prior to receiving 180 monthly payments or their equivalent, the same adjusted monthly benefit will be paid after death to Pensioner's Beneficiary until the number of payments paid to Pensioner and Beneficiary shall equal 180.

(c) 66⅔% Joint and Survivor Annuity with 10 Years Certain and Continuous:  An adjusted monthly benefit payable during the lifetime of the Pensioner and 66 2/3% of such adjusted monthly benefit payable after death to one joint annuitant named by Participant at the time the Option is elected if such annuitant survives Pensioner t to continue until the death of the joint annuitant.  If after the Benefit Commencement Date both the Pensioner and the joint annuitant should die before 120 payments have been paid, the amount of annuity being paid

51

just prior to the death of the payee shall be continued to the beneficiary of such payee until a total of 120 monthly payments shall have been paid in the aggregate to the Pensioner, the joint annuitant and the Beneficiary. If the designated joint annuitant should die prior to the Benefit Commencement Date of the Participant, the election of this Option is automatically canceled. Except where the joint annuitant is an eligible Spouse, Participant may elect this Option (c) only if the present value of benefits payable to the Participant at the Benefit Commencement Date exceeds 50% of the value of benefit payable to the Participant, the joint annuitant, and all Beneficiaries.

(d)    66⅔% Joint and Survivor Life Annuity: An adjusted monthly benefit payable during the lifetime of the Pensioner and 66⅔% of such adjusted monthly benefit payable after death to one joint annuitant named by Participant at the time this Option is elected, if such joint annuitant survives, shall continue until the death of the joint annuitant. If the designated joint annuitant should die prior to the Benefit Commencement Date of the Participant, the election of this option (d) shall be automatically canceled.

(e)    Non-Refund Life Annuity: An adjusted monthly benefit payable during the lifetime of the Pensioner with no further retirement benefit payments payable after death.

(f)    Full Cash Refund Annuity: An adjusted monthly benefit payable during the lifetime of the Pensioner continuing to the first day of the month in which Participant dies. Upon Participant's death, the beneficiary designated to receive payments shall be entitled to receive, in cash, the excess, if any, of 100% of the value of the Participant's benefit as of the Participant's Benefit Commencement Date over the aggregate amount of payments made to the Pensioner.

**SECTION 3. Single Sum Payment**

If the Participant, his designated joint annuitant and any named beneficiary die prior to receiving the guaranteed number of payments under any one of the options specified in Sections 1 or 2, above, the Trustees may, at the option of the Beneficiary, make a single sum payment, the value of which is to be determined by them, in lieu of the balance of the payments otherwise due.

**SECTION 4. Vesting**

Any Plan Participant who was enrolled in the UCP Plan as of July 1, 1989, shall be 0% vested if termination of employment occurs before completion of 5 years of employment covered by the UCP Plan and 100% vested after completion of 5 years of employment covered by the UCP Plan. However, any such Participant shall be fully vested in his Accrued Benefit after attaining age 55 and each Participant shall be fully vested at all times in his own contributions.

Notwithstanding the foregoing, in no event shall the vesting schedule with respect to accrued benefits transferred from the UCP Plan be less than the greater of (a) the amount of such Participant's vested percentage under the vesting schedule set forth under the UCP Plan prior to July 1, 1989 or (b) the amount of such Participant's vested percentage under the Vesting Schedule in effect under the UCP Plan as of August 1, 1991.

## SECTION 5.  Early Retirement

Any former UCP Participant who has attained age 55 may elect to receive his monthly retirement income with respect to his benefit transferred from the UCP Plan as of the first of the month following his 55th birthday.  The monthly retirement benefit paid to such Participant shall be the UCP Plan benefit transferred to this Plan, reduced by 1/15 for each of the first five years and by 1/30 for each of the next five years by which the commencement of benefits precedes his 65th birthday, with a pro-rata reduction for any portion of a year.

# APPENDIX B

## ACTUARIAL FACTORS FOR JOINT AND SURVIVOR ANNUITY

45736

**RESTATED DIVISION 1181 A.T.U. - NEW YORK EMPLOYEES PENSION PLAN**

THIS Pension Plan is restated effective the 1st day of January, 2007. This Restated Division 1181 A.T.U.-New York Employees Pension Plan applies to Participants with an Hour of Service on or after January, 2007, unless otherwise specified herein.

## ARTICLE 1
### Definitions

**SECTION 1.1.  Accrued Benefit** shall mean the monthly pension payable at Normal Retirement Date under Article V of the Plan provisions in effect on his termination of Covered Employment, based on the Participant's Credited Service to his date of termination of Covered Employment. The portion of a Participant's Accrued Benefit derived from Employer contributions as of any date shall be equal to his total Accrued Benefit less that portion of his Accrued Benefit derived from required contributions made by the Participant. The portion of the Accrued Benefit derived from Participant's contributions commencing at Normal Retirement Age is determined by multiplying the Participant's total required contributions to the Plan, accumulated with interest at the applicable rate compounded annually to the date upon which the Participant would attain his Normal Retirement Age by a conversion factor. Effective for Plan Years ending prior to September 1, 1988, the portion of the Accrued Benefit derived from Participant's contributions shall accumulate interest of 5% annually. Effective for Plan Years on or after September 1, 1988 through August 31, 2000, the portion of the Accrued Benefit derived from Participant's contributions shall accumulate interest at one hundred and twenty percent (120%) of the Federal mid-term rate as in effect under Code Section 1274 for the first month of such Plan Year. Effective as of September 1, 2000, the Code Section 417(e) interest rate used for projecting the Accrued Benefit derived from employee contributions shall be the Applicable Interest Rate used for calculating lump sum distributions as of the date of determination under Section 1.3.

**SECTION 1.2 Actuarial Equivalent** means that a particular benefit is equal in value to another benefit when computations are made on the basis of the following Actuarial Assumptions:

Interest:      6% per year compounded annually

Mortality:      1971 Group Annuity Mortality Table

**SECTION 1.3.  Applicable Interest Rate** shall mean the interest rate or rates that would be used *by PBGC for purposes of determining the present value of Participant's benefits under the Plan*, if the Plan had terminated on the date distribution commences with insufficient assets to provide benefits guaranteed by PBGC on that date, or such other rate or rates as shall be prescribed by the applicable rules and regulations. Effective September 1, 2000, for lump sum distributions payable after that date, the amount of a lump sum payment under the Plan shall be determined using the Applicable Mortality Table, the Applicable Interest Rate, and the Applicable Stability Period, where:

(a)      the Applicable Mortality Table is the mortality table prescribed by the Secretary of the Treasury under Code Section 417(e)(3)(a)(ii)(I) in effect on the first day of the Applicable Stability period;