# EXHIBIT 3



**Department of Education**

EXTENSION AND SIXTEENTH AMENDMENT AGREEMENT

OF SPECIAL EDUCATION PUPIL TRANSPORTATION REQUIREMENTS CONTRACTS

BY AND BETWEEN

THE

BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK

AND

THE SCHOOL BUS CONTRACTOR NAMED HEREIN

OLS CONTRACT LOG NO. 20762

FINAL VERSION. 07/01/2010 09:07 am

TABLE OF CONTENTS

PREAMBLE AND RECITALS.................................................................................1

(A)    TERM OF EXTENSION AND SIXTEENTH AMENDMENT AGREEMENT........................4

(B)    COMPOSITION OF EXTENSION AND SIXTEENTH AMENDMENT AGREEMENT. ....4

(C)    ORDER OF GOVERNANCE...................................................................4

(D)    PAYMENT PROVISIONS......................................................................4

(E)    ESCORTS.........................................................................................14

(F)    ESCORT COST REIMBURSEMENT.....................................................14

(G)    AMENDMENTS TO INSURANCE PROVISIONS ...................................18

(H)    EMPLOYEE PROTECTION PROVISIONS.............................................20

(I)    VINTAGE AND AIR CONDITIONING REQUIREMENTS .........................24

(J)    MISCELLANEOUS VEHICLE SPECIFICATIONS AND OPERATIONAL
AMENDMENTS....................................................................................27

(K)    GENERAL MISCELLANEOUS AMENDMENTS .....................................32

(L)    CONFIDENTIALITY OF RECORDS......................................................44

(M)    AFFIRMATION OF RESPONSIBILITY AND PAID TAXES......................44

(N)    DUTY TO REPORT............................................................................44

(O)    INVESTIGATIONS.............................................................................45

(P)    CONFLICTS OF INTEREST.................................................................47

PARTIES EXECUTION AND CONTRACTOR'S ACKNOWLEDGMENT. .....................49

FINAL VERSION. 07/01/2010 09:07 am

## TABLE OF CONTENTS

ATTACHMENTS

Attachment A:     BOE Request for Authorization ("RA"), BOE Request for Authorization—Public Notice of Award ("RA/PNA") and Panel for Educational Policy Resolution

Attachment B:     Contractor's Schedule of Contract Serial Numbers, Item Designations, and Daily Rates per Vehicle

Attachment C:     Schedule of the Contractor's Escort Costs

FINAL VERSION. 07/01/2010 09:07 am

BOARD OF EDUCATION OF THE CITY OF NEW YORK

## EXTENSION AND SIXTEENTH AMENDMENT OF CONTRACT FOR SPECIAL EDUCATION PUPIL TRANSPORTATION SERVICES

**EXTENSION AND SIXTEENTH AMENDMENT AGREEMENT** made and entered into on the date expressed at the end hereof by and between the **BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK** (hereinafter expressed as "Board of Education," "Board" or "BOE"),[1] with principal headquarters located at 52 Chambers Street, New York, NY 10007, and the Contractor whose name, address and authorized signature appear at the end hereof (herein expressed as "Contractor") (herein, each is expressed as a "Party" and both are expressed as "Parties").

## W I T N E S S E T H

**WHEREAS,** in 1979 the BOE publicly solicited competitive bids for transportation of special education pupils under Contract Serial Nos. 0070 and 8108;[2] and,

**WHEREAS,** at divers times thereafter from 1982 through 1984, the BOE publicly solicited competitive bids for similar services under Contract Serial Nos. G8805, G8891, G8893, G9301 and G9325,[3] which contracts have incorporated, as of their dates, provisions which are counterparts of the provisions of contracts under Serial Nos. 0070 and 8108 as they then read; and,

**WHEREAS,** the Contractor tendered a bid(s) under one or more aforementioned contract serial numbers and was duly awarded a contract(s) including certain Employee Protection Provisions (1st amendment) for the transportation of special education pupils; and,

**WHEREAS,** from September 10, 1979 through December 21, 1979, the Contractor did not provide escort services for special education pupils; but, under an emergency contract entered into with the BOE (2nd amendment), the Contractor has supplied such escort services since that time; and,

**WHEREAS,** the New York State Legislature enacted Chapter 737 of the Laws of 1979, and the Parties have desired to amend the Contract to implement Chapter 737 as amended and be subject to its terms; and,

**WHEREAS,** the original terms of all contracts under Serial Nos. 0070, 8108, G8805, G8891 and G8893 would have expired on June 30, 1982 unless extended, and all contracts under Serial Nos. G9301 and G9325 would have expired on June 30, 1984 unless extended; and, Education Law §305(14) author-

---

[1] The terms "New York City Department of Education," "Department," "NYCDOE" and "DOE," wherever they appear in this Extension and Amendment Agreement, are "doing-business-as" or "dba" names for the Board of Education of the City School District of the City of New York.

[2] By their original specifications, all contracts under Serial Nos. 0070 and 8108 provide for ten-month pupil transportation service from September through June of each school or extension year.

[3] By their original specifications, all contracts under Serial Nos. G8805, G8891, G8893, G9301 and G9325 provide or provided for ten-month pupil transportation service from September through June of each school or extension year.

-1-

izes extensions and provides a payment increase method linked to a defined regional Consumer Price Index (hereinafter expressed as "CPI"); and, the BOE elected fairly and reasonably on the basis of the best interests of the New York City School District to refrain from the extension of the terms of all contracts under Serial Nos. G8893 and G9301; and,

**WHEREAS,** in 1982 the BOE and various contractors extended and amended (3rd amendment) all contracts under Serial Nos. 0070, 8108, G8805 and G8891 until June 30, 1984; and,

**WHEREAS,** in 1984 the BOE and various contractors extended and amended (4th amendment) all contracts under Serial Nos. 0070, 8108, G8805, G8891 and G9325 until June 30, 1987; and,

**WHEREAS,** in 1987 the BOE and various contractors extended and amended (5th amendment) all contracts under Serial Nos. 0070, 8108, G8805, G8891 and G9325 until June 30, 1990; and,

**WHEREAS,** in 1990 the BOE and various contractors extended and amended (6th amendment) all contracts under Serial Nos. 0070, 8108, G8805, G8891 and G9325 until June 30, 1993; and,

**WHEREAS,** in 1993 the BOE and various contractors extended and amended (7th amendment) all contracts under Serial Nos. 0070, 8108, G8805, G8891 and G9325 until June 30, 1996; and,

**WHEREAS,** in 1994 the BOE publicly solicited competitive bids for transportation of special education pupils under Contract Serial No. 7165,[4] whose original term would have expired on June 30, 1997, unless extended; and,

**WHEREAS,** in 1995, the BOE and various contractors amended and extended, either initially or further, all contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (8th amendment) until June 30, 2000; and,

**WHEREAS,** in 1996 the BOE and various contractors, including the Contractor, determined that changes had occurred in banking, financial services and insurance markets affecting the availability and affordability of performance bonds, letters of credit and other forms of performance security; and, the BOE and various contractors, including the Contractor, entered into a Supplemental Ninth Amendment of Contract for Special Education Pupil Transportation Services thereby modifying and revising the performance security provisions of Contract Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325; and,

**WHEREAS,** in 1998 the Chancellor inaugurated "Project Read," an after-school extended day program to improve pupil literacy; and, BOE and various contractors, including the Contractor, mutually determined that contractual revisions would be needed to allow overtime wage rates to be paid to school bus escorts if the transportation aspect of Project Read were to be feasible; whereupon, the BOE and various contractors, including the Contractor, entered into a Supplemental Tenth Amendment of Contract for Special Education Pupil Transportation Services thereby modifying and revising applicable

---

[4] By their original specifications, all contracts under Serial No. 7165 provide for twelve-month pupil transportation service from July through June of each school or extension year as compared to other serial numbers covered by this Extension and Thirteenth Amendment Agreement that provide for ten-month pupil transportation service from September through June of each school or extension year.

provisions of Contract Serial Nos. 0070, 8108, G8805, G8891 and G9325 (but not Contract Serial No. 7165); and,

**WHEREAS,** in 2000 the BOE and various contractors amended and extended all contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (11th Amendment); and,

**WHEREAS,** effective as of March 31, 2003, the BOE and various contractors further supplemented and amended all contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (12th Amendment) to create BOE-sponsored, centralized purchasing programs for automobile liability insurance[5] and vehicle fuels[6] and to reduce other contract cost factors; and

**WHEREAS,** in 2005 the BOE and various contractors amended and extended all contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (13th Amendment); and,

**WHEREAS,** in 2005 the BOE and various contractors made a written corrective amendment to all contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (14th Amendment); and,

**WHEREAS,** in 2007 the BOE and various contractors made a written supplemental amendment to all contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (15th Amendment) regarding escort costs on "Carry-Kids" routes; and,

**WHEREAS,** the BOE has determined that certain contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 should be still further amended and extended, and the Contractor agrees with respect to those of the subject contracts that the Contractor holds (16th Amendment); and,

**WHEREAS,** in accordance with the BOE contract authorization process, the BOE Office of Pupil Transportation (herein expressed as "OPT") and the BOE Division of Contracts & Purchasing (herein expressed as "DC&P") submitted an official Request for Authorization (herein expressed as "RA") to the BOE Office of the Chancellor; and, Chancellor Joel I Klein approved the said **RA** on May 2, 2010, thus authorizing the BOE to enter into further amendment and extension of contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 (herein expressed collectively as "Contract") until a termination date not later than June 30, 2015 for the Contractor, unless further extended (herein expressed as "Extension and Sixteenth Amendment Agreement;" and,

**WHEREAS,** pursuant to the BOE contract authorization process, the BOE Office of the Chancellor submitted a resolution for adoption by the Board's Panel for Educational Policy (herein expressed as "PEP"), i.e., the governing body of the BOE, at the PEP meeting of March 23, 2010; and, the PEP adopted the resolution approving the Agreement with the Contractor at the said meeting, which resolution is hereby incorporated into this Agreement by this reference; and,

---

[5] The said program of volume insurance purchasing and administration is entitled the BOE Volume Automobile Liability Insurance Coverage & Administration (herein expressed as "VALICA™") Program.

[6] The said program of volume school bus fuel purchasing and administration is entitled the BOE Volume Automotive Fuel Purchasing & Administration (herein expressed as "VAFPA™") Program.

**WHEREAS,** the Parties mutually desire to make this extension agreement and sixteenth amendment to the Contract as heretofore amended and extended;

**NOW, THEREFORE,** in consideration of the heretofore-recited stipulations and the hereinafter-expressed terms, conditions and specifications, the BOE and the Contractor, as the Parties to this Extension and Sixteenth Amendment Agreement, do hereby stipulate and agree both as above and as follows:

### (A)  TERM OF EXTENSION AND SIXTEENTH AMENDMENT AGREEMENT.

All references to the termination of the Contract, by whatever terminology, shall be deemed hereafter to read "June 30, 2015, unless further extended."

### (B)  COMPOSITION OF EXTENSION AND SIXTEENTH AMENDMENT AGREEMENT.

The following are deemed to constitute this Extension and Sixteenth Amendment Agreement for all general and particular intents and purposes and are hereby deemed to be incorporated into, and made part of, this Extension and Sixteenth Amendment Agreement:

1.    This Extension and Sixteenth Amendment Agreement document consisting of pages i-iii and 1-49.

2.    The **RA, Request for Authorization—Public Notice of Award ("RA-PNA")**, and BOE Panel for Educational Policy resolution are **"Attachment A."**

3.    The Contractor's schedule of contract serial numbers, item designations and daily rates per vehicle is **"Attachment B."**

4.    The schedule of the Contractor's escort costs is **"Attachment C."**

### (C)  ORDER OF GOVERNANCE.

The BOE and the Contractor stipulate and agree that, to the extent there shall or may exist any inconsistencies or conflicts between and/or among any provisions of this Extension and Sixteenth Amendment Agreement including this Extension and Sixteenth Amendment Agreement document consisting of pages i-iii and 1-49 and **Attachments A** through **C**, the following descending order of governance is hereby established for every case and for all general and/or particular intents and purposes: first **Attachment A**, second this Extension and Sixteenth Amendment Agreement document consisting of pages i-iii and 1-49, third **Attachment B**, and fourth and finally **Attachment C**.

### (D)  PAYMENT PROVISIONS.

ARTICLE 28(C) of contracts under Serial No. 7165 and ARTICLE V-A of contracts under Serial Nos. 0070, 8108, G8805, G8891 and G9325 entitled, "PAYMENT DURING PERIOD OF EXTENSION," is hereby further amended, both of which to read as follows for the term of this Extension and Sixteenth Amendment Agreement:

"**(1)**     Any provisions of ARTICLE V-A or 28 (as applicable) to the contrary notwithstanding, the daily rate(s) per vehicle during this Extension Period shall be deemed to be adjusted each year according to the following formulae subject to the Office of Pupil Transportation (hereinafter expressed as 'OPT') Director's approval of all or any portion(s) of the Contractor's claims in the below-described annual Cost Justification Financial Statements for the extension years commencing 2010-11:

"**(a)**     During the Extension Year of July 1, 2010 through June 30, 2011, the Contractor's daily rate(s) per vehicle in effect for the Extension Year of July 1, 2009 through June 30, 2010 in accordance with the schedule of rates annexed to the Extension and Sixteenth Amendment Agreement and made a part of this Contract as '**Attachment B**,' shall be increased by an amount not to exceed whichever of the following represents the least amount of actual increase: **(i)** the same percentage by which the Consumer Price Index (herein expressed as 'CPI-U') as of May 2010 shall have increased over the CPI-U as of May 2009; or, **(ii)** the amount in dollars expressed as a percentage by which the Contractor's actual Total Allowable Costs during the Extension Year from July 1, 2009 through June 30, 2010 shall have increased over the Contractor's actual Total Allowable Costs during the Extension Year of July 1, 2008 through June 30, 2009, *plus* any previously 'Unabsorbed Percentage Cost Increases' for Extension Years 2005-06 through 2009-10 to the extent such Unabsorbed Percentage Cost Increases shall not have been applied to prior extension year increases. The term 'Unabsorbed Percentage Cost Increases' means the portion of the Contractor's percentage increase in actual Total Allowable Costs (applicable to the calculation of a rate increase for a particular Extension Year), which exceeded the applicable CPI-U percentage increase for such Extension Year.[7]

"**(b)**     During the Extension Year of July 1, 2011 through June 30, 2012, the Contractor's daily rate(s) per vehicle shall be augmented by an amount not to exceed whichever of the following represents the least amount of actual increase: **(i)** the same percentage by which the CPI-U as of May 2011 shall have increased over the CPI-U as of May 2010; or, **(ii)** the amount in dollars expressed as a percentage by which the Contractor's actual Total Allowable Costs during the Extension Year of July 1, 2010 through June 30, 2011 shall have increased over the Contractor's actual Total Allowable Costs during the Extension Year of July 1, 2009 through June 30, 2010, *plus* any previously Unabsorbed Percentage Cost Increases from Extension Year 2005-06 through 2010-11 to the extent such Unabsorbed Percentage Cost Increases shall not have been applied to prior extension year increases.

"**(c)**     During the Extension Year of July 1, 2012 through June 30, 2013, the Contractor's daily rate(s) per vehicle shall be augmented by an amount not to exceed whichever

---

[7] For example, a contractor was entitled to a maximum increase of its daily rate per vehicle for Extension Year 2003-04 equal to the lesser of **(a)** the percentage increase of the CPI in May 2003 over the CPI in May 2002; and, **(b)** the percentage increase of the contractor's actual Total Allowable Costs for Extension Year 2002-03 over the Contractor's actual Total Allowable Costs for Extension Year 2001-02. If such CPI increase were four percent (4%) and such contractor's actual cost increase were six percent (6%), the contractor would have received a rate increase of four percent (4%), and would have an Unabsorbed Percentage Cost Increase of two percent (2%). The foregoing example is not intended by the Parties to be exhaustive of all possible examples.

of the following represents the least amount of actual increase: **(i)** the same percentage by which the CPI-U as of May 2012 shall have increased over the CPI-U as of May 2011; or, **(ii)** the amount in dollars expressed as a percentage by which the Contractor's actual Total Allowable Costs during the Extension Year of July 1, 2011 through June 30, 2012 shall have increased over the Contractor's actual Total Allowable Costs during the Extension Year of July 1, 2010 through June 30, 2011, **plus** any previously Unabsorbed Percentage Cost Increases from Extension Year 2005-06 through 2011-12 to the extent such Unabsorbed Percentage Cost Increases shall not have been applied to prior extension year increases.

"**(d)**   During the Extension Year of July 1, 2013 through June 30, 2014, the Contractor's daily rate(s) per vehicle shall be augmented by an amount not to exceed whichever of the following represents the least amount of actual increase: **(i)** the same percentage by which the CPI-U as of May 2013 shall have increased over the CPI-U as of May 2012; or, **(ii)** the amount in dollars expressed as a percentage by which the Contractor's actual Total Allowable Costs during the Extension Year of July 1, 2012 through June 30, 2013 shall have increased over the Contractor's actual Total Allowable Costs during the Extension Year of July 1, 2011 through June 30, 2012, **plus** any previously Unabsorbed Percentage Cost Increases from Extension Year 2005-06 through 2012-13 to the extent such Unabsorbed Percentage Cost Increases shall not have been applied to prior extension year increases.

"**(e)**   During the Extension Year of July 1, 2014 through June 30, 2015, the Contractor's daily rate(s) per vehicle shall be augmented by an amount not to exceed whichever of the following represents the least amount of actual increase: **(i)** the same percentage by which the CPI-U as of May 2014 shall have increased over the CPI-U as of May 2013; or, **(ii)** the amount in dollars expressed as a percentage by which the Contractor's actual Total Allowable Costs during the Extension Year of July 1, 2013 through June 30, 2014 shall have increased over the Contractor's actual Total Allowable Costs during the Extension Year of July 1, 2012 through June 30, 2013, **plus** any previously Unabsorbed Percentage Cost Increases from Extension Year 2005-06 through 2013-14 to the extent such Unabsorbed Percentage Cost Increases shall not have been applied to prior extension year increases.

