UNITED STATES DISTRICT COURT                          **NOT FOR PUBLICATION**

EASTERN DISTRICT OF NEW YORK

_____

DIVISION 1181 AMALGAMATED TRANSIT                    **MEMORANDUM & ORDER**
UNION-NEW YORK EMPLOYEES PENSION
FUND and its BOARD OF TRUSTEES,

                              Plaintiffs,                14-CV-7405 (ERK)(SMG)


                – against –


NEW YORK CITY DEPARTMENT OF
EDUCATION, JOFAZ TRANSPORTATION,
INC., ALLIED TRANSIT CORP, PRIDE
TRANSPORTATION SERVICES, INC. and
QUALITY TRANSPORTATION CORP.,


                              Defendants.

_____

KORMAN, *J.*:

     Plaintiffs Division 1181 Amalgamated Transit Union—New York Employees Pension

Fund (the "Fund") and its Board of Trustees (the "Trustees") (collectively, "Plaintiffs") bring this

action alleging various Employee Retirement Income Security Act ("ERISA") and related state

law contract claims against Jofaz Transportation, Inc. ("Jofaz"), Allied Transit Corp. ("Allied"),

Pride Transportation Services, Inc. ("Pride"), Quality Transportation Corp. ("Quality")

(collectively, the "Contractors"), and New York City Department of Education ("DOE," and

together with Contractors, "Defendants").  Contractors bring motions under Federal Rule of Civil

Procedure 12(b)(1) for lack of subject matter jurisdiction and all Defendants bring motions to

dismiss for failure to state a claim under Rule 12(b)(6).

     The crux of this dispute is whether Plaintiffs can require Contractors to contribute to the

Fund based on provisions in contracts between DOE and the Contractors to which the Fund is not

a party.  Because such contribution obligations are not cognizable under ERISA, Plaintiffs' ERISA claims are dismissed for failure to state a claim.  Having dismissed all of Plaintiffs' claims that arise under federal law, I decline to exercise pendent jurisdiction over Plaintiffs' state law breach of contract claims and dismiss those claims for lack of subject matter jurisdiction.

## BACKGROUND

### I.    The Fund, the Contractors, and the EPP

The Fund is a multiemployer defined benefit pension plan that is administered in accordance with a Restated Agreement and Declaration of Trust of the Fund (the "Trust Agreement.").  Am. Compl. ¶ 4; Fleming Decl. Ex. 3.  The Fund's participants are employees of companies that provide school bus transportation for New York City public and nonpublic schools. Am. Compl.  ¶ 13.

The Fund's Trust Agreement established the Fund for the "purpose" of "provid[ing] pension and related benefits to" participants "pursuant to" the Trust Agreement and the Division 1181 A.T.U.-New York Employees Pension Plan (the "Plan Document").  Tr. Agr. Art. II §§ 1–2. The Fund is financed by contributions from "Employers."  Tr. Agr. Art. VII; Plan Document Art. 7.  The Trust Agreement defines an Employer as "any employer that has signed a collective bargaining agreement or any other written agreement with the Union[1] . . . obligating said employer to be bound to [the Trust] Agreement, the Plan [Document], and the actions of the Board of Trustees to make Contributions to the Fund."  Tr. Agr. Art. I § 7(a).[2]  Article VII of the Trust

---

[1] The "Union" is Division 1181-1061 Amalgamated Transit Union.

[2] The Plan Document similarly defines an employer as "any person, company or business organization party to a collective bargaining agreement with the Union requiring contributions to the Fund, who agrees to participate in and be bound by the terms of the Trust Agreement and the Plan."

Agreement provides that the "Contributions of the Employers shall be made in the amounts set forth" and "as required by the collective bargaining agreement or any other written agreement between an Employer and the Union. . . ." Similarly, the Plan Document provides that the "Employer shall pay to the Trustees [of the Fund] contributions in accordance with the Collective Bargaining Agreement in effect between the Employer and the Union or other written agreement requiring contributions to the Fund." Plan Document § 7.1(a). The Plan Document defines a Collective Bargaining Agreement as "an agreement between the Union and an Employer that obligates such Employer to make contributions to the Fund on behalf of Employees covered by the Agreement." *Id.* § 1.8.