"**(2)**    **Decrease in CPI-U.** Anything in the foregoing payment increase provisions to the contrary notwithstanding, where there is a decrease in the regional consumer price index for the New York, New York–Northeastern, New Jersey area as based upon the index for all urban consumers (herein expressed as 'CPI-U') during the preceding twelve month period, the amount to be paid to the Contractor in the succeeding extension year will reflect that decrease in a manner satisfactory to the New York State Education Department (herein expressed as 'SED').

"**(3)**    **Special Costs for Drivers Covered by Statute.** Anything in the foregoing payment increase provisions to the contrary notwithstanding, the BOE shall pay the Contractor each extension year for actual costs allowable pursuant to Education Law §305(14)(c)(i) under the following conditions, even if such reimbursement shall cause annual payments to exceed the relevant CPI-U increment. To be eligible for such payment, the Contractor shall provide to OPT a separate, fully detailed, written cost reimbursement request for reimbursement of expenses covered

by Education Law §305(14)(c)(i), which shall include for purposes of this Contract 'special vehicle operator administrative costs,' which reimbursement shall equal **(a)** the actual costs of qualifying criminal history and driver licensing testing fees attributable to special requirements of Vehicle and Traffic Law Articles 19 and 19–A, and **(b)** the actual costs of all diagnostic tests and physical performance tests that shall be deemed necessary by an examining physician or the Director to determine whether each applicant to drive a school bus under this Contract possesses the physical and mental ability to operate a school bus and to perform satisfactorily all other responsibilities of a school bus driver as required by this Contract and all applicable Federal, State of New York, City of New York and BOE laws, rules, regulations and policies.[8]   All Contractor cost claims under Education Law §305(14)(c)(i) shall be subject to review and/or audit by the BOE, its employees and/or agents.  Upon BOE approval of Contractor cost claims under Education Law §305(14)(c)(i), the BOE shall pay the Contractor for such actual costs without interest.

"**(4)**    **Definitions.**  The definitions below control the meanings of the described terms wherever they appear in this Contract.  These definitions add to and supplement any definitions or instructions expressed in the original Contract as heretofore amended and, as such, do not supersede, revoke, replace, revise or limit any similar or analogous provisions in the original Contract as heretofore amended.

"**(a)**     For Contracts under Serial Nos. 0070, 8108, G8805, G8891 and G9325, the following shall apply:

"**(i)**     'Twenty-ninth (29th) Extension Year' means July 1, 2010 until June 30, 2011;

"**(ii)**    'Thirtieth (30th) Extension Year' means July 1, 2011 until June 30, 2012;

"**(iii)**   'Thirty-first (31st) Extension Year' means July 1, 2012 until June 30, 2013.

"**(iv)**   'Thirty-second (32nd) Extension Year' means July 1, 2013 until June 30, 2014;

"**(v)**    'Thirty-third (33rd) Extension Year' means July 1, 2014 until June 30, 2015.

"**(b)**    For Contracts under Serial No. 7165, the following shall apply:

"**(i)**     'Fourteenth (14th) Extension Year' means July 1, 2010 until June 30, 2011;

"**(ii)**    'Fifteenth (15th) Extension Year' means July 1, 2011 until June 30, 2012;

"**(iii)**   'Sixteenth (16th) Extension Year' means July 1, 2012 until June 30, 2013.

"**(iv)**   'Seventeenth (17th) Extension Year' means July 1, 2013 until June 30, 2014;

---

[8] Allowable diagnostic tests and physical performance tests shall include pre-employment medical and physical performance tests and examinations and pre-employment alcohol and controlled substance abuse tests.  Allowable diagnostic and physical performance tests shall *not* include tests and examinations performed during the course of a driver's employment with the Contractor such as, but not limited to, random controlled substance and/or alcohol abuse tests, post-accident controlled substance and/or alcohol abuse tests, reasonable suspicion controlled substance and/or alcohol abuse tests, and/or annual medical examinations.

"**(v)**    'Eighteenth (18th) Extension Year' means July 1, 2014 until June 30, 2015.

"**(c)**    The term 'Consumer Price Index' (herein expressed as 'CPI-U'), as of a given date, is defined as that statistic of the United States Department of Labor or its successor agency, which the New York State Education Department (herein expressed as 'SED') deems as the 'regional consumer price index for the New York, New York-Northeastern, New Jersey area, based upon the index for all urban consumers (CPI-U),' according to <u>Education Law</u> <u>§305(14)</u> as the same may be updated, revised or otherwise changed during the term of the Extension and Sixteenth Amendment Agreement.  If <u>Education Law</u> §305(14) shall be amended to permit stated or fixed percentage(s) of annual rate increase(s) for pupil transportation contract extensions, which increase(s) may exceed the applicable CPI-U increment(s), this Contract shall be deemed to be amended automatically and without the need for any action by the Parties by substituting such stated or fixed percentage(s) of increase in place of the actual percentage(s) of increase in the CPI-U in any extension year in which the CPI-U shall be lower than the stated or fixed percentage(s).

"**(d)**    The term 'Contractor's average cost per vehicle per day' for a given extension year is defined as the Contractor's 'Total Allowable Costs' for that extension year divided by the total number of 'vehicle days.'

"**(e)**    The term 'Total Allowable Costs' is defined as the Contractor's actual accrued costs related directly to transportation services provided to the BOE under this Contract.[9]

"**(f)**    The term 'vehicle days' is defined as the total number of 'authorized vehicles' the Contractor actually operates multiplied by the number of school days actually operated per Extension Year for the term of the Extension and Sixteenth Amendment Agreement,[10] *except* for certain additional vehicles which shall be treated in the manner hereinafter stated.

"**(g)**    The term 'authorized vehicles' is defined as the total number of contract and additional vehicles, *but excluding* spare vehicles, that the Contractor shall have been granted expressly by the Director.  If the Director shall grant the Contractor additional vehicles during any given Extension Year of the Extension and Sixteenth Amendment Agreement, such additional vehicles shall be counted among the 'authorized vehicles' during the first Extension Year in which such vehicles shall be awarded but only to the extent of the actual num-

---

[9] The term "Total Allowable Costs" for purposes of annual Cost Justification Financial Statements shall be determined solely upon the actual accrued costs submitted by this Contractor and shall not include the costs of any other contractor.  In the event of a contract assignment sought by the Contractor and approved by the Director that takes effect during the period of this Extension and Sixteenth Amendment Agreement on a date other than the first day of an Extension Year, however, the Contractor must elect for its cost increases to be analyzed and justified on a per vehicle per day cost basis (as expressed in **Paragraph (6)** entitled, "Required Analysis of Costs," *infra*), and **not** on an aggregate basis (as expressed in **Paragraph (7)** entitled, "Alternative Comparison of Costs," *infra*), i.e., in order for the preceding sentence to be operative.  Anything in the preceding sentence to the contrary notwithstanding, after an assignor's costs shall no longer be relevant for purposes of the Contractor's annual Cost Justification Financial Statements, the Contractor may elect for its cost increases to be analyzed and justified on an aggregate basis (as expressed in **Paragraph (7)** entitled, "Alternative Comparison of Costs," *infra*).

[10] In calculating the Contractor's average cost per vehicle day for purposes of determining rate augmentation under the Extension and Sixteenth Amendment Agreement, the actual number of days that vehicles shall operate (instead of a fixed number of days as provided under previous extension and amendment agreements) shall be applied for each Extension Year included in such calculation.

ber of school days that the Contractor actually shall have operated the affected additional vehicles.[11]    During the succeeding Extension Year(s), such additional vehicles shall be counted as 'authorized vehicles' for all actual school days. If the Contractor has a 10-month Contract(s) and the Director shall grant the Contractor summer work beyond the normal 10 months from September to June, the summer vehicles *only* shall be exempt from inclusion in the cost justification process.

"**(h)**    The term 'Cost Justification Financial Statement' is defined as a written 'review report' prepared by a Certified Public Accountant (herein expressed as 'CPA') or Public Accountant (herein expressed as 'PA') licensed by the State of New York, except as otherwise noted herein. Each Cost Justification Financial Statement shall include all of the facts and figures deemed necessary by the Director and/or the SED to provide a complete view of the Contractor's cost increase claims for the applicable comparative periods specified in this Extension and Sixteenth Amendment Agreement. Each review report shall state that a review shall have been performed in accordance with AU623, *et seq.*, as established and periodically updated by the American Institute of Certified Public Accountants (herein expressed as "AICPA"), and the BOE Office of Auditor General's manual of cost increase justification rules and procedures (herein expressed as "OAG Manual") as of the date of a given review report, and that the information in each Cost Justification Financial Statement shall have been based upon the representations of the Contractor's management. Each review report shall describe the nature of a review as distinct from an audit and shall describe the standard procedures that the CPA/PA shall have performed, *e.g.*, an inquiry and an analytical review. Each review report shall give the limited assurance that, based upon the review, the CPA/PA shall not have been aware of any material modifications that should be made to the Cost Justification Financial Statement for it to be in conformity with AU623, *et seq.*, as established and periodically updated by the AICPA, and the OAG Manual. A compilation report is insufficient to qualify as a Cost Justification Financial Statement. In addition, the CPA/PA preparing each review report must state in writing that he/she shall have studied the cost justification manual supplied by the Board and shall have applied the standards contained in the said OAG Manual to the development of each Cost Justification Financial Statement. If the Contractor shall not have had a CPA-audited financial report performed for any purpose within the three (3) years before June 30, 2010, then the Contractor must submit an audited Cost Justification Financial Statement by a CPA for its first or second such statement under this Extension and Sixteenth Amendment Agreement.[12]   The CPA/PA who shall prepare each Cost Justification Financial Statement must have no interest in this Contract, the Contractor and/or any entity affiliated in any manner with the Contractor and must so certify in writing in each review report. Each Cost Justification Financial Statement shall be in a form prescribed by the Director as approved by the SED.

---

[11] This partial exclusion of additional vehicles during the first Extension Year of award shall not apply to any vehicles that the Contractor may obtain by assignment or other transfer of contract or by acquiring the corporate shares of another school bus contractor.

[12] Such a CPA-audited Cost Justification Financial Statement must comply in all respects with AR 9100.63 entitled, "Special Purpose Financial Presentations to Comply with Contractual or Regulatory Provisions," as established and periodically updated by the AICPA.

"(5)    **Cost Justification Financial Statements.** Education Law §305(14) requires the Contractor to substantiate any cost increases that he/she claims to justify annual payment increases during the term of this Extension and Sixteenth Amendment Agreement. The Director shall determine whether to approve all or any portion(s) of the claims in each of the Contractor's annual Cost Justification Financial Statements in accordance with the following:

"**(a)**    To substantiate any payment increases under ARTICLE V–A or 28(C) during the Extension Year of July 1, 2010 to June 30, 2011, the Contractor must submit by September 30, 2010, **(i)** a Cost Justification Financial Statement(s) detailing Total Allowable Costs, as that term is defined in Subparagraph (4)(e), *supra*, incurred by the Contractor for all its operations and, separately, for its operations under this Contract for Extension Years 2009-2010 and 2008-2009, and **(ii)** a distinct Cost Justification Financial Statement(s) detailing Total Allowable Costs incurred by the Contractor for all its operations and, separately, for its operations under the Contract for each Extension Year for which application shall be made for any Unabsorbed Percentage Cost Increases.

"**(b)**    To substantiate any payment increases under ARTICLE V–A or 28(C) during the Extension Year of July 1, 2011 to June 30, 2012, the Contractor must submit by September 30, 2011, **(i)** a Cost Justification Financial Statement(s) detailing the Total Allowable Costs incurred by the Contractor for all its operations and, separately, for its operations under this Contract for Extension Years 2010-2011 and 2009-2010, and **(ii)** a distinct Cost Justification Financial Statement(s) detailing the Total Allowable Costs incurred by the Contractor for all its operations and, separately, for its operations under this Contract for each Extension Year for which application shall be made for any Unabsorbed Percentage Cost Increases.

"**(c)**    To substantiate any payment increases under ARTICLE V–A or 28(C) during the Extension Year of July 1, 2012 to June 30, 2013, the Contractor must submit by September 30, 2012, **(i)** a Cost Justification Financial Statement(s) detailing the Total Allowable Costs incurred by the Contractor for all its operations and, separately, for its operations under this Contract for Extension Years 2011-2012 and 2010-2011, and **(ii)** a distinct Cost Justification Financial Statement(s) detailing the Total Allowable Costs incurred by the Contractor for all its operations and, separately, for its operations under this Contract for each Extension Year for which application shall be made for any Unabsorbed Percentage Cost Increases.

"**(d)**    To substantiate any payment increases under ARTICLE V–A or 28(C) during the Extension Year of July 1, 2013 to June 30, 2014, the Contractor must submit by September 30, 2013, **(i)** a Cost Justification Financial Statement(s) detailing the Total Allowable Costs incurred by the Contractor for all its operations and, separately, for its operations under this Contract for Extension Years 2012-2013 and 2011-2012, and **(ii)** a distinct Cost Justification Financial Statement(s) detailing the Total Allowable Costs incurred by the Contractor for all its operations and, separately, for its operations under this Contract for each Extension Year for which application shall be made for any Unabsorbed Percentage Cost Increases.

"**(e)**    To substantiate any payment increases under ARTICLE V–A or 28(C) during the Extension Year of July 1, 2014 to June 30, 2015, the Contractor must submit by September 30, 2014, **(i)** a Cost Justification Financial Statement(s) detailing the Total Allowable Costs incurred by the Contractor for all its operations and, separately, for its operations under this Contract for Extension Years 2013-2014 and 2012-2013, and **(ii)** a distinct Cost Justification Financial Statement(s) detailing the Total Allowable Costs incurred by the Contractor for all its operations and, separately, for its operations under this Contract for each Extension Year for which application shall be made for any Unabsorbed Percentage Cost Increases.

"**(f)**    In each annual Cost Justification Financial Statement, the Contractor must exclude all costs for escorts.  The Contractor shall supply in each annual Cost Justification Financial Statement all data required by SED related to this Contract, and the submittal shall include, but shall not limited to, SED-approved cost justification forms.  The Contractor must supply promptly all additional cost data as required by the BOE or SED.

"**(g)**    Until six (6) years after completion of its services hereunder or six (6) years after the termination date of this Contract, whichever shall occur later, the Contractor shall maintain complete and correct books and records related to all aspects of the Contractor's obligations hereunder.  Records must be maintained separately, so as to identify clearly the expenses applicable to this Contract, all previous extension and amendment agreements, and this Extension and Sixteenth Amendment Agreement and must be distinguishable from all other costs not incurred under this Contract, all previous extension and amendment agreements, and this Extension and Sixteenth Amendment Agreement.  Except as provided in this subparagraph, all other provisions of this Contract, as amended, that relate to the maintenance of records shall remain in full force and effect.

"**(6)    Required Analysis of Costs.**  To determine the allowable increase in costs for a given extension year, as specified in ARTICLE V–A(1) or 28(C)(1) of this Contract, the following analysis of the Cost Justification Financial Statement must be undertaken:

"**Step 1:**    Divide the total applicable annual operating costs by the number of vehicle days for both the base year and the year previous to the base year to determine the average daily cost per vehicle for each of those years.  The base year is the year immediately before the extension year to which a rate increase is to be applied.

"**Step 2:**    Subtract the average daily cost per vehicle for the year previous to the base year from the average daily cost per vehicle for the base year to determine the increase in the average daily cost per vehicle.

"**Step 3:**    Divide the increase in the average daily cost per vehicle by the average daily cost per vehicle for the year previous to the base year to determine the percent increase in the average daily cost per vehicle.

"**Step 4:**    Compare the percent of increase in the average daily cost per vehicle to the percentage by which the CPI as of May of the base year shall have increased over the CPI as of May of the year previous to the base year.  Whichever is the lesser

of the two (2) percentages will be the allowable increase applied to the daily rate(s) for the affected Extension Year.

"Step 5:   For Extension Years 2010-11 through 2014-15, repeat Steps 1-4. For each such Extension Year, determine the percent of increase in the average daily cost per vehicle. If the percent of increase in the average daily cost per vehicle resulting in Step 3 shall be insufficient to justify fully the CPI increment in Step 4, add any previously Unabsorbed Percentage Increases from the applicable Extension Year(s) expressed heretofore at **Paragraphs (1)(a)-(e)** of ARTICLE V–A(1) or 28(C) of this Contract.

"(7)   **Alternative Comparison of Costs.** As an alternative to the procedures expressed in **Subparagraph (6)**, *supra*, to determine the allowable increase in daily rates per vehicle for Extension Years 2010-11 through 2014-15, the Contractor may elect with respect to each such Extension Year to utilize the percentage increase in the Contractor's Total Allowable Costs on an aggregate business entity basis with respect to each of the applicable base years as compared to each of the years prior thereto, respectively. Nevertheless, the Contractor must undertake the analysis described in the preceding sentence in the form of an annual Cost Justification Financial Statement as defined in **Paragraph 4(h)**, *supra*. If the Contractor shall not make the foregoing election on or before August 15th of each Extension Year, the analysis of the Cost Justification Financial Statement, as provided in **Subparagraph (6)**, *supra*, shall apply and govern."

"(8)   **Allowable Cost Increases.** Total Allowable Costs are limited by the following: costs not attributable to the Contractor's operations under this Contract, costs that are not ordinary and/or reasonable, costs that are not documented, and/or costs disallowed by the SED and/or by BOE auditors for non-compliance with the definition of Total Allowable Costs as limited by this **Paragraph (8)**. Such costs shall be subject to disallowance by the BOE and are not permitted to justify increases of the daily rate(s) per vehicle. The Director shall have the right to prescribe miscellaneous standardized cost categories for all contractors including the Contractor.