Contractors are companies that provide school bus services to New York City schools pursuant to contracts with DOE. Am. Compl. ¶ 13. The school bus service contracts (the "School Bus Contracts") between the Contractors and DOE contain provisions called Employee Protection Provisions (the "EPP"). *Id.* ¶ 15. The EPP requires that DOE maintain two Master Seniority Lists—one for school bus drivers, dispatchers, and mechanics and another for school bus escorts. *Id.* ¶ 21; Milman Dec. Ex. B at 1–2; Fleming Dec. Ex. 3 at 20–21. Under the EPP, when a driver, dispatcher, mechanic or escort becomes unemployed as a result of either their employer losing a DOE contract or a DOE-ordered reduction in services, Contractors must fill vacant positions from the pool of unemployed workers on the Master Seniority Lists until the lists are exhausted. Am Compl. ¶ 22; Milman Dec. Ex. B at 2; Fleming Dec. Ex. 3 at 21. Displaced employees on the Master Seniority Lists choose, in seniority order, from positions available among DOE contractors at Master Picks that are operated and managed by DOE. Am. Compl. ¶ 24.

The EPP requires Contractors to abide by certain rules with respect to the wages and benefits of employees hired off the Master Seniority Lists. *Id.* ¶ 25; Milman Dec. Ex. B at 2–3;

Fleming Dec. Ex. 3 at 21-23.  With respect to the pensions of Master Seniority List employees, the EPP provides that employees "on the Master Seniority Lists who participated in the Division 1181 A.T.U.-New York Employees Pension Fund and Plan as of June 30, 2010, and who do not exercise their option to withdraw from the Fund and Plan shall continue to participate in such Pension Plan."  Am Compl. ¶ 26;  Milman Dec. Ex B at 1; Fleming Dec. Ex. 3 at 20.  The EPP also provides:

> The Contractor shall sign an agreement with Division 1181 A.T.U.—New York Employees Pension Fund and Plan to participate in such plan on behalf of all operators (drivers), mechanics, dispatchers and escorts (matrons-attendants), in the event the Contractor employs escorts, who appear on the Master Seniority Lists and who participated in the Fund and Plan as of June 30, 2010.  [the "Participation Agreements"]  This requirement shall not be interpreted to require any existing contractor or new contractor to enter into a collective bargaining agreement with the union, nor shall it prohibit any new contractor or existing contractor from entering into a collective bargaining agreement with the union.  The Contractor shall file a copy of the executed [Participation Agreement] with the Trustees of the Fund and Plan to participate in said Fund and Plan and with the Director before the start of any school bus service under this Contract.

Am. Compl.  ¶¶ 27, 46; Milman Dec. Ex. B at 3; Fleming Dec. Ex. 3 at 22.  The EPP specifies the contributions that Contractors must make to the Fund and the amounts Contractors must withhold from covered employees' paychecks for contribution to the Fund.  Am. Compl. ¶¶ 47–51; Milman Dec. Ex. B at 3; Fleming Dec. Ex. 3 at 22.  But the EPP also states that "employees who are on the Master Seniority List and who do not participate in the Local 1181-1016 Fund and Plan . . . shall not be required to participate in the Plan but shall participate in the collective bargaining agreement, if any, of their employer."  Milman Dec. Ex B at 3; Fleming Dec. Ex. 3 at 22.

The EPP also contains a section entitled "Enforcement," also known as the "Attachment Obligation Procedure," which provides in pertinent part:

> "if the contractor is found to be in violation of the foregoing Employee Protection Provisions regarding the payment of . . . pension contributions . . ., then the Director of the Office of Pupil Transportation, within thirty (30) days of written notice, shall withhold the appropriate amounts from any payments due to the contractor and pay them directly to the applicable union for the benefit of the employees affected, to the [Fund] or other applicable union pension fund for the benefit of the employees affected. . . .

Am. Compl. ¶ 52; Milman Dec. Ex B at 4.

The EPP began appearing in DOE transportation contracts in 1979 as a result of the Mollen Agreement, which was an agreement between the Union, DOE, and employers at the time to end a strike. *Id.* ¶¶ 19–20. Although the Mollen Agreement expired in 1982, and DOE started to issue new bids for some transportation contracts that did not contain the EPP in 2012, the Amended Complaint alleges that the majority of DOE transportation contracts, including the School Bus Contracts with Contractors in this case, include the EPP. *Id.* ¶ 39; *see also Div. 1181 ATU New York, Emps. Pension Fund v. City of New York*, 910 F.3d 608, 613 (2d Cir. 2018). DOE has stated that it has continued to include the EPP in its School Bus Contracts for the purpose of maintaining labor peace with the Union. Am Compl. ¶ 31.