"(9)   **Access to Subcontractors.** If with the Director's approval the Contractor subcontracts any portion of the services under this Contract, the Contractor must include in any such subcontract a provision that allows full and unimpeded access by the BOE, the SED and/or the New York City Office of the Comptroller to the books and records of a subcontractor for inspection, audit and copying purposes. The Contractor does hereby agree and warrant to render all necessary assistance to obtain any requested documents from subcontractors. The Contractor's inability to obtain requested documentation from any subcontractors shall not excuse a failure to provide the documentation as a means to justify payment increases.

"(10)   **Absence of Cost Justification Financial Statement.** The Contractor's failure to submit an annual Cost Justification Financial Statement by the deadline date as above expressed will result in the forfeiture of any increase later justified for the period from the service start date to the day the statement is received at OPT, unless the Director determines that reasonable circumstances exist to excuse the Contractor's late submittal.

"(11)   **Adjustments to Later Payments.** Based on the BOE's audit of the Contractor's annual Cost Justification Financial Statements and financial records, the BOE may make any necessary

adjustments in any later payments that become due and owing to the Contractor to compensate for any excesses of payments over cost increases. Notwithstanding the foregoing, the BOE shall make no adjustment in payments or the rate(s) of payment due the Contractor and shall make no claim for overpayments to the Contractor, unless the BOE audit report, upon which such adjustment or claim is based, shall have been completed and submitted to the Contractor within two (2) years after the date on which the Contractor shall have submitted to the Board the Cost Justification Financial Statement and final supporting documentation for such Cost Justification Financial Statement,[13] which is the subject of such audit. The limitation upon payment adjustments expressed in the preceding sentence shall not apply to any payment adjustment(s) required by any applicable laws, rules and/or regulations as applied by governmental agencies, other than the Board, which may apply to this Contract.

"(12)   **Refund of Overpayment.**  The Contractor agrees and warrants further to refund all additional monies due to the BOE within thirty (30) days of the BOE's final findings regarding any given Cost Justification Financial Statement (provided, such findings shall have been completed and submitted to the Contractor not later than two years after the submission to the Board of such Cost Justification Statement[14]), if the amount of a given Extension Year's payment excess over allowable cost increase is greater than any payments due and owing for the balance of a given Extension Year. The limitation upon refunds expressed in the preceding sentence shall not apply to any refund(s) required by any applicable laws, rules and/or regulations as applied by governmental agencies, other than the Board, which may apply to this Contract.

"(13)   **Unabsorbed Cost Carry-Forward Provision.**  For any extension year in which the Contractor ***shall not*** be able to justify the maximum allowable rate(s) increase(s) for any one or more of Extension Years 2010-11 to 2014-15, the Contractor shall be entitled to use the Unabsorbed Percentage Cost Increases, if any, as a supplemental device to achieve a greater allowable rate(s) increase(s). To be eligible to apply Unabsorbed Percentage Cost Increases, the Contractor must detail in writing the Total Allowable Costs from each set of two comparison years from which any Unabsorbed Percentage Cost Increases shall be derived as well as the total percentage of actual cost increase and the unabsorbed percentage of cost increase. When eligible and entitled hereunder, the Contractor may carry forward 'below-the-line' any previously Unabsorbed Percentage Cost Increases from any sets of comparison periods, as heretofore expressed at **Paragraph 1(a)-(e)** of ARTICLE V-A or 28(C) of the Contract, to supplement those cost increases that are used to justify augmentations of the daily rate(s) per vehicle for Extension Years 2010-11 through 2014-15. The term 'below-the-line' means previously unabsorbed cost increases, which are carried forward, are deemed as allocated to the Extension Year(s) of accrual and not to the subsequent Extension Year(s) to which they are carried forward and applied both supplementally and 'below-the-line' as prior cost increases that have not as yet been absorbed by the annual CPI-U increment.[15]  Once an item of previously Unabsorbed Percentage Cost Increases shall

---

[13] If the Contractor shall amend or otherwise change its Cost Justification Financial Statement and any supporting documentation after having made an initial submittal to the BOE, the two year limitation period shall be tolled and shall start again with the date of the submittal of each such amendment or other change.

[14] *See* **Note 13**, *supra*, i.e., if the Contractor shall amend or otherwise change its Cost Justification Financial Statement and any supporting documentation after having made an initial submittal to the BOE, the two year limitation period shall be tolled and shall start again with the date of the submittal of each such amendment or other change.

[15] For example, from the 28th to 29th Extension Years and from the 29th to 30th Extension Years, the Contractor's costs grew

have been carried forward and applied 'below-the-line' to a given Extension Year, that item may not be used again in any later Extension Year.

"**(14)    Inconsistencies.**  In the event of any inconsistencies between any other provisions of the Contract and ARTICLES V-A and/or 28(C) hereof, the provisions of ARTICLES V-A and/or 28(C) shall prevail and govern in every case and for all intents and purposes."

**(E)    ESCORTS**

Regarding contracts under Serial Nos. 0070, 8108, G8805, G8891 and G9325 *only*, Article XIX entitled, "ESCORTS," as amended previously, is hereby amended further so that **Paragraph A(2)**, as numbered by the First Amendment Agreement, is discontinued for the term of this Extension and Sixteenth Amendment Agreement.

**(F)    ESCORT COST REIMBURSEMENT**

Contracts under Serial Nos. 0070, 8108, G8805, G8891 and G9325 are amended at ARTICLE XIX entitled, "ESCORTS," by re-lettering as "**Paragraph C**" the existing "**Paragraph B**" entitled, "**Standards**," and by adding a new "**Paragraph B**" entitled, "**Alternative Payment Method for Escorts**," and contracts under Serial No. 7165 are amended by adding a new "**ARTICLE 28**," "**Paragraph (D)**" entitled, "**ALTERNATIVE PAYMENT METHOD FOR SPECIAL EDUCATION ESCORTS**," both of which shall read as follows for the period of this Extension and Sixteenth Amendment Agreement:

"**(1)    Election for Escort Cost Reimbursement.**

"**(a)** For Extension Years starting in 2010-11 and continuing through the period of this Extension and Sixteenth Amendment Agreement, for contracts under Serial Nos. 0070, 8108, G8805, G8891 and G9325 and for contracts under Serial No. 7165, the Contractor shall receive full reimbursement from the Board for all appropriate costs and expenses which the Contractor is or shall become legally obligated to incur in connection with the employment, training and qualification of escorts provided by the Contractor in accordance with the terms of this Contract including, but not limited, to the costs and expenses as itemized on the 'Schedule of Special Education Escort Costs,' incorporated into, and made part of this Contract, as "**Attachment C**" of the Extension and Sixteenth Amendment Agreement (herein expressed collectively as 'Escort Costs'). Escort Costs shall not include **(i)** future adjustments in wages or benefits which exceed the rate of any such adjustment granted to the Contractor's drivers, with the exception of an increase of fifty cents ($0.50) per hour for escorts on 'Carry-Kids Routes' for the period starting January 1, 2007, which exception shall apply *only* if the BOE is afforded the right to transport ambulatory students on such Carry-Kids Routes; **(ii)** compensation for 'Shape' escorts in excess of six percent (6%) of the number of Escorts required on vehicles provided by the Contractor; **(iii)** Escort Costs

---

two percent (2%) and three percent (3%), respectively. From the 28th to 29th Extension Years and from the 29th to 30th Extension Years, the CPI-U increased one-and-one-half percent (1.5%) and two-and-one-half percent (2.5%), respectively. From the 30th to 31st Extension Years, the CPI-U increased four percent (4%), while the Contractor's actual costs grew only three percent (3%). Although the Contractor's two discrete one-half percent (0.5%) cost increases above the allowable CPI-U caps accrued in the 29th and 30th Extension Years, respectively, each may be carried forward and applied below-the-line to supplement the Contractor's cost growth from the 30th and 31st Extension Years, which was lower than the CPI-U.

that accrued prior to July 1, 2010 *except* any retroactive costs also paid to or for drivers as a result of collective bargaining, any retroactive Federal, State and/or local payroll withholding taxes, and/or any Worker's Compensation awards and/or settlements;[16] and/or **(iv)** indirect costs such as, but not limited to, attorney fees, consultant fees,[17] accountant fees and investigator fees *except* as provided herein to the contrary. Regarding the preceding sentence, the Contractor shall undertake its best efforts (and cause its representatives to undertake their best efforts) in the course of all collective bargaining agreement negotiations that shall occur during the period of this Extension and Sixteenth Amendment Agreement to reduce substantially and, if possible, eliminate all escort costs for any day(s) when school buses shall not operate such as, but not limited to, school closing days due to weather and other emergencies, teacher conference days including, but not necessarily limited to, Chancellor's Day,[18] and holidays. In addition to the reimbursement of Escort Costs, the Contractor shall be paid an administrative fee for providing such escorts, which fee shall equal four percent (4%) of the Contractor's Escort Costs for Extension Years 2010-11 through 2014-15 (herein expressed as "Administrative Fee"). For all contracts under Serial No. 7165, the Contractor shall not be eligible to be reimbursed for the actual costs of escort overtime under this **Paragraph B** or elsewhere in this Contract.[19]

"**(2)**   **Procedure for Contractors Electing Escort Cost Reimbursement**.

"**(a)**   **Initial Escort Cost Estimate**. On or before August 5, 2010, the Contractor shall submit to the BOE a statement, certified by the Contractor's Chief Financial Officer and Chief Executive Officer, of its Escort Costs on a per contract, per escort, per day basis (herein expressed as 'Daily Escort Costs') for the period of September 1, 2009 to June 30, 2010. Such Escort Costs shall not include **(i)** escort health and welfare costs incurred for the months of July and August 2010; and, **(ii)** the amount of wage accrual costs. The Escort Costs shall be adjusted by the CPI-U percentage increment applied to the Contractor's daily rate per vehicle for the 2010/2011 Extension Year pursuant to the Payment Provisions set forth in **ARTICLE (D)** of this Extension and Sixteenth Amendment Agreement. Starting September 1, 2010, and at the beginning of each month thereafter (but *excluding* the months of July and August) for the term of this Extension and Sixteenth Amendment

---

[16] To be eligible for the payment of retroactive Worker's Compensation awards and/or settlements, the Contractor must undertake all commercially reasonable steps to defend vigorously all affected Worker's Compensation claims, i.e., in which cases the BOE shall not unreasonably withhold, delay and/or condition such payments to the Contractor.

[17] The term "consultant fees" shall not include the costs for a subcontractor(s) or other consultant(s) for (i) employee training for purposes required under this Contract, (ii) the development and administration of alcohol and controlled substances abuse prevention policies and alcohol, and (iii) controlled substance testing and analysis, all of which are deemed to be allocable on a per escort basis as direct costs of employment.

[18] The Contractor represents that, during the period from January 1, 2010 through June 30, 2010, it and its representative have undertaken their best efforts in the course of all collective bargaining agreement negotiations to reduce substantially and, if possible, eliminate all escort costs for any day(s) when school buses shall not operate such as, but not limited to, school closing days due to weather and other emergencies, holidays, and teacher conference days including, but not necessarily limited to, Chancellor's Day

[19] The foregoing to the contrary notwithstanding, for contracts under Serial No. 7165, the daily rate per escort shall *not* be deducted from the Total Daily Rate per Vehicle for purposes of calculating the Extended Service Rate, the Additional Service Rate (*i.e.*, Overtime), the Field Trip Rate, and/or the Extended and Additional Service Rate.

Agreement, the BOE shall pay to the Contractor in advance an amount equal to such Daily Escort Cost (as such amount may be adjusted from time to time pursuant to **subparagraphs (b)** and **(c)**, *infra*) multiplied by the number of school days and by the number of Escorts and Shapes employed for such month (hereinafter expressed as 'Monthly Escort Reimbursement') and an administrative fee (herein expressed as 'Administrative Fee') equal to four percent (4%) of the Monthly Escort Cost Reimbursement for Extension Years 2010-11 through 2014-15.

"**(b) Mid-Year Certification.** On or before February 5th of each Extension Year, the Contractor shall submit to the BOE a statement certified by its Chief Financial Officer and Chief Executive Officer **(i)** of the actual amount of the aggregate Escort Costs incurred by the Contractor in the months of September through December of such Extension Year (excluding Escort Health and Welfare costs incurred for the months of July and August and the amount of wage accrual costs), **(ii)** the aggregate amount of the Monthly Escort Cost Reimbursement received by the Contractor from the BOE for such time period (excluding Escort Cost Reimbursement, Administrative Fees and wage accrual costs received under **subparagraph (d)**, *infra*), and **(iii)** the aggregate amount of Administrative Fees received by the Contractor from the BOE for such time period, together with such other documentation as may be reasonably requested by the BOE in order to substantiate the actual Escort Costs incurred by the Contractor. If the actual Escort Costs incurred plus applicable Administrative Fee for such time period shall exceed the amount of Monthly Escort Cost Reimbursement and Administrative Fee paid to the Contractor for such time period, the BOE, by not later than the next monthly payment following the receipt of such certification, shall pay to the Contractor the amount of any such difference, and the amount of the Monthly Escort Cost Reimbursement and Administrative Fee for the remaining months of March through June of such Extension Year shall be increased to reflect the Daily Escort Cost based on such actual incurred costs. If the actual Escort Costs incurred by the Contractor together with applicable Administrative Fee shall be less than the amount of the Monthly Escort Cost Reimbursement and Administrative Fee paid to the Contractor for such time period, the BOE shall deduct such difference from the next monthly payment due the Contractor, and the amount of the Monthly Escort Cost Reimbursement and Administrative Fee shall be decreased for the remaining months of March through June of such Extension Year to reflect a Daily Escort Cost based on such actual cost incurred. Analysis of the Contractor is limited to the Certification hereunder and the furnishing of such other documentation as may be reasonably requested by the BOE related to the Monthly Escort Cost Reimbursement and Administrative Fee.

"**(c) End of Year Certification.** On or before August 5th following the end of each Extension Year under this Extension and Sixteenth Amendment Agreement, the Contractor shall submit to the BOE a CPA-reviewed certification of **(i)** the actual amount of the aggregate Escort Costs, per Contract, incurred by the Contractor in such Extension Year, and **(ii)** the aggregate amount of all Escort Cost Reimbursement and Administrative Fees received by the Contractor from the BOE for such Extension Year, together with such other documentation as may be reasonably requested by the Board in order to substantiate the Escort Costs. If the actual Escort Costs incurred plus applicable Administrative Fee for such time period shall exceed the amount of all Escort Cost Reimbursement and Administrative Fee paid to the Contractor for such time period, **(i)** for Extension Years 2010-11 through 2013-

14, the Board, by not later than the next monthly payment following the receipt of such certification, shall pay to the Contractor the amount of any such difference, and **(ii)** for Extension Year 2014-15, the Board, by no later than thirty (30) days following the receipt of such certification, shall pay to the Contractor the amount of any such difference. The amount of the Escort Cost Reimbursement shall be adjusted commencing the following September to an amount equal to the Daily Escort Costs based on such actual incurred costs increased by the CPI-U percentage increment applicable to such Extension Year plus the applicable Administrative Fee. If the actual Escort Costs incurred by the Contractor together with applicable Administrative Fee shall be less than the amount of the Monthly Escort Cost Reimbursement and Administrative Fee paid to the Contractor for such time period **(i)** for Extension Years 2010-11 through 2013-14, the Board shall deduct such difference (hereinafter expressed as 'Overpayment') from the next monthly payment due the Contractor, and the amount of the Monthly Escort Cost Reimbursement and Administrative Fee commencing the following September shall be reduced to reflect the Daily Escort Costs, based upon such actual incurred costs and then increased by the CPI percentage increase applicable to such Extension Year plus the Applicable Administrative Fee, and **(ii)** for Extension Year 2014-15, the Contractor shall remit such Overpayment to the Board by not later that the next monthly payment following the date of such certification and the Escort Fidelity Bond as provided for in **Subparagraph (4)**, *infra*, shall secure such payment. Analysis of the Contractor is limited to the Certification hereunder and the furnishing of such other documentation as may be reasonably requested by the BOE related to the Monthly Escort Cost Reimbursement and Administrative Fee.

**"(d) Health & Welfare/Wage Accrual Costs**. On or before July 15th of each Extension Year, the Contractor shall submit to the BOE invoices for the payment of Escort health and welfare contributions that are required to be paid for July and August of such calendar year. On or about the first day of August and September of such year, the BOE shall pay to the Contractor in advance an amount equal to the amount of the Escort health and welfare payment to be made by the Contractor in each such month and an Administrative Fee equal to four percent (4%) of such health and welfare payment for Extension Years 2010-11 through 2014-15. On or before April 5th of each Extension Year, the Contractor shall submit to the BOE an invoice for the payment of Escort wage accruals that are to be required to be paid in June of such Extension Year. The BOE shall, on or about the first day of June of such Extension Year, pay to the Contractor in advance an amount equal to the amount of such Escort wage accrual payments required to be paid by the Contractor in such month and an Administrative Fee equal to four percent (4%) of such wage accrual payments for Extension Years 2010-11 through 2014-15. At the Board's request, the Contractor shall commence and vigorously prosecute claims in arbitration or in judicial proceedings to disallow health and welfare cost increase claims to the extent that the BOE shall find that any such cost increase claims shall be attributable to increases in fund administrative costs that are not ordinary, reasonable and compliant with BOE or other public policy. Upon request, the Contractor shall provide the BOE with all documentation available to it regarding any such cost increases. The BOE shall reimburse the Contractor for fifty percent (50%) of its costs in any such arbitration and/or judicial proceeding.