The Amended Complaint does not allege that the Contractors who are defendants in this action were parties to the Mollen Agreement, nor does the Amended Complaint allege that the Contractors have signed any collective bargaining or other written agreement with the Union or the Fund. The School Bus Contracts containing the EPP were agreements between DOE and the Contractors. While they required the Contractors to make contributions for Fund participants whom DOE placed on the Master Seniority Lists, neither the Fund nor Union were parties to those agreements. Whether the Fund can enforce the contribution obligations imposed by the EPPs is at the heart of this dispute.

## II.     Defendants' Alleged Conduct

The Amended Complaint alleges that, in early 2014, DOE conducted Master Picks through which the Contractors hired employees who were Fund participants and whose names DOE placed on the Master Seniority Lists pursuant to the EPP (the "2014 Master Pick Employees").  Am. Compl. ¶ 56.  During the Master Pick, various 2014 Master Pick Employees inquired of DOE whether they would continue to receive contributions from the Fund if they went to work for the Contractors.  *Id.* ¶ 60.  Representatives of DOE assured these employees that their participation in the Fund would continue.  *Id*.

Plaintiffs allege that, under the terms of the EPP, the Contractors are obligated to enter into Participation Agreements with the Fund and pay contributions on behalf of the 2014 Master Pick Employees.  *Id.* ¶¶ 57–58.  In February 2014, the Fund notified each Contractor that it owed contributions for the 2014 Master Pick Employees and sent each Contractor a Participation Agreement for execution.  *Id.* ¶ 62.  The Contractors, however, have refused to pay contributions to the Fund on behalf of the 2014 Master Pick Employees and have refused to sign the Participation Agreements with the Fund.  *Id*.  ¶¶ 64–65.[3]

After the Contractors refused to sign the Participation Agreements or make contributions, the Fund notified DOE and submitted a request to DOE under the Attachment Obligation Procedure in the EPP for payment of the Contractors' contributions (the "Attachment Requests").  *Id.* ¶¶ 66, 69.  Despite entering into the School Bus Contracts with the Contractors, each of which contain the EPP, DOE has allegedly failed to honor the Attachment Requests and refused to require

---

[3] Plaintiffs also allege that Defendant Jofaz hired approximately 61 additional employees in Master Picks held in 2015 and 2016 and has refused to make contributions on behalf of these additional 61 employees as well.  Am. Compl. ¶¶ 72–74.

the Contractors to enter into the Participation Agreements or to make contributions to the Fund. *Id*. ¶¶ 66, 70–71.

## DISCUSSION

I.    **Standard of Review**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019) (internal citation omitted). "In considering a motion to dismiss for lack of subject matter jurisdiction, [I] accept as true all material factual allegations in the complaint." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (internal citation omitted). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Id.* (internal citation omitted). Evidence outside the pleadings may be considered in determining subject matter jurisdiction. *See Marakova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).

In deciding a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally, all factual allegations are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition to the facts alleged in the complaint, documents incorporated by reference may be considered. *Chamberlain v. City of White Plains*, 960 F.3d 100, 105 (2d Cir. 2020).

## II.    Standing under ERISA

Section 502(f) of ERISA provides federal district courts with subject matter jurisdiction to grant the relief provided for in ERISA § 502(a).  Under that section, a "participant, beneficiary, or fiduciary" of an employee benefit plan may bring a civil suit "to obtain . . . appropriate equitable relief . . . to redress" violations of ERISA or enforce the terms of an ERISA plan.  *See also Silverman v. Teamsters Loc. 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 284–85 (2d Cir. 2014) (noting that Section 502(a) "specifies [that] the parties who have standing to bring suit" are "plan participant[s], beneficiar[ies], or fiduciar[ies]").  Section 502(g)(2) of ERISA also authorizes district courts to award unpaid contributions, the interest on unpaid contributions, liquidated damages, and attorney's fees in any action by a fiduciary to enforce § 515, ERISA's delinquent contributions provision.