**"(e) Reimbursement for Summer Escorts**. If the Contractor shall provide escorts in July and/or August during the period of this Extension and Sixteenth Amendment Agree-

ment pursuant to contracts under Serial Nos. 0070, 7165, 8108, G8805, G8891 or G9325, the Contractor shall submit to the Board following the end of each such month a statement of actual Escort Costs incurred for such month (which costs shall not include overtime charges with respect to contracts under Serial No. 7165), which Escort Costs the Board shall promptly reimburse to the Contractor together with an Administrative Fee equal to four percent (4%) of such costs for Extension Years 2010-11 through 2014-15.

"**(3)** **Escort Fidelity Bond**. The Contractor shall file with OPT a fidelity bond in the amount of the projected Escort Cost Reimbursement for one month of escort services. Such bond shall remain in effect from July 1st to June 30th of each Extension Year with the exception of the Extension Year 2014-15 in which such bond shall remain in effect until December 31, 2015 and shall provide for payment of any overpayment due and owing pursuant to **Subparagraph (2)(c)**, *supra*. By not later than thirty (30) days before the expiration or other termination of each annual fidelity bond, the Contractor shall supply the BOE with a new fidelity bond for the succeeding Extension Year. Each fidelity bond provided hereunder shall provide to the BOE a reporting period not less than ninety (90) days following the expiration or other termination of each such bond. The amount of the fidelity bond shall be based upon the Contractor's projection of Daily Escort Costs in accordance with **Subparagraph (2)**, *supra*. Each such fidelity bond shall list the BOE and the City of New York as named insureds and shall insure against any and all acts of commission or omission by the Contractor, any subcontractors, subsidiaries, parent or affiliate entities, or any officers, owners, directors, employees, servants, agents, independent contractors, or any other parties which shall result in the failure of the proper disbursement to the intended escort beneficiaries, whether any such party acts within or outside the scope of employment or contractual performance. A company licensed by the Superintendent of Insurance to do business in New York State must issue each such fidelity bond.

"**(4)** **Additional Provisions about Escorts**. The Contractors shall comply with the following provisions throughout the period of this Extension and Sixteenth Amendment Agreement:

"**(a)** **Compliance with Administrative Code**. The Contractor must provide all the escorts necessary to perform all of the work covered by the Contract including additional and spare vehicles. The Contractor must have sufficient, qualified and approved personnel to enable the Contractor to dispatch substitute escorts promptly if, when and where necessary to ensure continuous, uninterrupted and punctual service in each and every instance. The Contractor must operate every vehicle for the transportation of handicapped children in strict adherence to the provisions of New York City Administrative Code §19-603(a)-(b). If the law shall be amended during the term of this Extension and Sixteenth Amendment Agreement to eliminate the requirement of escorts, the Contractor must cease to provide escorts upon thirty (30) days notice from the BOE to that effect. After the effective date of the notice, the BOE and the City of New York shall not be obligated to the Contractor or any other party for the provision of escort services.

"**(b)** **Basic, Refresher and Additional Training for Special Education Escorts**. The Contractor shall arrange for BOE-approved basic escort training courses. Each escort must complete the American Red Cross Multi-Media Starter Course in First Aid. This course shall provide the knowledge and skills called for in situations where emergency first aid care is required and medical assistance is not excessively delayed. The Multi-Media Starter in

First Aid also instructs on personal safety and accident prevention so that a person can learn the causes of accidents and act to eliminate or minimize such causes.

"(i)   The escorts (attendants/matrons) must meet the requirements for course completion, which includes taking a written examination, receiving a satisfactory grade and being issued a certificate. Each escort must submit to OPT a certificate as proof of course completion. Every escort (attendant/matron) shall take the refresher course once every three (3) years and furnish to OPT evidence of completion of the course.

"(ii)  With the exception of Contractors who have exercised the election for Escort Cost Reimbursement under **ARTICLE XIX, Paragraph (B)** hereof, the Contractor understands and agrees that the costs for such course required by the Board will not be borne by the Board of Education.

"**(c)   Escort Subcontractor.** The Contractor may delegate performance of escort services to an acceptable subcontractor; however, the Contractor will remain responsible for all pertinent contractual obligations. The Director will have sole and final discretion to approve or disapprove at any time the Contractor's particular choice of an initial or replacement escort subcontractor. Whereupon the BOE requests new, updated or revised information about any subcontractor, the Contractor must supply the data immediately and/or secure the cooperation of the affected subcontractor to make full and prompt disclosure of any information. Where the Contractor elects to delegate escort services to a subcontractor, the Contractor may direct the BOE to make payments in the full amounts or any portions thereof directly to the subcontractor. The Contractor must make such payment directions in writing on a form approved by the BOE."

### (G)   AMENDMENTS TO INSURANCE PROVISIONS

**ARTICLE (E)** entitled, "Amendments to Insurance Provisions," as expressed in the Supplemental Twelfth Amendment of Contract for Special Education Pupil Transportation Services is hereby incorporated into, and made part of, this Extension and Sixteenth Amendment Agreement as if set forth herein in its entirety, and the said **ARTICLE (E)** is hereby amended as follows:

(1)   The first paragraph and Note 7 of **ARTICLE E, Paragraph (1)(E)(1)(a)** are hereby amended to read as follows:

"**(a)      Contractor Payment of VALICA Program Premiums.** In consideration of the Board's supply of Primary Insurance, the contract compensation payable to the Contractor under this Contract shall be reduced for each twelve month period that the Primary Insurance shall be in effect (herein expressed as 'Primary Policy Year')[7], in an amount (herein expressed as 'Contract Reduction Amount') equal to the following:

"[7] The first Primary Policy Year shall be from March 31, 2003 to March 30, 2004. The second Primary Policy Year shall be from March 31, 2004 to June 30, 2005. (For the second Primary Policy Year which is for a 15 month period, the Base Premium, and the

$2,000 Credit shall each be increased by twenty-five percent (25%).) The third Primary Policy Year shall be from July 1, 2005 to June 30, 2006. The fourth Primary Policy Year shall be from July 1, 2006 to June 30, 2007. The fifth Primary Policy Year shall be from July 1, 2007 to June 30, 2008. The sixth Primary Policy Year shall be from July 1, 2008 to June 30, 2009. The seventh Primary Policy Year shall be from July 1, 2009 to June 30, 2010. The eighth Primary Policy Year shall be from July 1, 2010 to June 30, 2011. The ninth Primary Policy Year shall be from July 1, 2011 to June 30, 2012. The tenth Primary Policy Year shall be from July 1, 2012 to June 30, 2013. The eleventh Primary Policy Year shall be from July 1, 2013 to June 30, 2014. The twelfth Primary Policy Year shall be from July 1, 2014 to June 30, 2015."

**(2)**  The amendments expressed in **Paragraph (E)** entitled, "Amendment to Insurance Provisions," **Subparagraph (b)** through the second **Subparagraph (d)** (an unintentional duplication), of the Extension and Thirteenth Amendment Agreement shall remain in full force and effect for the period of this Extension and Sixteenth Amendment Agreement.

**(3)**  The following provision is hereby added to **ARTICLE (E)** entitled, "Amendments to Insurance Provisions," as expressed in the Supplemental Twelfth Amendment of Contract for Special Education Pupil Transportation Services as heretofore incorporated by reference into, and made part of, this Contract: "The Contractor shall ensure that all personnel it uses to provide any services under this Contract, i.e., especially in any relationship with an approved subcontractor, such as, but not limited to, vehicle operators (drivers), attendants (matrons or escorts), maintenance workers and other workers who may operate or otherwise work on vehicles under the Contract at all times shall be deemed to be 'general employees' or 'special employees' of the Contractor for purposes of Worker's Compensation Insurance coverage under the Worker's Compensation Law."

### (H)   EMPLOYEE PROTECTION PROVISIONS

Paragraph F of the Extension & Eleventh Amendment Agreement of Contract Serial Nos. 0070, 8107, 8108, G8805, G8891 and G9325 and **ARTICLE 45** of contracts under Serial No. 7165 is hereby amended to read as follows:

"**1.    Priority in Hiring and Master Seniority Lists.**

"There shall be established two industry-wide Master Seniority Lists. One list shall be composed of all operators (drivers), mechanics, and dispatchers and the other list shall be composed of escorts (matrons-attendants) who were employed as of June 30, 2010, under a contract between their employers and the Board for the transportation of school children in the City of New York, who are furloughed or become unemployed as a result of loss of contract or any part thereof by their employers, or as the result of a reduction in service directed by the Board during the term of the contract, in accordance with their date of entry into the industry. All operators (drivers), mechanics, dispatchers and escorts (matrons-attendants) on the Master Seniority Lists who participated in the Division 1181 A.T.U.–New York Employees Pension Fund and Plan as of June 30, 2010, and who do not exercise their option to withdraw from the Fund and Plan shall continue to participate

in such Pension Plan. By not later than September 30th of each Extension Year, the Contractor shall supply the BOE with a Seniority List for all of the Contractor's employees, which Seniority List the Contractor shall input into a Web-Based Application to be supplied by the BOE.

"Any existing contractor or individual who conducted business as a sole proprietor, or as a member of a partnership or who held a controlling interest in a corporation that performed service pursuant to contract expiring in June 2010 ("existing contractor") shall give priority in employment in September 2010 or thereafter on the basis of position on the Master Seniority List of any additional or replacement operators, mechanics and dispatchers beyond those performing service as of June 30, 2010 consistent with the number of employees required by the specifications of the contract expiring June 2010 for the number of vehicles providing service to the Board as of June 30, 2010 to individuals from the Master Seniority List until such list is exhausted.

"Any new contractors, *i.e.*, those who did not provide service pursuant to contract expiring June 2010 ("new contractor"), shall give priority in employment in September 2010 or thereafter on the basis of seniority to every operator (driver), mechanic and dispatcher performing service pursuant to such contract starting from the first employee from the Master Seniority List until such list is exhausted.

"Should the Board determine to require the Contractor to provide escort service in addition to the operator, and in the event that all escorts (matrons-attendants) on the Master Seniority List, who were employed as of June 30, 2010, are not employed as escorts by contractors for the beginning of service in September of 2010, then said escorts shall be employed in order of their position on the Master Seniority List.

"**2.    Compensation.**

"All operators (drivers), mechanics, dispatchers and escorts (matrons-attendants) on the industry-wide Master Seniority Lists shall be employed and paid on a full-time basis based upon the wage scale received from prior employer under pupil transportation contracts.

"The Contractor shall compensate operators (drivers), mechanics and dispatchers and escorts (matrons-attendants) who appear on the Master Seniority Lists and who are employed pursuant to contracts to be awarded as follows for the term of the Contract:

"**(a)** operators (drivers) and dispatchers at a daily rate of pay, including any COLA, for each day of service not less than that paid pursuant to the applicable labor collective bargaining agreement, if any.

"**(b)** mechanics at a daily rate of pay, including any COLA, for each day of service not less than that paid pursuant to the applicable labor collective bargaining agreement, if any.

"**(c)** escorts (matrons-attendants) at a daily rate of pay, including any COLA, for each day of service, not less than that paid pursuant to the applicable labor collective bargaining agreement, if any.

"Such operators (drivers) and escorts (matrons-attendants) shall be available for extended service, without additional compensation, which shall be defined as performance within the particular job

category, i.e., drivers as drivers, and escorts (matrons-attendants) as escorts (matrons-attendants), within the eight (8) hour work day within the spread of ten (10) hours (8 within 10 hours) provided for in the collective bargaining agreement covering said employees, if any.

## "3.  Welfare.

"Contributions by the Contractor for providing welfare benefits to operators (drivers), mechanics, dispatchers and escorts (matrons-attendants), in the event the Contractor employs escorts, who appear on the Master Seniority List shall be no less than $939.00 effective July 1, 2008, to June 30, 2009 per employee per month on a twelve month basis during each year of the Contract.

## "4.  Pensions.

"The Contractor shall sign an agreement with Division 1181 A.T.U.–New York Employees Pension Fund and Plan to participate in such plan on behalf of all operators (drivers), mechanics, dispatchers and escorts (matrons-attendants), in the event the Contractor employs escorts, who appear on the Master Seniority Lists and who participated in the Fund and Plan as of June 30, 2010. This requirement shall not be interpreted to require any existing contractor or new contractor to enter into a collective bargaining agreement with the union, nor shall it prohibit any new contractor or existing contractor from entering into a collective bargaining agreement with the union. The Contractor shall file a copy of the executed agreement with the Trustees of the Fund and Plan to participate in said Fund and Plan and with the Director before the start of any school bus service under this Contract.

"The Contractor shall contribute $74.40 per week per operator (driver), mechanic and dispatcher on the Master Seniority List, and participating in the Plan and Fund as of June 30, 2010, for forty weeks each year for the term of the Contract, or such greater amount as may be required, based on contributions by contractors on behalf of the majority of employees participating in the Fund and Plan pursuant to a collective bargaining agreement with Local 1181–1061. The Contractor shall withhold $38.50 a week from each operator, mechanic and dispatcher participating in said Fund and Plan for forty weeks each year for the term of the contract, or such greater amount as may be required based on contributions of a majority of the operators (drivers), mechanics or dispatchers contributing to the Fund and Plan.

"Such new contractors and existing contractors who provide escort service, shall contribute $70.40 per week per escort (matron-attendant) for forty weeks each year for the term of the contract, or such greater amount as may be required based on contributions by contractors on behalf of the majority of employees participating in the Fund and Plan pursuant to a collective bargaining agreement with Local 1181–1061. The Contractor shall withhold $28.50 per week from each escort, (matron-attendant) participating in said Fund and Plan and Fund for forty weeks each year for the term of the Contract, or such greater amount as may be required based on contributions of the majority of the escorts contributing to the Fund and Plan.

"In connection with employees who are on the Master Seniority List and who do not participate in the Local 1181–1061 Fund and Plan, they shall not be required to participate in the Plan but shall participate in the collective bargaining agreement, if any, of their employer.

"The Contractor shall pay all such amounts to the Fund and Plan within seven days after the end of each payroll period.

## "5.   **Enforcement.**

"In addition to any other remedies provided in the contract between the Board and the contractor, such as default and/or termination, if the contractor is found to be in violation of the foregoing Employee Protection Provisions regarding the payment of wages, welfare benefit contributions, pension contributions, or other aspects of compensation or benefits, then the Director of the Office of Pupil Transportation, within thirty (30) days of written notice, shall withhold the appropriate amounts from any payments due to the contractor and pay them directly to the applicable union for the benefit of the employees affected, to the Division 1181 A.T.U.–New York Employees Pension Fund or other applicable union pension fund for the benefit of the employees affected or to the appropriate Welfare Fund for the benefit of the employees affected. If the affected employees are not affiliated with any union, then the Board shall investigate on their behalf allegations of employee protection provision violations regarding the payment of wages, welfare benefit or health insurance contributions, pension or similar savings plan contributions, or other aspects of compensation or benefits. Upon a finding of any such violation(s), the OPT Director shall withhold the appropriate amounts from any payments due to the Contractor and pay them directly to the employees or to such health insurance companies or other institutions as appropriate.

"In the event any new contractor or existing contractor willfully fails to comply, the Board of Education shall act to cancel such contractor's contract, provided, however, that the Board shall not be required to act so as to cause a disruption of service.

"6.   Contractors providing a total of five vehicles or fewer pursuant to all contracts with the Board for the transportation of pupils shall not be subject to the foregoing provisions with respect to operators (drivers), mechanics and dispatchers.

"Escorts (matron-attendants) shall not be included in the exclusion in this **subparagraph six** (6).

"7.   For the purposes of this section, corporate bidders who are subject to common control as determined by the Board based upon analysis of **(a)** ownership of the corporation's assets, **(b)** coincidence of corporate officers and directors, and **(c)** such other factors as the Board determines to be relevant, are deemed to be one bidder.

"8.   The Board may in its sole and unfettered discretion change any date which determines employee protected status, employer status or any other status, which is contained in any employee protection provisions of the Contract. The Master Seniority Lists will be updated to June 30, 2010 as permitted in accordance with pre-existing collective bargaining agreements executed prior to the date of execution of this Contract. Furthermore, the rates quoted herein may not be reflective of current labor rates in effect. The Contractor should pay special attention to the fact that many employees on the Master Seniority Lists have been in the industry for many years and therefore may be entitled to substantial wages, pension and welfare benefits and wage accruals.

"The date for inclusion on the Master Seniority List is hereby updated to the last school day in June 2010 as permitted in accordance with pre-existing collective bargaining agreement executed prior to the date of this Extension Agreement and Sixteenth Amendment Agreement.

"9.    By the end of each contract year and/or Extension Year, the Contractor must make all pension and welfare contributions and other required payments as required by an applicable collective bargaining agreement or other legally binding commitment of the Contractor and which are attributable to each such contract year and/or Extension Year.[20]   Upon the expiration or other termination of the Contract and/or this Extension and Amendment Agreement, the Contractor shall remain liable for any outstanding pension and/or welfare contributions still due and owing."

### (I)    VINTAGE AND AIR-CONDITIONING REQUIREMENTS

Any terms, conditions and specifications to the contrary notwithstanding, the Contract is hereby amended as follows:

(1)    **Age and Condition of Vehicles.**    The vehicles affected by this provision include all vehicles originally awarded to the Contractor under any one or more of the Request For Bids ("RFB") Serial Nos. 0070, 8108, 8805, 8891, 9325 and 7165 (herein expressed as "contract vehicles") and all additional and spare vehicles. Except for the age of vehicles, nothing contained in this **Paragraph (1)** and/or any of its subparagraphs shall be deemed or construed in any manner or to any extent whatsoever to act and/or operate in abrogation or derogation of any other individual or cumulative provisions of the Contract, as heretofore amended and extended.