Plaintiffs have adequately established standing with respect to their ERISA claims. Contractors argue that Plaintiffs lack standing because the Fund is neither a party to, nor a third-party beneficiary of, the EPP or School Bus Contracts and thus cannot "assert[] the rights or legal interests of others in order to obtain relief from injury to themselves."  P&Q Br. at 6–9; J&A Br. 5–12 (quoting *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014)).  But the only counts for which Plaintiffs allege that they are entitled to relief as third-party beneficiaries of the EPP are with respect to their state law breach of contract claims.  Am. Compl. ¶¶ 200; 208. Plaintiffs do not rely on the Fund's status as an intended third-party beneficiary of the EPP with respect to their ERISA claims.  Rather, the Amended Complaint clearly seeks relief under ERISA, and the Trustees have standing under ERISA to bring such claims based on their status as the Fund's fiduciaries.  *See Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 302, 306 (2d Cir. 2003) (vacating district court's dismissal on jurisdictional grounds "[b]ecause the complaint on its face

[sought] relief under ERISA" and the claim was "neither made solely for the purpose of obtaining jurisdiction nor was wholly insubstantial and frivolous").

Here, Plaintiffs allege that various provisions of ERISA require Contractors and DOE to honor the EPP's contribution obligations. "ERISA sections 502 and 515 clearly give a district court subject matter jurisdiction to hear an action brought by benefit plan trustees to enforce an employer's promise to make contributions." *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 312–13 (2d Cir. 1990); *see also Trs. of Mosaic & Terrazzo Welfare Pension, Annuity & Vacation Funds v. Cont'l Floors, Inc.*, 2013 WL 5637492, at *3 (E.D.N.Y. Oct. 15, 2013) ("[P]lan trustees have repeatedly been held to have standing to enforce . . . contribution provisions of . . . collective bargaining agreements, even where they are not signatories to those agreements."). Whether the EPP's contribution obligations are cognizable under ERISA is a merits question that should not be resolved on a 12(b)(1) motion for lack of subject matter jurisdiction. *Cf. Carlson* 320 F.3d. at 307 (holding that the question of whether a plan qualifies as an employee benefit plan under ERISA "is irrelevant to the question of whether the District Court has subject matter jurisdiction").

In any event, Contractors' objections with respect to Plaintiffs' standing to enforce the EPP are not expressed in terms of the elements of injury-in-fact, causation, and redressability that are the hallmarks of an Article III standing analysis. *See Lujan v. Defs of Wildlife*, 504 U.S. 555 (1992). Rather, the argument over whether the Fund is a third-party beneficiary that can enforce the EPP is comparable to those made in cases in which courts have been asked to decide whether a plaintiff has statutory standing to bring an ERISA claim. *Cf. Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) ("Although we have referred to a plaintiff's status as a 'participant' [of a plan] under ERISA as a question of standing . . . it is a statutory requirement, not a constitutional one.").

"Unlike Article III standing, which ordinarily should be determined before reaching the merits . . . statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." *Id.* The Fund's Trustees therefore are presumed to have statutory standing, and the merits of their claims may be addressed. *See Andrews v. Realogy Corp. v. Severance Pay Plan for Officers*, 2015 WL 736117, at * 5 (S.D.N.Y. Feb. 20, 2015) (proceeding similarly); *Boison v. Ins. Servs. Off., Inc.*, 829 F. Supp. 2d 151, 157 (E.D.N.Y. 2011) (same).

### III.   ERISA Claims

#### A.  Delinquent Contribution Claims (Counts I-IV)

Plaintiffs bring Counts I-IV against the Contractors for delinquent contributions to the Fund.  Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan *under the terms of the plan* or *under the terms of a collectively bargained agreement* shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.  (emphasis added)

"Thus, to be liable under Section 515, a defendant must (1) have contribution obligations that arise from either a 'plan' or a 'collectively bargained agreement' and (2) be an 'employer' within the meaning of ERISA." *Cummings v. City of New York*, 302 F. Supp. 3d 511, 521 (S.D.N.Y. 2017); *see also Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 549 n.16 (1988).  In Count I, Plaintiffs allege that the EPP itself constitutes a "plan" or "terms of a plan" under Section 515, and failure to pay contributions due to the Fund under the EPP violates terms of the "plan."  Am. Compl. ¶¶ 80–88. In Counts II and III, Plaintiffs allege that the Trust Agreement and Plan Document require the Contractors to make the contributions demanded. *Id.* ¶¶ 89–104.  And in Court IV, Plaintiffs allege

that the EPP is a collectively bargained agreement that requires the Contractors to make the contributions. *Id.* ¶¶ 105–110.