(a)    The Contractor shall service, maintain and repair all vehicles used in the performance of this Contract in compliance with **(i)** all manufacturer's guidelines for maintenance, service and repairs, **(ii)** all Federal, State of New York and City of New York statutes, regulations, rules, guidelines and policies applicable to service, maintenance and repair of school bus vehicles, **(iii)** all New York State Department of Transportation and New York State Department of Motor Vehicles policies, rules and regulations, **(iv)** Federal and State regulations applicable to maintenance and repair of school bus vehicles, and **(v)** all New York State Education Department, policies, rules and regulations applicable to service, maintenance and repair of school bus vehicles. The Contractor shall maintain and, upon demand, shall present to the Director contemporaneously kept, accurate, complete, orderly and written records of the school bus vehicle maintenance and repair activities performed in accordance with the foregoing.

(b)    The Director shall have the right to disapprove any vehicles under this Contract and to require the Contractor to furnish acceptable replacement vehicle(s) in the event that the Director determines in his/her judgment any such vehicle(s) to be unfit for service.

(c)    During the life of this Extension and Sixteenth Amendment Agreement, Contractors who operate any Mini-Bus Station Wagons (*aka* Mini-Wagons) and/or Mini-Buses or Station Wagons Equipped with Ramps to Accommodated Wheelchairs (*aka* Ramp-Wagons) (collectively "Small School Buses") must comply with the following with regard to the age of all Small School Buses they operate under this Contract:

---

[20] If an applicable collective bargaining agreement or other legally binding commitment by the Contractor calls for payments to be made within a certain period of time after such payments shall become due and owing, then that period shall be added to the end of each contract year and/or Extension Year for the deadline purposes of this sentence.

(i)     Except as provided in **subparagraph (e)**, *infra*, by June 30, 2010 no Small School Buses operated by the Contractor under this Contract may be manufactured before 1994;

(ii)    Except as provided in **subparagraph (e)**, *infra*, by June 30, 2011, no Small School Buses operated by the Contractor under this Contract may be manufactured before 1995;

(iii)   By June 30, 2012, no Small School Buses operated by the Contractor under this Contract may be manufactured before 1996;

(iv)    By June 30, 2013 no Small School Buses operated by the Contractor under this Contract may be manufactured before 1997;

(v)     By June 30, 2014, no Small School Buses operated by the Contractor under this Contract may be manufactured prior to 1998; and,

(vi)    By June 30, 2015, no Small School Buses operated by the Contractor under this Contract may be manufactured prior to 1999.

**(d)**     During the term of this Extension and Sixteenth Amendment Agreement, Contractors who operate any standard school buses, dual-door buses and/or hydraulic lift buses (collectively, "Large School Buses") must comply with the following with regard to the age of Large School Buses they operate under this Contract:

(i)     Except as provided in **subparagraph (e)**, *infra*, by June 30, 2010, no Large School Buses operated by the Contractor under this Contract may be manufactured before 1994;

(ii)    Except as provided in **subparagraph (e)**, *infra*, by June 30, 2011, no Large School Buses operated by the Contractor under this Contract may be manufactured before 1995;

(iii)   By June 30, 2012, no Large School Buses operated by the Contractor under this Contract may be manufactured before 1996;

(iv)    By June 30, 2013, no Large School Buses operated by the Contractor under this Contract may be manufactured before 1997;

(v)     By June 30, 2014, no Large School Buses operated by the Contractor under this Contract may be manufactured before 1998; and,

(vi)    In the event of a further extension of this contract beyond June 30, 2015, by June 30, 2015 no Large School Buses operated by the Contractor under this Contract may be manufactured before 1999.

**(e)**     Any vehicles that shall be first placed into service during the term of this Extension Agreement shall be not more than five (5) years old at the time such vehicle is

placed into service, *unless* the Director shall grant a waiver for any given particular vehicle(s) upon receipt of a written request from the Contractor. The continued use of any given contractor's vehicles that are in service in accordance with the terms hereof shall be authorized for use pursuant to the terms of this provision by a contract assignee, upon assignment of a contract with approval of the Board.

(f)     Vehicles ordered prior to the start of a given Extension Year and delivered prior to the end of September of the same Extension Year shall qualify for purposes of determining the limitations set forth in **subparagraphs (c) and (d)**, *supra*.

(g)     In the event of an assignment of a Contract or an assignment of a separate item of a Contract, which shall have been approved by the BOE, vehicles transferred to the assignee by the assignor, which were in compliance with the assignor's vintage requirements, may be placed in service by the assignee, notwithstanding that such vehicles might otherwise result in noncompliance with the limitations of **subparagraph (c) or (d)**, *supra*. The preceding sentence to the contrary notwithstanding, the assignee Contractor shall have twelve (12) months from the date of BOE approval of an assignment to bring all non-complying vehicles into full compliance with the limitations of **subparagraphs (c) and/or (d)**, *supra*.

(h)     For purposes of **subparagraphs (c), (d) and (e)**, *supra*, a manufacture date/placed in service date shall replace the manufacture date to allow a manufacture date one (1) year earlier than current allowance. For explanatory purposes, current BOE rules require that a new vehicle is one with a model year of "x" and a manufacture year of "x – 1." During the term of the Extension and Sixteenth Amendment Agreement, new vehicle shall be a model year of "x -1" and a manufacture date of "x – 2."

(2)     **List of Vehicles.** The Contractor must provide a list of all vehicles, including spare and maintenance vehicles, to be operated during each Extension Year. Each list must show for every vehicle the year, make, type, seating capacity, registration number, bus number, license plate number, owner, lessee (if applicable), and the expiration date of the New York State Department of Transportation approval sticker. The information required under this paragraph must be provided to a Web-Based Application, as supplied and updated by the BOE, and the Contractor must supply a copy of the title or certificate of registration for each listed vehicle. Whenever any changes occur in the list of vehicles as stated on the Web-Based Application, the Contractor must update the list within two (2) BOE Business Days. In addition, the Contractor must provide at the same time written assurance that all vehicles are equipped with two-way radios.

(3)     **Air Conditioning/Climate Control Systems.** (a) Each vehicle that is required to have an Air Conditioning/Climate Control System must be equipped with an air conditioning system with sufficient power-train, electrical, and engine cooling support systems to maintain comfortable conditions throughout the entire interior of the vehicle during any warm weather periods at ambient temperatures not higher nor lower than necessary to meet the medical and comfort needs of each passenger. By June 30, 2010, one hundred percent (100%) of all Small School Buses operated by the Contractor under this Contract must be equipped with air conditioning/climate control systems. For each vehicle required to have an Air Conditioning/Climate Control System pursuant to the preceding two (2) sentences, the Contractor must cause and permit each such Air

Conditioning/Climate Control System to be operated during any and all warm weather periods and/or at any time as necessary for the medical needs of any passengers. The Contractor shall cause the Air Conditioning/Climate Control System on each vehicle to be properly operated, maintained, serviced and repaired in good working order pursuant to any and all manufacturer's guidelines for operation, maintenance, service and repairs.

**(b)**     Subject to prior approval by the Board, Contractors shall receive a one-time equipment fee for each Large School Bus equipped with air-conditioning/climate control systems, which the Contractor shall place into service during the term of this Extension Agreement. Such equipment fee shall equal the lesser of $4,000 or one-half of the cost of the Contractor's cost for such air-conditioning system. The Board's prior approval shall not be withheld in instances where the Contractor is required by law to provide air conditioned Large School Buses in order to transport New York City school children. The Board shall pay the cost of the air-conditioning equipment fee directly to the Contractor. Each air-conditioned vehicle, for which the Board shall pay an equipment fee in accordance with this Section (3), shall be made available for service to the Board on a priority basis.

**(c)** If the Contractor shall accelerate the timing for the purchase of air-conditioned vehicles beyond the timing needed to comply with the vintage requirements under **Paragraph (I)(1)**, *supra*, the Contractor shall be entitled to the air conditioning equipment fee for such air conditioned vehicles for which the purchase or retrofit thereof shall have been accelerated, ***provided***, the Contractor shall have obtained advance approval for such acceleration from the Director. In cases where the Contractor already shall have met the minimum requirement for the number and/or percentage of vehicles with air-conditioning at the outset of this Extension and Sixteenth Amendment Agreement, however, the Contractor shall not be entitled to any reimbursement of any past costs and expenses for the installation, upgrade, retro-fitting, repair and/or maintenance of air-conditioning equipment.

## (J)     MISCELLANEOUS VEHICLE SPECIFICATIONS AND OPERATIONAL AMENDMENTS

**(1)     Computer Systems.** The Contractor shall be required to maintain a computer information system(s) sufficient to run applications developed by the BOE Office of Pupil Transportation. The Contractor shall maintain the following: **(i)** online route establishment, deletion and modification capability; **(ii)** high speed internet connectivity for electronic routing and other applications; **(iii)** a website which shall include updated (on a basis as specified by the Director) pick up and drop off times for the routes serviced by the Contractor; and, **(iv)** such other systems and applications as the Director shall specify with written notice to the Contractor. During the life of this Extension Agreement, the Contractor will be required to update the computer system as required by the Director.

**(2)     New Laws, Rules, Regulations, Bylaws or School Bus Safety Features.**

**(a)**     If, starting July 1, 2010, any Federal, State or local laws, rules and/or regulations are enacted, updated, revised, amended or otherwise changed in any manner that shall require the Contractor to undertake any new or revised procedures affecting school bus personnel or operations (*e.g.,* school bus personnel drug or alcohol testing, driver licensing or training procedures, *etc.*) or the introduction onto vehicles of new safety features or any other equipment (*e.g.,* increased seat-back padding, back-up beepers, stop arms, safety sensors, seat belts, *etc.*), the Contractor must comply promptly, and the BOE shall pay the Contractor one-half (½) of the Contractor's

actual costs for such compliance. Anything in the preceding sentence to the contrary notwithstanding, if any Federal, State, local and/or BOE laws, rules, regulations and/or mandatory policies shall be enacted after July 1, 2010 requiring the Contractor to install one (1) or more video cameras on school buses, the BOE shall procure such equipment, provide such equipment to the Contractor without any cost to the Contractor, and reimburse the Contractor for installation costs. Anything in the preceding sentence to the contrary notwithstanding, the BOE shall have sole and absolute discretion to select the nature, specifications, model(s), type(s), grade(s), manufacturer(s), accessories (if any), audio capabilities (if any), storage capacity, installation method(s), and all other aspects of any and all video cameras and associated technology for which the BOE shall or may be responsible to provide and/or pay under this Contract as hereby extended and amended. Title to such video camera equipment, peripherals and accessories shall vest and remain in the BOE, and the Contractor shall return all such equipment, peripherals and accessories to the BOE within thirty (30) days after the expiration or other termination of this Contract.

(b)     Notwithstanding the limitations set forth in **Paragraph (J)(2)(a)**, *supra*, the BOE shall pay (either directly or with the use of grants or other third party funding) the costs of compliance including the costs of ongoing repair and maintenance to remain in compliance, in connection with the following enumerated requirements of local law and agency regulations: (i) Chapter 26 of Title 15 of the Rules of the City of New York limited to the issues of the use of ultra-low sulfur diesel fuel and emissions control technology on vehicles that transport children to and from school, which was promulgated by the City of New York Department of Environmental Protection pursuant to the provisions of Local Law 42 of 2005; and, (ii) Local Law 61 of 2009, which amended Subchapter 7 of Chapter 1 of New York City Administrative Code Title 24 by adding a new Section 24-163.9 concerning the retrofitting of and age limitations on diesel fuel-powered school buses. Anything in the preceding sentence to the contrary notwithstanding, the BOE shall have sole and absolute discretion to select the nature, specifications, model(s), type(s), grade(s), manufacturer(s), accessories (if any), installation method(s), and all other aspects of any and all emissions control technology for which the BOE shall or may be responsible to provide and/or pay under this Contract as hereby extended and amended. Anything in the first sentence of this **Paragraph (J)(2)(b)** to the contrary notwithstanding, the BOE shall have sole, absolute discretion to select the nature, specifications, model(s), type(s), grade(s), manufacturer(s), accessories (if any), installation method(s), formulation(s), and all other aspects of the ultra-low sulfur diesel fuel and all associated equipment, parts, supplies and/or materials for which the BOE shall be responsible to and pay under this Contract as hereby extended and amended.

(3)     **Customer Liaison.**  In each garage maintained to provide services under this Contract the Contractor shall employ personnel dedicated to customer telephone response at the rate of one customer liaison for every 100 buses (to a maximum of three customer liaisons per garage) except during the first three weeks of school opening when the ratio shall be one liaison per fifty buses.

(4)     **Replacement Buses.**  Replacement buses must be dispatched immediately following a determination that more than thirty minutes will be required for a repair truck to reach a breakdown site.

(5)     **Safety Kit.**  Each bus must contain a safety kit including fire blanket, seat belt, cutter, flashlight and liquid clean up kit.

(6)    **Special Training.** Special education drivers and escorts will be made available for not less than two (2) days each BOE School Year for specialized training, *provided*, that the cost of overtime or additional labor costs incurred as a result thereof, if any, will be paid by the BOE to the Contractor, anything in **Paragraph (D)(1)**, *supra*, to the contrary notwithstanding.

(7)    **Geographic Positioning Systems.** At the Director's sole discretion, all or any portion of the vehicles and dispatch operations under this Contract may be equipped with a telematics system including, but not limited to, global positioning system ("GPS") hardware and software, automatic vehicle location ("AVL") functionality, and back up cellular emergency communications, including monthly service and maintenance fees. To the extent that the Director requires that telematics system units be added to any vehicles and dispatch stations, DOE will bear all costs including, but not limited to, those units installed on replacement vehicles placed into service pursuant to the provisions of Paragraph (I), *supra*. Notwithstanding anything to the contrary in the preceding sentence, the Contractor[21] agrees to incur all costs related to the installation and use of one hundred fifty (150) GPS units on vehicles covered by this Contract[22] over and above the GPS units that the BOE may opt to have installed on the Contractor's vehicles, if any ( "Additional GPS Units"). Such costs shall include, but shall not necessarily be limited to, the costs for installation, monthly service, maintenance, operation, repair, and, if necessary, replacement of the said Additional GPS Units. The Additional GPS Units shall be in addition to, and of comparable quality and kind as, the GPS units currently used on the Contractor's vehicles. The Contractor may elect to spread out the installation of the Additional GPS Units over the first three (3) years of this Contract, *provided however* the Contractor shall have installed a cumulative total of at least fifty (50) Additional GPS Units by June 30, 2011, at least one hundred (100) Additional GPS Units by June 30, 2012, and at least one hundred fifty (150) Additional GPS Units by June 30, 2013. The Contractor does hereby stipulate, consent and agree that all claims and causes of action asserted by the Contractor in New York Supreme Court, County of New York, under Index Number 603267/08, are waived by the Contractor, and the Contractor, within thirty (30) days of the execution of this Extension and Eleventh Amendment Agreement, will (1) withdraw as a plaintiff or discontinue its claims in the action pursuant to New York Civil Practice Law and Rules Section 3217 with prejudice and without costs, disbursements and/or fees, and (2) execute and deliver to the BOE a release of its claims against the BOE in the subject action. With reference to the preceding sentence, the BOE and the Contractor shall execute a Stipulation of Discontinuance for the referenced action, in which the BOE and the City of New York, on the one hand, and the Contractor, on the other hand, shall agree to waive and relinquish any and all claims for costs, fees and/or disbursements as against each other arising from referenced action. The preceding two (2) sentences shall apply to the Contractor *only* to the extent that the Contractor is a plaintiff, petitioner and/or claimant against the BOE in the subject action. Furthermore, if the Contractor is not a plaintiff, petitioner and/or claimant against the BOE and/or the City of New York in the action described in this paragraph, the Contractor does hereby stipulate, consent and agree that it shall not seek to become a plaintiff, petitioner and/or claimant against the BOE and/or the City of New York in the said action..

---

[21] The reference to the "Contractor" in this sentence and the succeeding three (3) sentences includes Consolidated Bus Transportation, Inc., Boro Transit, Inc., and Lonero Transit, Inc., i.e., the obligation to supply one hundred fifty (150) GPS units is cumulative for all of the Contractors and all of their NYCDOE school bus contracts as stated in **Note 22**, *infra*.

[22] As with **Note 21**, *supra*, the reference to the "Contract" in this sentence and the succeeding three (3) sentences includes all of the school year special education contracts, the school year general education contracts, and the Contract(s) covered under this Extension and Eleventh Extension Agreement cumulatively, i.e., the obligation to supply one hundred fifty (150) GPS units is cumulative for all of the Contractors noted in **Note 21**, *supra*, and all of their NYCDOE school bus contracts.

(8)    **Ramp Wagons.**  Ramp Wagons, which under current Department of Transportation regulations can only accommodate three (3) wheelchair passengers, shall continue to qualify as Ramp Wagons under the specifications of this Contract, ***provided***, the Board shall have the right to designate certain routes for four wheelchair passengers Ramp Wagons on an as needed basis and to offer such designated routes according to the Pick Order, first to those Contractors with Ramp Wagons having capacity for four wheelchairs and then to those Contractors with Ramp Wagons having capacity for three wheelchairs.  Contractors with four wheelchair capacity vehicles shall not be required to accept any such designated routes.