### 1. The EPP's Contribution Obligations Do Not Arise Under the Terms of the Fund's Plan Documents.

ERISA defines a pension plan as "any plan . . . established or maintained by an employer . . . [which] by its express terms or as a result of surrounding circumstances . . . (1) provides retirement income to employees, or (2) results in a deferral of income to employees, for periods extending beyond the termination of covered employment or beyond." 29 U.S.C. § 1002(2). "ERISA itself does not make plain where one looks to find the 'terms' of an ERISA plan, other than to mandate that '[e]very employee benefit plan shall be established and maintained pursuant to a written instrument.'" *Silverman*, 761 F.3d at 286 (quoting ERISA § 402(a)). In *Silverman*, the Second Circuit identified "two documents as setting forth plan terms: (1) the governing plan document, *i.e.*, the trust agreement or contract under which the plan was formed; and (2) the summary plan description ('SPD'), a plain-English summary of plan benefits and obligations that the plan administrator must file with the United States Department of Labor and provide to each participant and beneficiary of the plan." *Id.* at 286–87.

Here, the Amended Complaint fails to plausibly allege that Contractors had obligations to contribute to the Fund under the terms of an ERISA pension plan. Neither of the Fund's governing documents referred to in the Amended Complaint—the Plan Document and the Trust Agreement—obligate Contractors to contribute to the Fund. As an initial matter, the Contractors never signed the Trust Agreement or Plan Document and are therefore arguably not bound to their contents. *See 32BJ North Pension Fund v. Nutrition Mgmt. Servs. Co.*, 935 F.3d 93, 102 (2d Cir. 2019) (refusing to permit Fund to unilaterally impose terms of trust agreement on employer who did not sign agreement); *Jaspan v. Glover Bottled Gas Corp.*, 80 F.3d 38, 40 (2d Cir. 1996)

11

(holding that employer was not bound by liquidated damages provision in trust agreement it never signed despite the fact that employer had entered into a collective bargaining agreement to make contributions to ERISA fund).

Even if the Contractors were bound to the Fund's governing documents, the terms of the documents do not support the conclusion that the Contractors are obligated to contribute to the Fund under ERISA § 515.   The Trust Agreement provides that the Fund be financed by "Employers" who have "signed a collective bargaining agreement or any other written agreement with the Union . . . obligating said employer to be bound to [the Trust] Agreement, the Plan [Document], and the actions of the Board of Trustees to make Contributions to the Fund."  Tr. Agr. Art. I § 7(a).  Article VII of the Trust Agreement provides that the "Contributions of the Employers shall be made in the amounts set forth" and "as required by the collective bargaining agreement, or any other written agreement between an Employer and the Union . . ."  Tr. Agr. Art. VII §§ 1–2.  Similarly, the Plan Document provides that the "Employer shall pay to the Trustees [of the Fund] contributions in accordance with the Collective Bargaining Agreement in effect between the Employer and the Union or other written agreement requiring contributions to the Fund."  Plan Document § 7.1(a).  The Fund's governing plan documents therefore make clear that an employer's obligation to contribute to the Fund is contingent on the employer entering into a written agreement *with the Union*, which Plaintiffs do not allege the Contractors did.  The absence of such allegations is fatal to Plaintiffs' delinquent contribution claims.

The Amended Complaint also fails to state a claim for delinquent contributions because the EPP itself is not an ERISA pension plan.  The EPP does not result in deferred income to employees and does not have the primary purpose of providing retirement income to employees. *See Pasternack v. Shrader*, 863 F.3d 162, 169–70 (2d Cir. 2017) (holding that employer's stock

rights plan was not an ERISA pension plan because it did not result in deferred income and did not have the primary purpose of providing retirement income).  Rather, the EPP are terms in School Bus Contracts between Contractors and DOE, to which neither the Union nor the Fund are parties.