(9)    **Sales, Excise and Use Taxes.**  If and to the extent that the New York State Department of Taxation & Finance, the New York State Office of Attorney General, and/or a judicial and/or administrative tribunal with applicable jurisdiction shall require the following provisions to be revised to conform to applicable laws, rules and regulations, the Board and the Contractor hereby stipulate and agree that, upon the issuance of a ruling making such a revision requirement, the following provisions in this **Paragraph (J)(9)** shall be deemed so revised automatically and without the need for any further action by the Board and/or the Contractor.  **ARTICLE (H)(10)** of the Extension and Thirteenth Amendment Agreement entitled, "Sales, Excise and Use Taxes," is hereby amended to read as follows:

"**4.1.    ELIMINATION OF FEDERAL, STATE AND LOCAL TAXES.**

"The BOE represents that it is a municipal corporation and school district as defined in the Education Law and the General Construction Law of the State of New York, and as such is exempt from the payment of Federal, State or local sales, excise, compensating use, gross receipts and other applicable taxes, as provided under the U.S. Internal Revenue Code and the Tax Law of the State of New York.  The Contractor shall use commercially reasonable efforts to comply with the provisions set forth herein for the elimination of payments of such taxes for otherwise taxable goods, supplies, equipment, services, *etc.*, that the Contractor shall purchase in the provision of the services under this Contract for purposes of resale to the BOE, and the Contractor shall pass along the benefits of related savings to the BOE.

"**4.2.    CONTRACTOR AS A PURCHASING AGENT.**

"**4.2.1.**    The BOE hereby appoints, designates and approves the Contractor to be and to act as the Board's official purchasing agent for purposes of this Contract, to purchase or otherwise lawfully acquire third party services, third party goods, *etc.*, that the Contractor shall reasonably and ordinarily need for purposes of resale to the BOE and otherwise to furnish the services under this Contract.  The Contractor hereby accepts the BOE appointment to be and to act as the Board's official purchasing agent as set forth in the preceding sentence.  This agency appointment is limited strictly to the purposes of the Contractor's provision of third party services, third party goods, *etc.*, under this Contract and for no other purposes.  In furtherance thereof, the BOE shall furnish to the Contractor an agency appointment letter on official NYCDOE letterhead stationery (hereinafter expressed as "Purchasing Agency Letter") that the Contractor shall utilize in all of its purchases or other forms of lawful acquisition from the Contractor's suppliers, sellers, subcontractors or other sources.

"4.2.2.   The Contractor shall present a copy of the Purchasing Agency Letter and such other necessary documentation, as provided by the BOE, to each supplier, seller, subcontractor or other source from or with whom the Contractor purchases or otherwise lawfully acquires consumable goods, commodities, materials, supplies, hardware, software, services, *etc.*, for purposes of resale to the BOE in performing this Contract.  For each such transaction, the Contractor shall use commercially reasonable efforts to obtain full exemptions from all applicable Federal, State and local sales, excise, compensating use, gross receipts and other applicable taxes.  This agency appointment and tax exemption does *not* apply to the purchase or other acquisition of durable goods and equipment such as, but not limited to, school buses, maintenance vehicles, automobiles, durable equipment, durable tools, capital fixtures, *etc.*, that are not for purposes of resale to the BOE or shall otherwise not be consumed in the performance of school bus services and other services under this Contract.

"4.2.3.   To the extent legally possible, the Contractor's invoices to the BOE for services purchased from the Contractor shall not include any sales, excise, compensating use, gross receipts and/or other applicable taxes.  The Contractor shall use commercially reasonable efforts to cooperate with the BOE and with any third party to ensure that no sales, excise, compensating use, gross receipts and/or other applicable taxes shall be payable by the Contractor or by the BOE with respect to third party goods and third party services that are purchased from third parties by the Contractor on behalf of the BOE.

"4.2.4.   The Contractor's agreements with, and purchase orders to, any third party manufacturers, sellers, suppliers and/or service providers as well as all subcontractors in connection with the services performed under this Contract shall specify that the Contractor is a purchasing agent for the BOE.  All checks that the Contractor issues for payment to third party manufacturers, sellers, suppliers and/or service providers as well as all subcontractors in connection with the services delivered and performed hereunder shall specify that the Contractor is a purchasing agent for the BOE.

"4.2.5.   In the event that any subcontractors or subcontractor's employees shall make any purchases or other forms of lawful acquisition on the Contractor's behalf pursuant to this Contract for purposes of resale to the BOE, the Contractor shall require such subcontractors or subcontractor employees, as the case may be, to use all commercially reasonable efforts to seek and obtain the appropriate sales, excise, use and other tax exemptions on the Board's behalf.  In furtherance thereof, the BOE shall furnish to the Contractor, upon written request, a letter on official NYCDOE letterhead stationery of the purchasing agency appointment of each such subcontractor or subcontractor's employee that the said person or entity shall utilize in all of his/her/its purchases or other forms of lawful acquisition from any affected suppliers, sellers, and other sources.

"4.2.6.   If the Contractor needs any assistance, advice or modification(s) regarding its agency appointment letter(s), the Contractor shall provide written notice of such request to Michael P. Coneys, Esq., Attorney (or his successor), New York City Department of Education, Office of Legal Services, The Tweed Courthouse, 52 Chambers Street, Room 308, New York, NY 10007-1222; telephone: (212) 374-3442; fax (212) 374-5596; e-mail address at mconeys@schools.nyc.gov."

FINAL VERSION.  07/01/2010 09:07 am

**(10)** <u>**Limitation on Payments for Days When Vehicles Are Not Operated.**</u> All provisions of contracts under Serial No. 7165 prescribing no payments for days when vehicles are not operated shall remain unchanged. The first unnumbered paragraph of ARTICLE V of contracts under Serial Nos. 0070, 8108, G8801, G8891 and G9325 entitled, "PAYMENT," is hereby amended by the addition of the following language between the existing fourth and fifth sentences:

> "The preceding sentence to the contrary notwithstanding, the Contractor shall be entitled to receive eighty-five percent (85%) of its daily rate(s) per vehicle for 'regularly scheduled school days' on which the Chancellor or his/her designee(s) shall order schools to be closed and/or pupils not to be in attendance for any reason, which percentage shall be deemed to represent costs that the Contractor shall be unable to avoid even when service is not furnished. The term 'regularly scheduled school days' is defined as days on which schools are scheduled to be open in accordance with the official BOE Calendar as adopted and published annually with any amendments thereof up to the first day of school in September of each Extension Year."

### (K)  GENERAL MISCELLANEOUS AMENDMENTS

All else to the contrary notwithstanding, the Contract is hereby amended as follows:

**(1)** <u>**Changes Affecting Contractor.**</u> The quoted text in **Paragraph (I)(1)** of the Extension and Thirteenth Amendment Agreement is amended to read in its entirety as follows:

> **(2)** <u>**Changes Affecting the Contractor.**</u> The Contractor shall provide written notice to the BOE on forms prescribed by the Director of each change affecting the following: partners, sole proprietors, management control, Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, or the organization of ownership of the Contractor, *i.e.,* the corporation, partnership or sole proprietorship. Changes in the Contractor include, but are not limited to, the following: corporate or partner voting power; sale, transfer or other alienation of corporate, partnership or sole proprietorship assets; sale or transfer of corporate stock or partnership interest over five percent (5%); or, any other action that may affect BOE interests. Without the prior approval of the Director, which approval shall not be unreasonably withheld, **(i)** no Contractor shall change its chief executive officer (with the exception of a person who has held an executive position with a Board school bus transportation Contractor for at least five years); and **(ii)** no Contractor shall be subject to a change of control (with the exception of a transfer of ownership interests among family members)."

**(2)** <u>**Unlawful or Unenforceable Provisions Void.**</u> Whereupon this Extension and Sixteenth Amendment Agreement shall be found to contain any unlawful or unenforceable provision(s), such provision(s) shall be deemed of no effect and will, upon application of either party, be stricken from this document without thereafter affecting the binding force of the remainder of this Extension and Amendment Agreement.

**(3)** <u>**Approval and Execution.**</u> This Extension and Sixteenth Amendment Agreement will not become binding or effective upon the Board of Education until the following series of events will have transpired: (a) approval as to legal sufficiency by the BOE Office of Legal Services; (b) ap-

proval of a Request for Authorization (herein expressed as "**RA**") by the Chancellor; (c) approval of the contract award by the Board's Panel on Educational Policy; (d) execution on behalf of the Board of Education by the Chancellor or his/her designee; (e) approval by the New York State Commissioner of Education; (f) registration by the City Comptroller; and, (g) initial approval and subsequent annual re-approval by the New York State Financial Control Board pursuant to the New York State Emergency Act for the City of New York, as the rules and regulations of said Board so require.

**(4)    Implementation of the State Education Law.**  This Extension and Sixteenth Amendment Agreement is intended to implement the provisions of New York State Education Law §305(14) and the attendant regulations of the New York State Commissioner of Education.  Whereupon there shall exist any inconsistency between the BOE and the SED concerning this statutory provision, the attendant regulations of the Commissioner of Education and/or any formula(e) for reimbursement of funds, this Extension and Sixteenth Amendment Agreement shall be deemed amended automatically and without any action by the Parties to conform to the interpretation of the SED but only for the protection of BOE interests and only at the Board of Education's option.

**(5)    Construction.**  As used herein, the singular shall include the plural and *vice versa*.  As used herein, all masculine, feminine and neuter pronouns and other gender descriptions shall be deemed synonymous and interchangeable.

**(6)    Vacillation in the Number of Contract and/or Additional Vehicles during Extension Periods.**  Paragraph C of Article XIII entitled, "INCREASE OR DECREASE IN THE NUMBER OF VEHICLES," is henceforth amended as follows:

"C.    Increases/Decreases in Number of Vehicles during Extension Periods.  (i) The BOE and the Contractor do hereby stipulate and agree that the number of vehicles required to serve pupil transportation needs during each school year and during the summer months each year may change often with increases and decreases without limitation due to reasons including, but not necessarily limited to, changes in pupil population, default or voluntary surrender of a school bus contract, changes in policy or directives adopted by the BOE, the City of New York, the State Education Department and/or the Financial Control Board, and/or other educational, financial, school bus operational, efficiency and/or other relevant reasons in the discretion of the Director, over the term of an Extension Agreement.  For Summer School Transportation services, vehicles will be offered by item beginning with the contractor that quoted the lowest daily rate per vehicle under Contract Serial Nos. 4515, 4516, 4894, 4952 and 7164.  If additional vehicles are then needed vehicles will be offered by item beginning with the contractor who quoted the lowest daily rate per vehicle under Contract Serial Nos. 0070, 8108, G8805, G8891, G9325 and 7165.

"(ii)    If before October 30th of a given Extension Year the Director eliminates any vehicle(s) from the number of vehicles awarded to the Contractor (whether originally awarded at the inception of the Contract or awarded as additional vehicles) and then before October 30th of the same Extension Year offers again a vehicle(s) of the same type(s) and geographical service area(s) due to any resumed need, the Director shall offer the affected vehicle(s) to the contractor in the affected item(s) that shall have had lost the affected vehicle(s) with the lowest daily rate (combined vehicle and escort rate) among those contractors that shall have had

lost any vehicle(s) in the affected item(s). The contractor to whom the Director shall offer the said vehicle(s) must accept restoration up to the number that the affected contractor shall have had as of July 1st of the affected Extension Year. The BOE shall only be liable to restore vehicles to the contractor(s) affected by the preceding sentence up to the number that the affected contractor(s) shall have had as of July 1st of the affected Extension Year. At no time after October 30th of each Extension Year will the Contractor be entitled to restoration of any additional vehicle(s) previously deleted. The BOE shall apply the October 30th restoration deadline uniformly to all extension and amendment agreements entered into with all affected contractors (including the Contractor) pursuant to Contract Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 for the period of this Extension and Sixteenth Amendment Agreement. The BOE agrees that it shall not unreasonably withhold the restoration of an eliminated vehicle, for which there is a resumed need prior to October 30th, until after October 30th of a given Extension Year, for the purpose of avoiding re-awarding the vehicle to the Contractor.

"(iii)    With the exception of the award of vehicles in accordance with subparagraph (ii) above, the Director shall offer any 'additional' vehicle(s) to contractors in the relevant contractual item as determined by the price order of contractors (i.e., from lowest to highest) established as of August 24th of each Extension Year (the "Pick Order"), pursuant to the procedures specified above in **Paragraph B**. The BOE shall apply the annually updated Pick Order as of each August 24th uniformly to all extension and amendment agreements entered into with all affected contractors (including the Contractor) pursuant to Contract Serial Nos. 0070, 7165, 8108, G8805, G8891 and G9325 for the period of this Extension and Sixteenth Amendment Agreement.

"(iv)    Additional vehicles accepted by Contractors pursuant to a change order issued by the Board will continue in service for the duration of the Contract (subject to the right of the Board to delete vehicles in accordance with this Section C, and Contractors shall have no right to terminate services for such additional vehicles after the same have been accepted by the Contractor.

"(v)    The Board shall promptly advise all contractors of all route deletions and additions made by the Board pursuant to the terms hereof."

**(7)    Vacillation in the Number of Contract and/or Additional Vehicles during Extension Periods.** Paragraph C of Article XIII entitled, "INCREASE OR DECREASE IN THE NUMBER OF VEHICLES," is hereby amended by deleting Subparagraph (vi) as it appeared in the Extension and Thirteenth Amendment Agreement.

**(8)    Performance Bond Requirements.** Paragraph (4)(b)(v) of Section (E) of the Supplemental Ninth Amendment Agreement is hereby amended to the extent of adding the following:

"Contractors with senior management with at least ten years of continual contract performance with the Board will have the option to either (a) post an annual performance bond in the amount required hereunder or (b) pay to the Board an annual security fee equal to one half of one percent of such bond amount."

**(9) Assignment.** Contractors may assign their Contracts subject to the prior approval of the Board. Contractors shall not be permitted to assign a portion of a specific item of service without the prior approval of the Board which approval shall only be granted when it is determined to be in the best interests of the Board in order to maintain service. In the event a Contract Item is split, the Contractor to whom part of an item is assigned shall be placed immediately behind the assignor in the Pick Order.

**(10) Billing Liaison.** The Board shall designate a Board employee who shall serve as billing liaison to contractors, who shall promptly address inquires regarding contract billing and who shall have authority to resolve billing errors.

**(11) Route Changes and Use of Toll Roads.** A Contractor may request the Board's approval for an alternative vehicle route, which approval shall not be unreasonably withheld. Approval shall not be withheld for any such route change which **(i)** results in a reduction of travel time, or **(ii)** results in a non toll road route that is within fifteen (15) minutes in duration of the toll road route, unless a restricted time student is on such route and the additional time for the non-toll road route will exceed the time that the affected child shall be permitted to be on the bus, unless the bus shall not arrive at the school on time for the start of its regular session, and provided, that there shall be no additional cost to the BOE.

**(12) Compensation for After School Programs.** Contractors shall receive compensation for forty-five (45) minutes of service after the scheduled discharge time for after-school programs designated by the Director. For example, if a program shall have a 5:30 P.M. dismissal, the Contractor shall receive payment from 3:30 P.M. through 6:15 P.M.

**(13) Prompt Payment Discount.** During the term of this Extension and Sixteenth Amendment Agreement for all contracts under Serial Nos. 0070, 8108, G8805, G8891, G9325, and 7165, the BOE and the Contractor agree that the Contract is hereby amended by the deletion of all references to a 2% prompt payment discount, expressed in Article V entitled, "Payment," of Contract Serial Nos. 0070, 8108, G8805, G8891 and G9325 and expressed in Article 28 entitled, "Payment," of Contract Serial No. 7165.

**(14) Billing Procedure; Deductions from Contractor Payments.** No deductions or offsets from payments due to the Contractor under the Contract shall be made unless the BOE shall contemporaneously provide the Contractor with a statement detailing the amount of the deduction and the basis therefor. Revisions to Contractor billing work sheets and payment authorization for charter services shall be made available to Contractors on-line within 24 hours of such revision or authorization.

**(15) Late Invoices.** Invoices from the Contractor received any more than sixty (60) calendar days after the end of the month in which the service shall have been rendered will be returned unpaid, and the BOE shall not be liable to the Contractor for any such payment. Anything in the preceding sentence to the contrary notwithstanding, invoices from the Contractor received more than sixty (60) calendar days after the end of the month in which the service shall have been rendered, will be accepted for by the BOE for processing, when payments were required under the following circumstances: **(a)** a retroactive change in unemployment insurance rates; **(b)** a court order or judgment; **(c)** a BOE audit report; or, **(d)** a BOE error, e.g., recovery of disputed BOE deductions.

(16)    **Field Trip Notices.** The BOE shall advise all Contractors of all assignments of field trips after such assignments shall be made by posting such information on the BOE website.

(17)    **Audit of Financial Statements and Information.** The Contractor hereby consents to an audit of any and all financial records related to this Contract by the New York City Comptroller, and/or the New York State Department of Audit and Control.

(18)    **Annual Financial Statements.** Within one hundred eighty (180) days after the end of the Contractor's fiscal year, the Contractor shall provide annually to the Director a written statement prepared and signed by an independent Certified Public Accountant that the Current Ratio[23] for the Contractor, its subsidiaries and its other affiliated business entities providing labor, goods, materials and/or services directly or indirectly to the BOE is not less than 2:1 at the time of the said statement. The Board's right as expressed in the next succeeding sentence shall apply in the event during the period of the Contract after July 1, 2010 the BOE shall receive any written notice(s) of attachment from an official collective bargaining agent(s) of the Contractor's employees and/or the employees of any of the Contractor's subsidiaries and/or other affiliated business entities pursuant to the Employee Protection Provisions expressed in the Contract, which notice(s) of attachment shall claim non-payment and/or under-payment by the Contractor and/or any of the Contractor's subsidiaries and/or other affiliated business entities of any money due to the affected union(s) and/or any applicable pension fund(s), welfare fund(s) and/or other fund(s). If the BOE shall receive any written notice(s) of attachment as expressed in the preceding sentence and shall make a payment(s) cumulatively in excess of Two Hundred Fifty Thousand Dollars ($250,000.00) to the affected union(s) and/or any applicable pension fund(s), welfare fund(s) and/or other fund(s), the BOE shall have the right but not necessarily the obligation to conduct and/or authorize and cause an agent(s) and/or designee(s) to conduct a full and complete audit of the Contractor and any of the affected Contractor's subsidiaries and/or other affiliated business entities. With reference to the preceding sentence, the Contractor shall cooperate fully and faithfully, and shall cause each of its affected subsidiaries and/or other affiliated business entities to cooperate fully and faithfully, with any such audit, which cooperation shall include, but shall not be limited to, the provision of full and unimpeded access by the BOE and its employees, agents and designees during reasonable business hours to all of the financial and other relevant records of the Contractor and any of the Contractor's affected subsidiaries and/or other affiliated business entities.