In fact, the EPP itself contemplates that some contractors who enter into transportation contracts like the School Bus Contracts with DOE need not contribute to the Fund at all.  *See* Milman Dec. Ex. B at 3; Fleming Dec. Ex. 3 at 22  ("In connection with employees who are on the Master Seniority List and who do not participate in the Local 1181-1061 Fund and Plan, they shall not be required to participate in the Plan but shall participate in the collective bargaining agreement, if any, of their employer."); Milman Dec. Ex. B at 3; Fleming Dec. Ex. 3 at 4 (providing in the Attachment Obligation Procedure that DOE may withhold delinquent contractor contributions and pay them either (1) "directly to the applicable union for the benefit of the employees affected," (2) to the Fund, or (3) to another "applicable union pension fund for the benefit of the employees affected").

### 2. The EPP's Contribution Obligations Do Not Arise Under the Terms of a Collective Bargaining Agreement.

Nor do the EPP's contribution obligations arise under a collective bargaining agreement, because the EPP was not the product of an agreement between the Contractors and a union.  *See Duffey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 3d 120, 127 (S.D.N.Y. 2014) (holding that agreement between employer and employee was not a collective bargaining agreement because it "was not a contract between a union and an employer."); *see also* U.S. Dep't of Labor, Advisory Op. No. 2013-02A (stating that for a Plan to be maintained pursuant to a collective bargaining agreement there must be "evidence of actual collective bargaining between one or more employers and an employee organization that represents the employer(s)'s employees covered by

such agreement with respect to grievances, disputes, or other matters involving employment terms and conditions other than coverage under, or contributions to, the Plan.").

The Fund's Plan Document also recognizes that a collective bargaining agreement is between an employer and *the Union*. *See* Plan Document § 1.8 (defining a Collective Bargaining Agreement as "an agreement between the Union and an Employer that obligates such Employer to make contributions to the Fund on behalf of Employees covered by this Agreement"). And, by its own terms, the EPP does not require the Contractors to enter into collective bargaining agreements with the Union. *See* Milman Dec. Ex. B at 3; Fleming Dec. Ex. 3 at 22 (recognizing that mandate to enter into Participation Agreements "shall not be interpreted to require any existing contractor or new contractor to enter into a collective bargaining agreement with the union, nor shall it prohibit any new contractor or existing contractor from entering into a collective bargaining agreement with the union."). Thus, any obligation the Contractors may have to contribute to the Fund or enter into Participation Agreements is not the result of a collective bargaining agreement.

This case is therefore distinguishable from *New York State Teamsters Conference Pension & Retirement Fund v. UPS*, 382 F.3d 272 (2d Cir. 2004), which Plaintiffs cite to support their argument that the Contractors should be bound by the unsigned Participation Agreements based on the EPPs in their School Bus Contracts with DOE. In *UPS*, the Second Circuit held that an employer's obligations to pay delinquent contributions derived from a collective bargaining agreement, not the unexecuted Participation Agreements. *Id.* at 282. *UPS* does not stand for the proposition that a plaintiff can state a claim for delinquent contributions under ERISA § 515 based on contribution obligations that arise under a contract to which neither the Fund nor Union is a party.

In short, because the Contractors' obligations to contribute to the Fund allegedly arise under provisions of the School Bus Contracts between DOE and the Contractors, and not from the terms of the Fund's plan documents, a collective bargaining agreement, or other written agreement between the Contractors and the Union—as both ERISA and the Fund's own governing plan documents require—Plaintiffs fail to state a claim for delinquent contributions against the Contractors under ERISA § 515.

## B. The Fiduciary Counts (Counts VIII-XIII)

Plaintiffs bring Counts VIII-XIII against all Defendants under § 502(a)(2), which authorizes the Trustees to bring claims under ERISA § 409 for breaches of fiduciary duty (the "Fiduciary Counts"). Am Compl. ¶¶ 144–190. A "threshold question" for each of the Fiduciary Counts is whether the Contractors and DOE were "acting as [] fiduciar[ies] . . . when taking the action subject to the complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *Allen v. Credit Suisse Secs.*, 895 F.3d 214, 222 (2d Cir. 2018). ERISA § 3(21)(A) provides in pertinent part that "a person is a fiduciary with respect to a plan to the extent . . . he [1] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or . . . [2] he has any discretionary authority or discretionary responsibility in the administration of the plan." Simply "parroting ERISA's definition of fiduciary . . . [is] insufficient to withstand a motion to dismiss." *Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*, 2013 WL 6506304, at *3 (S.D.N.Y. Dec. 12, 2013). Rather, to survive a motion to dismiss, Plaintiffs must "allege facts supporting an inference that Defendants exercised authority or control over ERISA plans' assets" or administration. *Fletcher v. ConvergEx Grp. LLC*, 388 F. Supp. 3d 293, 299 (S.D.N.Y. 2019); *Allen*, 895 F.3d at 223 (2d Cir. 2018).