    (a)    **Confidentiality of Financial Records.** To the extent permissible by law, copies of the Contractor's and any subsidiary's and/or other affiliated business entity's annualized

---

[23] The term "Current Ratio" is hereby defined as the financial ratio that measures whether or not the Contractor has enough resources to pay its debts over the next twelve (12) months. The said term compares the Contractor's current assets to its current liabilities. As a mathematical formula, the term "Current Ratio" is expressed as follows: current ratio = current assets divided by current liabilities. The term "financial ratio" is hereby defined as a relative magnitude of two selected numerical values taken from the Contractor's financial statements. The term "current asset" is hereby defined as an asset on the Contractor's balance sheet which is expected to be sold or otherwise used up in the near future, i.e., usually within one year or one operating cycle, whichever is longer. Typical current assets include, but are not necessarily limited to, cash, cash equivalents, accounts receivable, inventory, the portion of prepaid accounts which will be used within a year, and short-term investments. The term "current liabilities" is hereby defined as liabilities of the Contractor that are to be settled in cash within the fiscal year or the operating cycle, whichever period is longer. The term "operating cycle" is hereby defined as the average time that is required to go from cash to cash in producing revenues.

balance sheets, cash flow statements, statements of income and expenses and such other similar documents as the Director may reasonably request, which are submitted by the Contractor to the BOE and/or its employees agents and/or designees, shall be withheld from public access under the provisions of the Federal Freedom of Information Act ("FOIA") and/or the New York State Public Officers Law, Article 6, Section 84-90 *et seq.* (Freedom Of Information Law) ("FOIL"), in accordance with the provisions of Section 87 (2)(d) of such law, which provides that information submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which, if disclosed would cause substantial injury to the competitive position of the subject enterprise, may be withheld from public access. The Contractor has requested that the aforementioned documents be treated as such according to the provisions of FOIL Section 87(2)(d) and, accordingly, BOE shall not grant public access to the information that the Contractor is required to submit to the BOE and/or its employees, agents and/or designees in accordance with **Paragraph (K)(18)**, *supra*. If the BOE shall decide in the case of a request for public access to any of the aforementioned documents that FOIA and/or FOIL, as applicable, would not permit the denial of such a request for access, the BOE shall provide at least five (5) business days advance written notice to the Contractor of each such decision to grant public access, ***provided and to the extent*** such advance written notice shall be permissible under the applicable law.

**(20)**    On at least an annual basis, the Contractor must submit to the OPT Director written confirmation that its pension fund and health/welfare fund liabilities have been audited and that there are no outstanding balances. If the Contractor is not subject to any requirements for pension fund and/or health/welfare fund contributions, the Contractor must submit to the OPT Director a written certification to that effect not later than September 30th of each Extension Year.

**(21)**    All references in the Contract, as heretofore amended and extended, to the "Chancellor's Board of Review" and/or "Board of Review," are hereby deleted and replaced with the phrase "BOE Chief Executive for School Support Services, his/her successor, and/or such other person(s) designated in writing by the Chancellor or his/her designee." All references in the Contract, as heretofore amended and extended, to the terms "Director," "OPT Director," "Director of the Office of Pupil Transportation" and similar designations with the same meaning are deemed to include "Executive Director of the BOE Office of Pupil Transportation," "BOE Chief Executive for School Support Services," "BOE Chief Executive—Nutrition and Transportation, and/or such other person(s) as may be designated in writing by the Chancellor or his/her designee." All references by whatever language in the Contract, as heretofore amended and extended, to "Article 8," "Article VIII" or "Section 8.3" of the BOE "By-laws," "By-Laws" or "Bylaws," are hereby deleted.

**(22)**    **Most Favored Nation Provisions Deleted and Replaced.** The BOE and the Contractor hereby agree to the deletion of any and all provisions contained in the Contract, as previously amended and extended prior to this Extension and Sixteenth Amendment Agreement that provide favorable and/or more favorable terms, conditions and/or specifications to the Contractor in the event such more favorable terms, conditions and/or specifications are offered in other extension/amendment agreements and/or in other Requests For Bids for special education services, general education services or other transportation services. The BOE and the Contractor do hereby stipulate and agree that the following provision replaces the said provisions referenced in the preceding sentence:

"If the BOE enters into any extension and/or amendment agreements pertaining to Contract Serial Nos. 0070, 7165, 8108, G8805, G8891 and/or G9325 for the period of this Extension and Sixteenth Amendment Agreement with any other contractor(s) providing services for more than three hundred (300) BOE school bus routes, the Contractor shall be entitled to the more favorable terms, conditions and/or specifications as expressed in such other extension and/or amendment agreements in the *following limited areas only*: **(i)** any provision(s) offering increased coverage, reduced costs and/or any increase(s) of the "$2,000.00 Credit" under the BOE Volume Automobile Liability Insurance Coverage and Administration ('VALICA™') Program, *except* any provision(s) offering reduced costs by adjusting the calculation of the insurance premium(s) to reflect retrospectively actual costs under the insurance policy as of March 31, 2003 that that immediately preceded the VALICA™ Program under the Extension and Sixteenth Amendment Agreement executed by Atlantic Express, Inc., Atlantic Queens, Inc., Amboy Bus Company, Inc., and/or Staten Island Bus, Inc., shall be *excluded* from consideration as a more favorable term(s), condition(s) and/or specification(s) (for avoidance of doubt, the foregoing is a one-time adjustment of premium rate under the VALICA™ Program offered to Atlantic Express, Inc., Atlantic Queens, Inc., Amboy Bus Company, Inc., and/or Staten Island Bus, Inc.; any other changes after the date of execution of this Extension and Sixteenth Amendment Agreement by the BOE and the Contractor affecting insurance premiums for the said other contractors shall be considered as a more favorable term, condition and/or specification); **(ii)** any provision(s) offering cost savings for school bus fuel; **(iii)** any provision(s) regarding Global Position Systems ('GPS') and/or an Automatic Vehicle Locator ('AVL') Systems; **(iv)** any provision(s) affecting any cap(s) on route reduction(s); **(v)** any provision(s) pertaining to liquidated damages; and/or **(vi)** any provision(s) affecting the Contractor's obligation to comply with, and/or the Board's obligation to pay partially or totally for, any new Federal, State, City, BOE and/or other applicable governmental agency laws, rules, regulations and/or mandatory policies as expressed in **Paragraphs (J)(2)(a)** and/or **(J)(2)(b)** *supra*. The Contractor shall have *no* rights and/or entitlements to more favorable terms, conditions and/or specifications other than those expressed in the preceding sentence and/or contained in extension and/or amendment agreements for BOE contracts under serial numbers other than those expressed in the preceding sentence; and, the preceding sentence shall *not* apply to any more favorable terms, conditions and/or specifications expressed in any new awards of contract(s) offered and/or made by the BOE pursuant to any competitive solicitation(s) and/or emergency contract(s). This Extension and Sixteenth Amendment Agreement shall be deemed further amended automatically and without the need for any further action by the BOE and/or the Contractor to incorporate herein the exact words of all of the more favorable terms, conditions and/or specifications permitted in the first sentence of this paragraph immediately upon the effective date(s) of any and all such more favorable terms, conditions and/or specifications as contained in any extension and amendment agreements pertaining to Contract Serial Nos. 0070, 7165, 8108, G8805, G8891 and/or G9325 for the period of this Extension and Sixteenth Amendment Agreement with any other contractor(s) providing services for more than three hundred (300) BOE school bus routes."

**(23)**   The following terms and conditions shall govern the recovery of cost justification overpayments by the BOE to the Contractor as a result of any failure or inability of the Contractor to justify annual rate increases on the bases of its annual Cost Justification Financial Statements under the Contract for Extension Years 2005-06 to 2009-10 and miscellaneous related issues:

**(A)**  In the event an audit by the BOE Office of Auditor General (herein expressed as "OAG") of the Contractor's annual Cost Justification Financial Statements and the daily rate(s) per vehicle (herein expressed as "BOE Audit") for Extension Years 2005-06 through 2009-10 (herein expressed as "Prior Extension Period"), or any other administrative process, following administrative and judicial review thereof which may be requested by the Contractor (herein expressed as "Final Determination"), shall determine that the Contractor shall have received payments in excess of the rate of payment which was due and payable to the Contractor for the Prior Extension Period pursuant to the terms of the Contracts as such terms were in effect during the Prior Extension Period (herein expressed as "Overpayment Final Determination"), the Contractor and the BOE agree that any such overpayment shall be repayable to the BOE in accordance with and subject to the terms of this **Paragraph (23)**. In addition, the Contractor and the BOE agree that such a Final Determination(s) shall result in a reduction(s) of the Contractor's rate(s) of payment for the affected years of the Prior Extension Period as well as the period of this Extension and Sixteenth Amendment Agreement to reflect the exact degree of the Contractor's inability to justify its rate(s) increase(s). The Contractor and the BOE agree further that the Final Determination(s) of any future BOE Audit(s) for the period of this Extension and Sixteenth Amendment Agreement may result in an adjustment, i.e., an increase(s) or decrease(s), in the Contractor rate(s) of payment for the period of the said Extension and Amendment Agreement as well as recovery by the BOE of any overpayment to the Contractor and/or payment by the BOE to correct any underpayment(s) to the Contractor. On the other hand, the Contractor and the BOE further agree that any Final Determination(s) shall not cause any reduction in the rate(s) payable to the Contractor below the rate(s) as of June 30, 2005 (which rate(s) is based on the daily rate(s) per vehicle paid to the Contractor in extension year 2004-05).

**(B)**  The Contractor does hereby stipulate and agree that the BOE may recover all overpayments to the Contractor made during the Prior Extension Period and the period of this Extension and Sixteenth Amendment Agreement under one or more of the Contracts from **(i)** any and all payments that shall become due and owing during the 2010-15 extension period and all succeeding extension periods, if any, to the Contractor and/or its successors and/or assigns, **(ii)** any and all other contracts between the BOE and the Contractor and/or its successors and/or assigns, and **(iii)** any and all performance security that the Contractor shall furnish during the 2010-15 extension period and all succeeding extension periods, if any. The foregoing shall not limit any and all other remedies at law and/or in equity that the BOE may have.

**(C)**  Unless the Contractor shall have commenced the purchase of "new school buses" and/or "vehicle oriented new equipment" in accordance with **Subparagraph (D)**, *infra*, upon an Overpayment Final Determination(s) relating to the Prior Extension Period, the Contractor shall contact the OPT Director promptly to authorize the immediate commencement of a schedule of repayments as hereinafter provided. The Contractor must commence such repayments to the BOE not later than thirty (30) days after such Overpayment Final

Determination(s). The repayment schedule shall be based upon a maximum five-year period, *provided,* that any balance outstanding as of April 1, 2015 shall become due and payable as of that date from the Contractor to the BOE, unless the Contractor and the BOE shall have agreed by that date to a further extension of the Contract in which event, the five-year schedule may remain in effect (unless the Contractor shall have repaid the outstanding balance before such date).

**(D)**   The BOE shall grant the Contractor a credit(s) to be applied against an amount up to one hundred percent (100%) of all BOE overpayments to the Contractor during the Prior Extension Period, which credit(s) shall equal the "purchase" price(s) (plus all non-refundable Federal, State and local sales, excise and compensating use taxes) actually paid by the Contractor for each "new school bus" and for each item of "vehicle-oriented new equipment" placed into service between July 1, 2010 and June 30, 2015, *provided,* **(a)** the Contractor shall have commenced the purchase of all such vehicles and equipment within thirty (30) days after the date of an Overpayment Final Determination(s); **(b)** all such vehicles and equipment shall be used to replace vehicles and equipment which are not yet required to be replaced pursuant to the Age and Condition provisions of **Paragraph (I)(1)** *et seq., supra;* **(c)** all such vehicles and equipment shall be used to perform the Contractor's pupil transportation service to the BOE under the Contract(s); and, **(d)** all such vehicles and equipments *shall comply* in every respect with all applicable laws, rules, regulations and BOE contract specifications.  The term "new school bus" is hereby defined to include only an unused current or immediately preceding model year (on purchase date) school bus vehicle that shall not have been previously owned (*except* by the manufacture and any new vehicle dealers) and that shall have not more than 5,000 original miles on its initial, factory-installed odometer (to account for safety testing) at the time of its introduction into BOE service.  The term "vehicle-oriented new equipment" is hereby defined to include **(aa)** unused and not previously owned (*except* by the manufacture and any new vehicle dealers) air conditioners and related climate control equipment which is required to be purchased pursuant to the terms of the Contract Extension or which is purchased following advance approval in writing by the OPT Director, to be installed into, or otherwise used in connection with, the Contractor's existing fleet and any new vehicles not submitted for a credit against the BOE overpayment, **(bb)** the cost of goods and professional services associated with the development of new school bus transportation technologies, as approved in advance and in writing by the OPT Director to improve pupil safety and transportation quality and efficiency, and **(cc)** such additional items as the OPT Director shall approve in writing.  The term "purchase" shall include the cost of vehicles (exclusive of interest and finance charges) which are acquired pursuant to leases(s) if the Contractor shall either **(i)** own the vehicle(s) at the end of the lease(s); or, **(ii)** have the option to purchase the vehicle(s) at the end of the lease term for a purchase price which does not exceed fair market value, *provided* the Contractor shall, in fact exercise any such option which expires prior to June 30, 2015.  The term "purchase" shall not include barter arrangements, loaned vehicles and/or equipment, and/or any combination of the foregoing prohibited methods. To the extent that the Contractor's purchases of new school buses and vehicle-oriented new equipment purchased between July 1, 2010 and June 30, 2015, which purchases shall have been commenced within thirty (30) days after the date of an Overpayment Final Determination(s), and which meet the other criteria set forth in **subsections (b)** through **(d)** of this **Subparagraph (D)**, shall not equal the total amount of overpayments due to be recovered

hereunder, the remaining cash amount(s) to be paid by the Contractor shall, include interest at a rate of seven percent (7%) per annum.

**(E)**    Regarding **Subparagraph (D)**, *supra*, the Contractor's obligation to use new school buses and vehicle oriented new equipment in Contract(s) service for the BOE shall extend for ten (10) years from the date of the purchase of each bus and each item of vehicle oriented new equipment. If the Contractor shall cease using for the BOE a new school bus(es) or an item(s) of vehicle oriented new equipment for which a credit shall have been granted, or the Contract(s) shall expire or otherwise be terminated, before the ten (10) year life of each bus and each item of vehicle oriented new equipment, then the Contractor's liability for the overpayment(s) for which the credit(s) had been granted shall resume, and the following three (3) sentences shall prescribe and govern the Contractor's repayment of said liability. The Contractor shall have the option to pay the BOE the *Yellow School Bus Book* (then current) price (excluding Federal, State and City sales, excise and use taxes) of the new school bus(es) and/or vehicle oriented new equipment as of the date of cessation of use for the BOE, or expiration or other termination of the Contract(s). If the Contractor desires to exercise the option expressed in the preceding sentence, the Contractor must notify the OPT Director not less than forty-five (45) days before the cessation of use for the BOE or expiration or other termination of the Contract(s) and must provide full payment not less than thirty (30) days before the cessation of use for the BOE or expiration or other termination of the Contract(s). If the Contractor shall fail and/or refuse to exercise the option expressed in the third (3rd) sentence of this **Subparagraph (E)**, then the BOE shall have the right to withhold any and all payments due and payable to the Contractor as of forty-five (45) days before the cessation of use for the BOE or expiration or other termination of the Contract(s).

**(F)**    The Contractor agrees to waive the payment from the BOE of any air conditioning equipment fee and/or emission control technology costs payable pursuant to this Extension and Sixteenth Amendment Agreement with respect to any vehicle or equipment purchase for which the Contractor has received a credit under this **Paragraph (23)**. The Contractor also may not include depreciation expense corresponding to each new school bus and each item of vehicle oriented new equipment for the computation of its operating expenses for purposes of justifying the rate increase provided for in Section 305(14)(a) of the New York Education Law.

**(G)**    If the Contractor shall fail and/or refuse to comply in any material respect with the terms, conditions and repayment schedule expressed in this **Paragraph (23)** such as, but not limited to, a late payment or non-payment, the Chancellor, his/her designee(s) or the OPT Director shall give prompt written notice to the Contractor of such failure and/or refusal together with notice of an opportunity to cure within twenty (20) BOE school days from dispatch of the said written notice. In the event the Contractor shall fail and/or refuse to cure any material non-compliance with this **Paragraph (23)** within the specified time, the Contractor agrees that, immediately upon the OPT Director's finding of such material non-compliance, the BOE may retain and hold as set-off any contractual service payments that may become due and owing under any contract between the BOE and the Contractor and/or its subcontractors and/or any other BOE and/or City of New York contracts. The foregoing shall not limit any and all other remedies at law and/or in equity that the BOE may have.

**(H)**   The BOE and the Contractor do herby stipulate and agree that, as of the execution date of this Extension and Sixteenth Amendment Agreement, all cost justification reviews, audits and adjustments for all extension periods ending as of June 30, 2005 have been finalized.

**(I)**   All else in this Extension and Sixteenth Amendment Agreement to the contrary notwith-standing, if the BOE enters into any extension and/or amendment agreements pertaining to Contract Serial Nos. 0070, 7165, 8108, G8805, G8891 and/or for the period of this Extension and Sixteenth Amendment Agreement with any other contractor(s) that contains more favor-able terms, conditions and/or specifications solely with respect to the provisions contained in this **Paragraph (23)**, the Contractor shall be entitled to said more favorable terms, conditions and/or specifications as expressed in such other extension and/or amendment agreements.