Plaintiffs allege that the Contractors are fiduciaries because they exercised discretionary authority over plan assets by refusing to contribute to the Fund.  Am. Compl. ¶ 139.  Similarly, Plaintiffs allege that DOE is a fiduciary because it exercised discretionary authority over plan assets by failing to enforce the EPP provisions requiring Contractors to contribute to the Fund and by refusing to pay the Fund directly by honoring the Attachment Requests.  *Id.* ¶¶ 148–51. Alternatively, Plaintiffs allege that DOE acted as a fiduciary by exercising discretionary authority and control respecting the Fund's management and administration.  Am. Compl. ¶ 152.

"[I]n the absence of provisions to the contrary in the relevant plan documents, unpaid contributions are not assets of the plan."  *In re Halpin*, 566 F.3d 286, 287 (2d Cir. 2009)*; Bricklayers Ins. & Welfare Fund v. LaSala*, 2015 WL 5022585, at *4 (E.D.N.Y. Aug. 24, 2015) (holding that, generally, "employer contributions become assets only after being paid").  Plaintiffs respond that the Fund's plan explicitly provides that unpaid contributions are plan assets and therefore the general rule that unpaid contributions are not assets of the plan does not apply.  The Trust Agreement defines unpaid contributions as plan assets by stating that "[t]itle to all of the money, property and income paid into or acquired or *accrued* to the Trust shall be vested in and remain exclusively in the Board of Trustees." Am. Compl. ¶ 137 (emphasis added).  To support their position, Plaintiffs cite to *PMTA-ILA Containerization Fund v. Rose*, 1995 WL 461269, at *3 (E.D. Pa. Aug. 2, 1995), in which the court held that language in an agreement creating a fund that "all of the money . . . *accrued* to the fund shall be vested in and remain exclusively in the board of trustees of the fund" was sufficient to render delinquent contributions owed to the fund but not paid plan assets.  (emphasis added).

Even assuming that the language Plaintiffs cite from the Trust Agreement renders unpaid contributions plan assets, Plaintiffs have failed to plead facts suggesting that the contributions have

16

actually "accrued" under the terms of the plan.  As noted above, the Trust Agreement only requires employers to make contributions pursuant to "a collective bargaining agreement, or any other written agreement between an Employer and the Union . . ."  Tr. Agr. Art. VII.  Without the existence of a collective bargaining or other written agreement between the Contractors and the Union requiring contributions to the Fund, the unpaid contributions cannot have "accrued" to the Fund and therefore are not "plan assets" under the terms of the Trust Agreement.  Therefore, just as it is fatal to their delinquent contribution claims, Plaintiffs' failure to allege the existence of a collective bargaining or other written agreement between the Contractors and the Union require that the Fiduciary Counts against the Contractors be dismissed.  For the same reasons, Plaintiffs' Fiduciary Counts against DOE likewise must be dismissed to the extent that they are premised on allegations that obligations to make Attachment Request payments to the Fund pursuant to the EPP constitute plan assets.

Turning to their claim that DOE acted as a fiduciary by exercising discretionary authority and control respecting the Fund's management and administration, Plaintiffs must plead facts to suggest that the trust documents creating the Fund imposed on DOE a duty to exercise powers to manage or administer the Fund.  *See Varity Corp. v. Howe*, 516 U.S. 489 (1996) (interpreting the meaning of "management" and "administration" in ERISA § 3(21)(A) and holding that "[t]he ordinary trust law understanding of fiduciary 'administration' of a trust is that to act as an administrator is to perform the duties imposed, or exercise the powers conferred, by the trust documents.") (citing Restatement (Second) of Trusts § 164).  Plaintiffs point to nothing in the Trust Agreement or Plan Document that gives DOE powers concerning the Fund's management or administration.  Rather, the Amended Complaint only points to DOE's obligations under the EPP in the School Bus Contracts with the Contractors to which the Fund is not a party.  Such

17

allegations are insufficient to plead that DOE acted as a fiduciary of the Fund.  Because Plaintiffs

fail to plausibly plead that DOE was a fiduciary of the Fund, the Fiduciary Counts must be

dismissed with respect to DOE.