**(24)**   All other provisions of the Contract as amended by the 1984 Extension and Fourth Amend-ment Agreement, by the 1987 Extension and Fifth Amendment Agreement, by the 1990 Extension and Sixth Amendment Agreement, by the 1993 Extension and Seventh Amendment Agreement, by the 1995 Extension and Eighth Amendment, by the 1996 Supplemental Ninth Amendment Agree-ment, by the 2000 Extension and Eleventh Amendment Agreement, by 2003 the Supplemental Twelfth Amendment of Contract, by the 2005 Extension and Thirteenth Amendment Agreement, by the Corrective Fourteenth Amendment Agreement, and by the 2007 Supplemental Fifteenth Amendment Agreement, *except* those provisions herein noted and revised, shall remain in full force and effect.  The 1998 Supplemental Tenth Amendment Agreement for Project Read is no longer in any force and effect and is null and void for the period of this Extension and Sixteenth Amendment Agreement.

**(25)**   **Cancellation.**

General Terms and Conditions Section 7 entitled, "Cancellation," is amended by the addition of new paragraphs "G," "H," "I" and "J" to read as follows; and, General Terms and Condi-tions Section 25 of contracts under Serial Number 7165 entitled, "Cancellation," is amended by the addition of new paragraphs "I," "J," "K" and "L" to read as follows (the following section and paragraph numbering and lettering is adjusted to paragraphs "I" through "L" for contracts under Serial Number 7165):

"(G) In addition to those instances referred to in other articles, sections, paragraphs and/or subparagraphs in the Contract (including heretofore in this Section 7) as heretofore amend-ed and extended, the Chancellor or a person(s) designated by the Chancellor shall have the right to declare the Contractor in default of this Contract if:

"(1)   The Contractor or any of its officers, directors, partners, five (5%) percent shareholders, managerial employees, supervisors, principals, or other persons who are substantially involved in its activities and whose conduct constituting the offense is engaged in, authorized, solicited, requested and/or recklessly tolerated by any of the foregoing persons:

"(a) is charged, indicted or convicted of a felony and/or a Class A Misde-meanor[24] under any state or federal law (i) involving any issue(s) of business

---

[24] In this Section 7 entitled, "Cancellation," the term "Class A misdemeanor" shall be limited in scope to those offenses oth-erwise defined as Class A misdemeanors under the New York State Penal Law that involve giving or receiving bribes, giv-

integrity or moral turpitude, and/or (ii) that is committed in connection with the Contract;

"(b) commits an act(s) or omission(s) constituting a felony and/or a Class A misdemeanor under any state or federal law (i) involving any issue(s) of business integrity or moral turpitude, and/or (ii) in connection with the Contract;

"(c) commits an act(s) or omission(s) constituting a felony and/or a Class A misdemeanor under any federal or state law pertaining to the solicitation, award and/or performance of a public contract(s);

"(d) knowingly or recklessly makes or causes to be made any false, deceptive or fraudulent material statement in connection with any contract, bid, proposal or application for BOE or other government work; or,

"(e) knowingly or recklessly submits materially false or exaggerated claims, falsifies material documents or records, or destroys material documents or records the Contractor had an obligation to maintain.

"(H)    Except in instances under Sections 7(D)-(E), *supra*, before declaring the Contractor in default, the Chancellor or a person(s) designated by the Chancellor shall send to the Contractor a written notice of default ("Notice of Default") setting forth the ground(s) for the declaration of default and advising the Contractor of an opportunity to be heard to present evidence and to question witnesses not less than ten (10) days after the date of the Notice of Default before the Chancellor, the BOE Chief Executive for School Support Services, his/her successor, and/or such other appropriate executive level person(s) designated in writing by the Chancellor or his/her designee. Unless the Chancellor, the BOE Chief Executive for School Support Services, his/her successor, and/or such other appropriate executive level person(s) shall direct otherwise, the rules of evidence need not be applied. If requested, the proceedings may be transcribed, and a transcript may be obtained by the Contractor at cost.

"(I)    The determination of the Chancellor or a person(s) designated by the Chancellor that the Contractor is in default shall be conclusive, final and binding on the parties. However, if the Contractor contests the default or the determination thereof, the Contractor may bring a proceeding under Article 78 of the New York Civil Practice Law and Rules in the Supreme Court of the State of New York, County of New York; and such a proceeding shall be the sole means of challenging such default and/or determination. However, nothing expressed herein shall deprive the Contractor of its right to such payments to which it may be entitled for work performed under the Contract not subject to, and/or associated with, the ground(s) expressed in the Notice of Default.

"(J)    The foregoing provisions of Section 7(G)-(I) shall be in addition to, and not in derogation of, the pre-existing provisions governing cancellation of the Contract for reasons of default."

(26)    The Contractor does hereby stipulate, consent and agree that all claims and causes of action asserted by the Contractor in New York Supreme Court, County of New York, under Index Numbers

---

ing or receiving unlawful gratuities, and/or other acts of commission and/or omission pertaining to issues of business integrity.

117760/2009, 101622/2010, 104990/2010, and 105004/2010 are waived by the Contractor, and the Contractor, within thirty (30) days of the execution of this Extension and Sixteenth Amendment Agreement, will **(i)** withdraw as a plaintiff or discontinue its claims in all of the actions pursuant to New York Civil Practice Law and Rules Section 3217 with prejudice and without costs, disbursements and/or fees, and **(ii)** execute and deliver to the BOE a release of its claims against the BOE and the City of New York in each of the subject actions. The preceding sentence shall apply to the Contractor *only* to the extent that the Contractor is a plaintiff, petitioner and/or claimant against the BOE and/or the City of New York in the subject actions. Furthermore, if the Contractor is not a plaintiff, petitioner and/or claimant against the BOE and/or the City of New York in the actions described in this paragraph, the Contractor does hereby stipulate, consent and agree that it shall not seek to become a plaintiff, petitioner and/or claimant against the BOE and/or the City of New York in the said actions.

### (L)   CONFIDENTIALITY OF RECORDS.

All personally identifiable student and BOE staff information obtained by or furnished to the Contractor by the BOE, and all reports and studies containing such information prepared or assembled by the Contractor, are to be kept strictly confidential by the Contractor and shall not be provided or disclosed to any third party without the express written permission of the Director. The Contractor shall limit access to such material in its control to those of its employees performing services pursuant to this Contract strictly on a need to know basis. The Contractor shall restrict its use of the information to its performance under this Contract and shall return all such material to the Board upon the completion of the services herein.

### (M)   AFFIRMATION OF RESPONSIBILITY AND PAID TAXES.

The Contractor hereby affirms and declares that the Contractor is not in arrears to the City of New York upon any debt, contract and/or taxes and is not a defaulter, as a surety or otherwise, upon any obligation to the City of New York, and has not been declared not responsible, or disqualified, by any City of New York agency, nor is there any proceeding pending regarding the responsibility or qualification of the Contractor to receive public contracts except as stated in the affirmation pertaining to the foregoing which has been furnished to the BOE.

### (N)   DUTY TO REPORT.

The Contractor represents and warrants that neither it nor any of its directors, officers, members, partners, employees and/or Affiliates, has any interest nor shall any of them acquire any interest, directly or indirectly, which would or may conflict in any manner or degree with the performance or rendering of the services under this Agreement. The Contractor further represents and warrants that, in the performance of this Agreement, no Person having such interest or possible interest shall be employed or otherwise engaged by it. The Contractor and its directors, officers, members, partners, employees and Affiliates must report to the Office of the Special Commissioner of Investigation for the New York City School District ("SCI"), 80 Maiden Lane, 20th Floor, New York, NY 10038, (212) 510-1500, (877) 888-8355, any such interest or possible interest. The Contractor and its directors, officers, members, partners, employees and Affiliates must report to the SCI any criminal activity of which they have knowledge concerning the execution or performance of this Agreement. The Contractor must inform in writing each of its directors, officers, members, partners, employees and Affiliates of his/her duty to report.

### (O)  INVESTIGATIONS.

(1)    The Contractor agrees to cooperate fully and faithfully with any investigation, audit or inquiry conducted by a State of New York ("State") or City of New York ("City") governmental agency or authority that is empowered directly or by designation to compel the attendance of witnesses and to examine witnesses under oath, or conducted by the governmental agency that is a party in interest to the transaction, submitted bid, submitted proposal, contract, lease, permit, or license that is the subject of the investigation, audit or inquiry.

(2)    (a)    If any person who has been advised that his or her statement, and any information from such statement, will not be used against him or her in any subsequent criminal proceeding refuses to testify before a grand jury or governmental agency or authority empowered directly or by designation to compel the attendance of witnesses and to examine witnesses under oath concerning the award of, or performance under, any transaction, agreement, lease, permit, contract, or license entered into with the City, the State, or any political subdivision or public authority thereof, or the Port Authority of New York and New Jersey, or any local development corporation within the City, or any public benefit corporation organized under the laws of the State of New York; or,

(b)    If any person refuses to testify for a reason other than the assertion of his or her privilege against self-incrimination in an investigation, audit or inquiry conducted by a City or State governmental agency or authority empowered directly or by designation to compel the attendance of witnesses and to take testimony under oath, or by the governmental agency that is a party in interest in, and is seeking testimony concerning the award of, or performance under, any transaction, agreement, lease, permit, contract, or license entered into with the City, the State, or any political subdivision thereof or any local development corporation within the City, then:

(3)    (a)    The commissioner or agency head whose agency is a party in interest to the transaction, submitted bid, submitted proposal, contract, lease, permit, or license may convene a hearing, upon not less than (5) days written notice to the parties involved to determine if any penalties should attach for the failure of a person to testify.

(b)    If any non-governmental party to the hearing requests an adjournment, the commissioner or agency head who convened the hearing may, upon granting the adjournment, suspend any contract, lease, permit, or license pending the final determination pursuant to **Paragraph (O)5**, *infra*, without the City and Board incurring any penalty or damages for delay or otherwise.

(4)    The penalties which may attach after a final determination by the commissioner or agency head may include but shall not exceed:

(a)    The disqualification for a period not to exceed five (5) years from the date of an adverse determination for any person, or any entity of which such person was a member at the time the testimony was sought, from submitting bids for, or transacting business with, or entering into or obtaining any contract, lease, permit or license with or from the City and Board; and/or,

(b)    The cancellation or termination of any and all such existing City and Board contracts, leases, permits or licenses that the refusal to testify concerns and that have not been assigned as permitted under this agreement, nor the proceeds of which pledged, to an unaffiliated and unrelated institutional lender for fair value prior to the issuance of the notice scheduling the hearing, without the

City and Board incurring any penalty or damages on account of such cancellation or termination; monies lawfully due for goods delivered, work done, rentals, or fees accrued prior to the cancellation or termination shall be paid by the Board.

**(5)**     The Commissioner or agency head shall consider and address in reaching his or her determination and in assessing an appropriate penalty the factors in **subparagraphs (a) and (b)**, *infra*. He or she may also consider, if relevant and appropriate, the criteria established in **subparagraphs (c) and (d)**, *infra*, in addition to any other information which may be relevant and appropriate:

**(a)**     The party's good faith endeavors or lack thereof to cooperate fully and faithfully with any governmental investigation or audit including, but not limited to, the discipline, discharge, or disassociation of any person failing to testify, the production of accurate and complete books and records, and the forthcoming testimony of all other members, agents, assignees or fiduciaries whose testimony is sought;

**(b)**     The relationship of the person who refused to testify to any entity that is a party to the hearing including, but not limited to, whether the person whose testimony is sought has an ownership interest in the entity and/or the degree of authority and responsibility the person has within the entity;

**(c)**     The nexus of the testimony sought to the subject entity and its contracts, leases, permits or licenses with the City and the Board; and/or,

**(d)**     The effect a penalty may have on an unaffiliated and unrelated party or entity that has a significant interest in an entity subject to penalties under **Paragraph (O)4**, *supra*, provided, the party or entity has given actual notice to the commissioner or agency head upon the acquisition of the interest, or at the hearing called for in **Paragraph (O)3(a)**, *supra*, gives notice and proves that such interest was previously acquired. Under either circumstance, the party or entity must present evidence at the hearing demonstrating the potential adverse impact a penalty will have on such person or entity.

**(6)    (a)**     The term "license" or "permit" as used herein shall be defined as a license, permit, franchise or concession not granted as a matter of right.

**(b)**     The term "person" as used herein shall be defined as any natural person doing business alone or associated with another person or entity as a partner, director, officer, principal or employee.

**(c)**     The term "entity" as used herein shall be defined as any firm, partnership, corporation, association, or person that receives monies, licenses, leases, or permits from or through the City or Board or otherwise transacts business with the City or Board.

**(d)**     The term "member" as used herein shall be defined as any person associated with another person or entity as a partner, director, officer, principal or employee.

**(7)**     In addition to and notwithstanding any other provisions of this agreement, the commissioner or agency head may in his or her sole discretion terminate this agreement upon not less than three (3) days written notice in the event the Contractor fails to promptly report in writing to the Commissioner of Investigation of the City of New York any solicitation of money, goods, requests for future employment or

other benefit or thing of value, by or on behalf of any employee of the City or Board, or other person, firm, corporation or entity for any purpose which may be related to the procurement or obtaining of this agreement by the Contractor or affecting the performance of this agreement.

## (P)   CONFLICTS OF INTEREST.

**(1)**    Except as stated in **Paragraph (P)(1)**, *infra*, no non-governmental Contractor may have on its Board of Directors (or comparable body), employ or have under contract for services (1) any present full-time officer or employee of the City of New York or the Board of Education or any part-time officer or em-ployee of the Board, or (2) any present full-time officer or employee of the City on leave from the City or the Board or any part-time officer or employee of the Board currently on leave from the Board. Generally, the Conflicts of Interest Board may grant waivers of this provision, if an employee or officer is not involved in the Contractor's business with the City or the Board. Said waivers are discretionary and must be ap-proved prior to the commencement of services by that individual. The Board of Education's Ethics Officer must be contacted if an officer or employee wishes to request a waiver. (Rev. 12/12/02)

**(2)**    No Board of Education officer or employee may serve as an unpaid member of a Board of Directors (or comparable body) of a non-governmental not-for-profit Contractor without the permission of the Chan-cellor. To obtain this permission, the officer or employee must contact the Board of Education's Ethics Of-ficer. All other City officers or employees may serve as unpaid members of Boards of Directors (or compa-rable body) of a non-governmental not-for-profit Contractor, if the officer or employee has no involvement with the Contractor's business with the City or the Board. (Rev. 11/27/02)

**(3)**    No officer or employee of the Board of Education, or the officer or employee's spouse/domestic partner or unemancipated child(ren) may have an ownership interest in the Contractor, defined as an in-terest which exceeds five percent of the firm or an investment of $32,000 in cash or other form of com-mitment, whichever is less, and any lesser interest when the officer or employee or spouse, unemanci-pated child(ren), or domestic partner exercises managerial control or responsibility regarding any such firm. For Contractors with stock that is publicly traded, compliance with this **Paragraph (P)(3)** is the obligation of Board of Education employees and officers. (1/16/03)

**(4)**    No former BOE officer or employee may appear before the Board on behalf of a non-governmental Contractor within one year of the former officer or employee's termination of service with the Board. An appearance before the Board includes all communications with the Board. However, a former employee of the Board is not prohibited from serving on a non-governmental Contractor's Board of Directors (or compa-rable body), or from employment or contracting for services with the Contractor, provided, the former em-ployee does not appear before the Board within one year of the termination of service with the Board.

**(5)**    No former officer or employee of the City (including the Board) may have any involvement on be-half of a non-governmental Contractor with any aspect of a contract, including services under that contract, if that former officer or employee was involved substantially and personally with any aspect of that contract while employed by the City. Any former City employee whose duties for the City or the Board involved a contract shall contact the New York City Conflicts of Interest Board for clarification before having any in-volvement with the contract on behalf of a non-governmental Contractor or any other private interest.

**(6)**    The Contractor warrants that, other than a *bona fide* employee or contractor regularly working as a sales representative for the Contractor, no person, selling agency, or other entity has solicited or secured this

Case 1:14-cv-07405-ERK-SMG    Document 94-3    Filed 11/08/19    Page 52 of 52 PageID #: 696

Agreement, or has been employed or retained to do so, for a commission, percentage, brokerage fee or contingent fee.

(7)     The Contractor shall not give, and warrants that it has not given or promised to give, any gift to a community school board member, school leadership team member or to any officer, employee or other person whose salary is payable in whole or part from Board or City funds, or other funds under this Agreement. The word "gift" shall include, without limitation, money, tangible goods, services, loans, promises or negotiable instruments. (2/13/01)

(8)     If the Contractor violates any provision of this **Paragraph (P)**, the Board may, at its option: (A) cancel and terminate this Agreement and be relieved of all liability hereunder; (B) deduct all amounts paid by the Contractor or other value given by the Contractor in violation of this **Paragraph (P)** from payments made or to be made to the Contractor under this or any other Agreement at any time; (C) require the refund of any funds paid hereunder; (D) any combination of the foregoing; or, (E) any other action the Board deems necessary and appropriate as permitted by law.  Any breach of the warranties or violation of the provisions of this **Paragraph (P)** shall be grounds to find the Contractor or its principals as not a responsible bidder on other Board or City contracts.

(9)     The Contractor shall adhere to the Central Board of Education policy on Conflicts of Interest, the Chancellor's Regulations on Conflicts of Interest C-110, and the New York City Charter provisions on Conflicts of Interest which are hereby incorporated by reference as if fully attached hereto.

**\* \* \*NO FURTHER TEXT APEPARS ON THIS PAGE\* \* \***