### C.  Non-Fiduciary ERISA Liability (Count XIV)

As an alternative to the claim that Defendants are liable for various breaches of fiduciary

duty to the Fund, Plaintiffs allege that all Defendants are liable as non-fiduciaries for knowingly

participating in a prohibited transaction under ERISA §§ 406(a)(1)(B), (D).  Specifically, Plaintiffs

allege that the Contractors' refusal to contribute to the Fund allowed parties in interest—here, the

Contractors—to (a) be extended credit by the Fund and/or (b) use the Fund's assets for their own

benefit.  Am. Compl. ¶¶ 191–97.

ERISA § 406(a)(1) provides in pertinent part that "[a] *fiduciary* with respect to a plan shall

not cause the plan to engage in a transaction, if he knows or should know that such transaction

constitutes a direct or indirect . . . (B) lending of money or other extension of credit between the

plan and a party in interest [or] . . . (D) transfer to, or use by or for the benefit of a party in interest,

of any assets of the plan."  (emphasis added).  In *Harris*, the Supreme Court held that a non-

fiduciary "party in interest" could be sued for knowingly participating in a transaction barred by

ERISA § 406.  530 U.S. at 253–54.  Although *Harris* authorizes lawsuits against a non-fiduciary

party in interest, Plaintiffs still must allege that some plan fiduciary caused the prohibited

transaction.  *See Trs. of Upstate N.Y. Engr's Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 571

(2d Cir. 2016) ("The well-settled elements of a cause of action for [non-fiduciary] participation in

a breach of fiduciary duty are 1) breach by a fiduciary of a duty owed to plaintiff, 2) defendant's

knowing participation in the breach, and 3) damages.").  Because Plaintiffs do not allege that a

fiduciary knowingly caused the Fund to engage in a prohibited transaction, Count XIV must be dismissed.

### D.  Claims for Equitable and Injunctive Relief (Counts VI and VII)

Plaintiffs also fail to state a claim for equitable and injunctive relief against all Defendants under ERISA § 502(a)(3).  "Section 502(a)(3) 'does not . . . authorize 'appropriate equitable relief' *at large*, but only 'appropriate equitable relief' for the purpose of 'redress[ing any] violations or . . . enforc[ing] any provisions' of ERISA or an ERISA plan."  *Peacock v. Thomas*, 516 U.S. 349, 353 (1996) (internal quotations omitted) (emphasis in original).  Plaintiffs allege that Defendants' conduct—namely (1) Contractors' refusal to make contributions to the Fund, (2) Contractors' refusal to enter into Participation Agreements with the Fund, (3) DOE's refusal to require Contractors to sign the Participation Agreements, and (4) DOE's refusal to honor the Attachment Requests, violate the terms of the Fund's plan and ERISA § 515.  Am. Compl. ¶¶ 119–34.  For the reasons stated above, Plaintiffs have failed to adequately plead that Contractors or DOE had any obligation to contribute to the Fund under the terms of the Fund's governing documents or ERISA § 515.  Plaintiffs are therefore not entitled to injunctive or equitable relief and Counts VI and VII must be dismissed.

### CONCLUSION

Defendants' motions to dismiss Counts I-XIV for failure to state a claim under ERISA are granted with prejudice.[4]  Moreover, I decline to exercise pendent jurisdiction over Counts XV and XVI, Plaintiffs' state law breach of contract claims, and dismiss those claims for lack of subject

---

[4] Plaintiffs have not requested leave to amend.  "In the absence of evidence suggesting a desire to replead, much less an indication that any repleading would remedy the various deficiencies outlined in this Opinion, the Court will dismiss the matter with prejudice."  *Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *18 (S.D.N.Y. Mar. 10, 2017).

matter jurisdiction. *See Klein & Co. Futures, Inc. v. Bd. of Trade of New York*, 464 F.3d 255, 262

(2d Cir. 2006).

**SO ORDERED.**

Brooklyn, New York
November 2, 2020

<u>Edward R. Korman</u>
Edward R. Korman
United States District Judge

20